ORIGINAL

CASE NO.

FILED
JAN 31 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
(JANUARY TERM)

JW

CV 08 0745

(PR)

MICHAEL S. MATLOCK, Petitioner,

vs.

EDMOND G. BROWN, JR., Attorney General; JAMES E. TILTON, Sec. of CDC&R; JAMES DAVIS, BPH Chairman; M. MARTEL, Warden (A); and ARNOLD SCHWARZENEGGER, Governor of California,

Respondents, et al.

PETITION FOR WRIT OF HABEAS CORPUS AND OR DECLARATORY AND INJUNCTIVE RELIEF

Michael Matlock, D-14884
BLD 10, 146-U / M.C.S.P.
Post Office Box # 409040
Ione, California 95640
Phone No. (209) 247-4911

# TABLE OF CONTENTS

| | | PAGES |
|---|---|---|
| I. | Table of Exhibits | -ii- |
| II. | Table of Authorities Cited | -iii- thru -vii- |
| III. | Seven page Northern District 28 USC § 2254 form. | 1 thru 7 |
| IV. | Introduction | 1 |
| V. | Opening Statement | 2 |
| VI. | Ground 1 | 1-7 |
| VII. | Ground II | 7-8 |
| VIII. | Ground III | 8-11 |
| IX. | Conclusions | 11-12 |
| X. | Relief Requested | 12-13 |
| XI. | Verification | 13 |
| XII. | Proof of Service | 14 |

# TABLE OF EXHIBITS

1. Part 1 - 1978 Proposition 7 Murder Penalty Initiative Statute; Part 2 - Exhaustion of Administratives.

2. Assembly Bill 476, Stats 1977 C 165; showing that all persons, whether sentenced under the repealed Indeterminate Sentencing Law (ISL), or the Determinate Sentencing Law (DSL), are entitled to know the "**CERTAINTY**" of the penalty for their offense at the time of sentencing.

3. Penal Code §§§ 2930, 2931, and 2932, Stats 1977 C. 165; describing the specific performance contractual agreement between the State and the prisoner as adopted by the voters in the 1978 Prop. 7 Initiative.

4. Senate Bill 42 (1976), Stats 1976 C 1139; listing the seven category classification system created by the Legislature proving Petitioner's offense was intended to be part of the General Sentencing Law under the D.S.L.

5. Part 1 - Abstract of Judgment; Part 2 - Credit Computation Sheet with Zero "0" Threat Level CDC Status Sheet.

6. Part 1 - "NOTICE AND RESTATEMENT OF CLAIMS REGARDING DENIAL OF HABEAS/MANDAMUS RELIEF" in the State; Part 2 - State Supreme Court "ORDER" denying application for writ of Habeas Corpus and/or Mandamus Relief without a ruling on the merits (See: Cal. Const. Art. IV § 14).

7. "SANTA CLARA LAW REVIEW, VOL. 17; dealing with SB-42 and describing "**THE END OF THE INDETERMINATE SENTENCE**".

8. Proposed Court "ORDER" for issuance of "**ORDER TO SHOW CAUSE**" listing questions concerning fact and law.

**NOTE:** Petitioner respectfully requests this Court take judicial notice of the Legislative bills as exhibits obtained from the State Archives and the Statutes and Decisions relating to this case pursuant to the Federal Rules of Evidence Rules 201, 301, 401, and 901 thru 1005.

# TABLE OF AUTHORITIES CITED

| CASES | PAGE NUMBER |
|---|---|
| Albright v Oliver 510 U.S. 266, 276, 114 S.Ct. 807, 810 (1994) | 11 |
| Alexander v Perrill 916 F.2d 1392, 1398 (9th Cir. 1990) | 5 |
| Armstrong v Davis 275 F.3d 849, 856 (9th Cir. 2001) | 4 |
| Assoc. for Retarded Citizens v Dept. of Dev. Serv. 38 C.3d 384, 391-94, 211 Cal.Rptr. 758 (1985) | 5 |
| Bagley v City of Manhattan Beach 18 Cal.3d 22, 26, 132 Cal.Rptr. 668 (1976) | 8 |
| Bergen v Spaulding 881 F.2d 719, 721 (9th Cir. 1989) | 5 |
| Board of Pardons v Allen 482 U.S. 369, 374-380, 107 S.Ct 2415 (1987) | 10 |
| Carter v Osborn 150 Cal. 620, 622, 89 P. 608 (1907) | 6 |
| Daniels v United States 121 S.Ct. 1578, 1582-83 (2001) | 5 |
| Daniels v Williams 474 U.S. 327, 333-34, 106 S.Ct. 662 (1986) | 5, 10 |
| Drummey v State Bd of Funeral Directors 13 C.2d 75, 84-85, 87 P.2d 848 (1939) | 8 |
| Fairbank v United States 181 U.S. 283, 294, 21 S.Ct. 648 (1901) | 6 |
| Fletcher v Prather 102 Cal. 413, 420, 36 P. 648 (1894) | 6 |

Gray v Hall
203 Cal. 306, 316-317, 265 P. 246 (1928) 5

Haines v Kerner
404 U.S. 519, 520-21, 92 S.Ct. 594 (1972) 11

Henry v Mississippi
379 U.S. 443, 85 S.Ct. 564, 567 (1964) 10

Himes v Thompson
336 F.3d 848, 851-852 (9th Cir. 2003) 10

Hoffman Estates v Flipsides, Hoffman Estates, Inc.
455 U.S. 489, 495-98, 102 S.Ct. 1186 (1982) 10

Hopkins v Detrick
97 Cal.App.2d 50, 58-59, 217 P.2d 78, 84 (1950) 6

In re Kinney
53 Cal.App. 792, 794-795 (1921) 8

In re Porterfield
168 P.2d 706, 718-19 (1976) 8

In re Scott
133 Cal.App.4th 573 (2005) 2

In re Stanley
54 Cal.App. 1033, 1036-38, 126 Cal.Rptr. 524 (1976) 5

McQuillion v Duncan
306 F.3d 895, 903 (9th Cir. 2002) 5

Miller v Municipal Court
22 C.2d 818, 841, 851, 147 P.2d 297 (1947) 11

Norton v Shelby County
118 U.S. ___, 6 S.Ct. 1121, 1125 (1886) 6

Ortez v Washington County
88 F.3d 804, 807, (9th Cir. 1996) 11

Palermo v Stockton Theaters, Inc. 6
32 C.2d 53, 58-59, 195 P.2d 1 (1948)

People v Amdur 5
123 C.A.2d Supp. 951, 968, 267 P.2d 445 (1954)

People v Caddick 10
160 Cal.App.3d 46, 51-53, 206 Cal.Rptr. 454, 456 (1984)

People v Caruso 10
161 Cal.App.3d 13, 17-20, 207 Cal.Rptr. 221, 225 (1984)

People v Martinez 10
88 Cal.App.3d 890, 895-97, 152 Cal.Rptr. 204 (1979)

People v Olivas 5
17 Cal.3d 236, 242, 251, 131 Cal.Rptr. 55, 58, 64 (1976)

People v Ramirez 5, 10
25 Cal.3d 260, 265-66, 268, 158 Cal.Rptr. 316 (1979)

People v Saffell 10
25 Cal.3d 223, 236, 157 Cal.Rptr. 897 (1979)

People v Superior Court 8
13 Cal.4th 497, 917 P.2d 628 (1996)

People v Walker 4
18 Cal.3d 232, 243, 555 P.2d 306 (1976)

Roth Steel Products v Sharon Steel Corp. 10
705 F.2d 134, 155 (6th cir. 1982)

Scheuer v Rhodes 5, 10
416 U.S. 232, 236, 238, 94 S.Ct. 1683 (1974)

Springer v Government of Phillippine Islands 8
277 U.S. 189, 48 S.Ct. 480, 482 (1928)

Terhune v Superior Court 11
65 Cal.App.4th 864, 873-74, 76 Cal.Rptr. 841 (1998)

Toussaint v McCarthy 801 F.2d 1080, 1094-1097 (9th Cir. 1986) 5, 10

United States v Chambers 291 U.S. 217, 223-226 (1934) 6

Way v Superior Court 74 Cal.App.3d 165, 172, 141 Cal.Rptr. 383, 387 (1977) 4, 10

Wilkinson v Dotson 2005 LEXIS 2204, 73 U.S.L.W. 4204 4

Wolff v McDonnell 418 U.S. 539, 553-559 (1974) 5, 11

Yellow Freight System, Inc. V Donnelly 494 U.S. 820, 823-26, 110 S.Ct. 1566 (1990) 11

Yick Wo v Hopkins 118 U.S. 356, 6 S.Ct. 1064, 1070 (1886) 11

STATUTES

Stats 1977 C 165 5, 10

Proposition 7 (1978) 4, 5, 6, 8, 9, 11, 12

CALIFORNIA PENAL CODE SECTIONS

§1170 6, 10

§2930 5, 6, 10

§2931 3, 5, 6, 9, 10, 12

§2932 10

§3000 5, 9

§5076.1 6

UNITED STATES CONSTITUTION

Article 1 §9(2) 5, 6, 13

Article 1 §10(1) 5, 6, 9, 13

1st & 5th Amendments U.S. Constitution 5, 6, 8, 9, 13

6th Amendment U.S. Constitution 5, 6, 13
14th Amendment U.S. Constitution 5, 6, 8, 9, 14

CALIFORNIA CONSTITUTION

Art. I §7(a)(b) 5, 6, 9, 13
Art. I §§9 & 16 5, 9
Art. I §24 5
Art. I §26 5, 6
Art. II §10(c) 5, 9
Art. III §3 5, 9, 13
Art. IV §§9 & 16 5, 6, 9

OTHER

13 Cal Jur 3d §107 9
14 Cal Jur 3d §62-64, 87-101 9
Gov. Code §9609 6
Witkin & Epstein
Const. Law 9ed Vol. 7 §114, 129, 497, 500, 556 8, 9
Const. Law 9ed Vol. 7 §481 (1988) 6
Const. Law 9ed Vol. 7 §525, 556, 557 (1989) 6
Const. Law 9ed Vol. 8 §591, 593, 597 6

/ / / /

**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name Matlock Michael S.
(Last) (First) (Initial)

Prisoner Number D-14884

Institutional Address BLD. 10, 146-U; Post Office Box # 409040 Mule Creek State Prison, Ione, California 95640

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

(Enter the full name of plaintiff in this action.)
Michael Matlock, Petitioner,
vs.
Edmond G. Brown, Att. Gen.; James E. Tilton, Sec. of CDC&R; James Davis, BPH (C); M. Martel, Warden and Arnold Schwarzenegger, Governor.
(Enter the full name of respondent(s) or jailor in this action)

Case No. ____________
(To be provided by the clerk of court)

**PETITION FOR A WRIT OF HABEAS CORPUS**

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

Superior Court — San Matero County

Court — Location

(b) Case number, if known C-14883

(c) Date and terms of sentence 9/12/85 / 15 years to life

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes X No ____

Where? Mule Creek State Prison, Ione, California

Name of Institution: Mule Creek State Prison

Address: 4001 Hwy 104, Ione, California

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

Second Degree Murder

3. Did you have any of the following?

Arraignment: Yes X No ____

Preliminary Hearing: Yes X No ____

Motion to Suppress: Yes ____ No X

4. How did you plead?

Guilty ____ Not Guilty X Nolo Contendere ____

Any other plea (specify) ____

5. If you went to trial, what kind of trial did you have?

Jury X Judge alone____ Judge alone on a transcript ____

**Note:** In this case, Petitioner is **not** attacking his sentence or conviction.

6. Did you testify at your trial? Yes X No ____

7. Did you have an attorney at the following proceedings:

(a) Arraignment Yes X No ____

(b) Preliminary hearing Yes X No ____

(c) Time of plea Yes N/A No N/A

(d) Trial Yes X No ____

(e) Sentencing Yes X No ____

(f) Appeal Yes X No ____

(g) Other post-conviction proceeding Yes ____ No X

8. Did you appeal your conviction? Yes X No ____

(a) If you did, to what court(s) did you appeal? N/A

Court of Appeal Yes X No ____

Year: 1986 Result: denied

Supreme Court of California Yes ____ No X

Year: ____ Result: ____

Any other court Yes ____ No X

Year: ____ Result: ____

(b) If you appealed, were the grounds the same as those that you are raising in this

petition? Yes ____ No X

(c) Was there an opinion? Yes ____ No X

(d) Did you seek permission to file a late appeal under Rule 31(a)?

Yes ____ No X

If you did, give the name of the court and the result:

______________________________

______________________________

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal? Yes ____ No X

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).] Note I have never filed a post-conviction application in any court other than direct appeal, attacking my sentence or conviction.

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I. Name of Court: ______________________________

Type of Proceeding: ______________________________

Grounds raised (Be brief but specific):

a.______________________________

b.______________________________

c.______________________________

d.______________________________

Result: ____________________ Date of Result:__________

II. Name of Court: ______________________________

Type of Proceeding: ______________________________

Grounds raised (Be brief but specific):

a.________________________________________

b.________________________________________

c.________________________________________

d.________________________________________

Result: ________________________ Date of Result:__________

III. Name of Court: ________________________________

Type of Proceeding: ______________________________

Grounds raised (Be brief but specific):

a.________________________________________

b.________________________________________

c.________________________________________

d.________________________________________

Result: ________________________ Date of Result:__________

IV. Name of Court: ________________________________

Type of Proceeding: ______________________________

Grounds raised (Be brief but specific):

a.________________________________________

b.________________________________________

c.________________________________________

d.________________________________________

Result: ________________________ Date of Result:__________

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____ No_____

Name and location of court: ______________________________

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

need more space. Answer the same questions for each claim.

[Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: Petitioner's sentence is being unlawfully administered and his continued confinement is in violation of the State and Federal Constitutions. (See attached Memorandum of "P&A's").

Supporting Facts: Petitioner was convicted for a crime after 7/1/78 to a category 4 offense under the Determinate Sentencing Law (DSL) accord- to Senate Bill 42. As such, he is entitled to know the penalty for his offense to a "CERTAINTY" at the time of sentencing and the 1978 Prop. 7 Initiative Statute was not submitted to the voters to change this right.

Claim Two: Petitioner's sentence is being arbitrarily administered in violation of the "rule of law". (See: attached Memorandum of "P&A's).

Supporting Facts: At the time the 1978 Prop. 7 Initiative was passed, Respondent's for the BPH no longer possessed the power to fix Petitioner's term and the 1978 Prop. 7 Initiative did not revest the Parole Board with term fixing powers, nor was a constitutional amendment passed that would allow the voters to vest their power to fix term in this agency.

Claim Three: Petitioner is being denied his vested right to have been paroled according to the expressed language in the 1978 Prop. 7 Initiative's title.

Supporting Facts: The voters of Prop. 7 adopted Pen. Code § 2931 as their implementing mechanism for fixing Petitioner's parole release date to the exclusion of any other provisions of law conflicting with the mandatory language of Pen. Code §§ 1170(a)(1), 2931, and 3000, as set forth in Stats 1977 C 165 §§§ 15, 38, & 42. (See: Attached "P&A's)

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases: The citations used in these proceedings are listed in my "Table of Authorities" on pages -iii- thru -vii- attached hereto.

Do you have an attorney for this petition? Yes_____ No X

If you do, give the name and address of your attorney:

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on 01/26/08 Michael Matlock

Date Signature of Petitioner

(Rev. 6/02)

Michael S. Matlock, D-14884
BLD 10 / 146-U / M.C.S.P.
Post Office Box # 409040
Ione, California 95640

In pro se

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

CASE NO. ______________________

| | |
|---|---|
| MICHAEL MATLOCK,<br><br>Petitioner,<br><br>vs.<br><br>EDMOND G. BROWN, Jr., Attorney General; JAMES E. TILTON, Sec. of CDC&R; JAMES DAVIS, B.P.H. (C); M. MARTEL, Warden (A); & ARNOLD SCHARZENEGGER, Governor of the State of California,<br><br>Respondents, et al. | **PURSUANT TO:**<br><br>28 USC § 2254<br><br>**AND/OR**<br><br>**ALTERNATIVE PETITION FOR:**<br><br>DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO: 28 USC § 2201 and FRCP 57 & 65.<br><br>**MEMORANDUM OF:**<br><br>POINTS AND AUTHORITIES |

TO THE HONORABLE MAGISTRATE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

## INTRODUCTION

(1). PLEASE TAKE NOTICE THAT Petitioner is a prisoner of the State of California proceeding pro se with his application for writ of habeas corpus and/or declaratory and injunctive relief. Petitioner, who is now 55 years old was sentenced on 9/24/85 for the offense of 2nd degree murder to serve the sentence of 15 years to life. In this case, Petitioner is alleging that Respondents have been, and continue to unlawfully administer his sentence; based on the grounds listed in this application

as set forth in the State's habeas form attached hereto.

**OPENING STATEMENT**

(2). Petitioner's case should **not** be construed as an attack upon either his conviction or the sentence itself. This is a application filed for relief from the unlawful administration of Petitioner's sentence; based on the case of In re Scott, 133 Cal.App. 4th 573 (2005) cert. denied Nov. 30, 2005, submitted and decided by the court as the wrong choice of law question that has allowed Respondent(s) to act outside their conferred statutory authority to deny Petitioner his constitutional guarantees provided for by law. While the "Scott" case dealt with a person's so-called "suitability" for parole, Petitioner's case deals with a challenge to the way his sentence is being administered as a denial of his rights and privileges under the law in violation of substantive due process and equal protection of the laws provided for by the State and Federal Constitutions.

**GROUND I:**

(3). **In this case, Petitioner is contending his sentence is being wrongly administered, and his continued confinement is against the law and in violation of the State and Federal Constitutions.**

**Supporting Facts:**

(a). In 1977, the Legislature declared the purpose for imprisonment for the crime was "punishment" for the crime itself. In the same bill, the Legislature declared that under this purpose, supra, the "policy" was that all persons whose crime was committed after July 1, 1977 would be entitled to know the **CERTAINTY** of the penalty for their offense; "as

determined by the Legislature and imposed by a court of law with specified discretion". Under current State law, Petitioner believes this can only be accomplished by the term being fixed by law and the "specific performance" of the offender through the earning of a reduction of sentence by good-time and participation credits, infra. Petitioner has served the "base term" for his offense and according to his understanding, he was to be paroled by the Department of Corrections (see now the California Department of Corrections & Rehabilitation [CDC&R]) based on his own performance after he earned his liberty off his term, "subject to good-time credits". Because he has **not** yet been released, he is claiming that his continued confinement violates his rights to substantive due process and equal protection of the law under both State and Federal Constitutions. It is Petitioner's contention that after exhausting his administrative remedies, Respondents have knowingly persisted in denying him the lawful administration of his sentence. This has been the case even though he has shown them he did **not** receive a "**FOR LIFE**" sentence with the possibility of parole; which, according to the enabling statutes, was the only penalty scheme retained by the Legislature giving Respondent(s) discretion over parole for offenses committed after July 1, 1977. Therefore, unless it can be shown otherwise - according to the terms and conditions set forth in the statutes the way they were adopted into the initiative - Petitioner is requesting his penalty to be fixed by the court or "CDC&R", according to Penal Code § 2931, adopted as the implementing mechanism for fixing the

penalties for the "25 or 15 year terms", **OR** Petitioner is denied the lawful administration of his sentence according to the laws in effect on Nov. 8, 1978, the date Prop. 7 was ratified into law.

**Supporting cases, rules or other authority:**

(b). In this case, Petitioner will show that he has performed according to statute and Respondent(s) cannot produce "any" evidence required by the "rule of law" giving them the authority to deny Petitioner his vested rights entitling him to his earned liberty according to law. In point of fact, Petitioner's case will show by convincing statutory evidence that Respondent(s) have failed to uniformly and/or lawfully administer the law and have denied Petitioner the lawful administration of his sentence according to the laws in effect at the time of his conviction. In this case, Petitioner respectfully request this court to decide his case under both State and Federal Constitutions. Whereas the United States Supreme Court has held that Prisoners may attack the unlawful administration of their sentence and denial of earned good-time and participation credits as either a violation of their "Civil Rights" or by way of "Habeas Corpus" (See: e.g., Wilkinson v. Dotson, 2005 LEXIS 2204; 73 U.S.L.W. 4204; Armstrong v. Davis, 275 F.3d 849, **856** (9th Cir. 2001); [holding: Parole agency only retained jurisdiction over state prisoners sentenced "**FOR LIFE**"; Way v. Superior Court, 74 Cal.App.3d 165, **172** [141 C.R. 383, **387**] (1977) [Re: designation of a "**FOR LIFE**" sentence]; see People v. Walker, 18 Cal.3d 232, **243** [555 P.2d 306] (1976) [holding: That a "FOR

LIFE" term expires or terminates **only** upon death or pardon, and not upon parole."]; Assoc. for Retarded Citizens v. Depart. of Dev. Serv. 38 C.3d 384, **391-94** [211 C.R. 758] (1985) [holding: "...administrative action transgressing the agency's statutory authority is **void.**"]; see **s/n #1**:). Because Petitioner was **not** sentenced to be imprisoned "**FOR LIFE**", supra, and he is not attacking his conviction or sentence, but challenges the unlawful administration of his sentence, he asks that he be allowed to invoke his right to a judicial determination of the constitutional questions presented and of other questions of law, such as those dealing

---

**s/n #1**: Petitioner may raise constitutional claims in post conviction proceedings available under state law, and in a petition for writ of habeas corpus see generally, Daniels v. United States, 121 S.Ct. 1578, **1582-83** (2001); Alexander v. Perrill, 916 F.2d 1392, **1398** (9th Cir. 1990) [holding: Prison officials cannot just sit still and violate petitioner's constitutional guarantees]; Bergen v. Spaulding, 881 F.2d 719, **721** (9th Cir. 1989) [holding: "... prisoners of the state have a liberty interest in being released by the lawful authority, on time, in conformity with the sentence - pursuant to the expressed language contained within Prop. 7's Title - in accordance with the relevant state statutes such as those providing for good time."]; see McQuillion v. Duncan, 306 F.3d 895, **903** (9th Cir. 2002) [holding: "[U]nder the 'clearly established' framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest in release on parole."]; Toussaint v. McCarthy, 801 F.2d 1080, **1094-1097** (9th Cir. 1986) cert. denied, 481 U.S. 1069 (1987); cf Wolff v. McDonnell, 418 U.S. 539, **553-559** (1974) [Re: Good-time Credits]; In re Stanley, 54 Cal.App. 1033, **1036-38** [126 C.R. 524] (1976) [holding: "[T]he purpose of the legislature in creating a parole system . . . is to permit the liberation of a prisoner on parole at the earliest period when permitted by law ..."]; People v. Olivas, 17 Cal.3d 236, **242** n. 8, **251** [131 C.R. 55, 58, 64] (1976) [holding: "A person detained under such an order is entitled to a jury trial on the issue of dangerousness."] (citations omitted) and "[W]e conclude that personal liberty is a fundamental interest, second only to life itself, as an interest protected under both California and United States Constitutions."]; see also: Scheuer v. Rhodes, 416 U.S. 232, **236**, **238**, 94 S.Ct. 1683 (1974) [Re: Standing to enjoin officials from invading constitutional rights]; People v. Amdur, 123 C.A.2d Supp. 951, **968** [267 P.2d 445] (1954) [Re: unconstitutional application of valid statute]; Gray v. Hall, 203 Cal. 306, **316-317** [265 P. 246] (1928) [Re: Standing to attack unconstitutional judgment]; see also: Daniels v. Williams, 474 U.S. 327, **333-34** [106 S.Ct. 662] (1986) and People v. Ramirez, 25 Cal.3d 260, **265-66**, **268** [158 C.R. 316] (1979) [Re: liberty interest established by good-time credits under due process clause protected by State and Federal Constitutions]; **EXHIBIT 1** Part 1: "The 1978 Prop. 7 Initiative Statute"; Part 2: "Exhaustion of Administrative Remedies"; **EXHIBIT** 3, Pen. Code §§ 2930 et seq., Stats 1977 C 165 §§ 36, 37, 38, & 39; emphasis on: Pen. Code §§ 2931; and 3000(f), Stats 1977 C 165 §§ 38 & 42; see Cal. Const. Art. 1 §§ 7(a)&(b), 9, 24, & 26; Art. II § 10(c); Art. III § 3; Art. IV §§ 9 & 16; U.S. Const. Art. 1 §§ 9(2) & 10(1); and the 1st, 5th, 6th, and 14th Amendments.

with the interpretation and application of statutes (See: e.g., Pen. Code §§ 1170 and 2931 together with Prop. 7; see also: Witkin Const. Law 9ed Vol. 7 §§ 525, 556, & 557 (1989)).

**Additional Facts in Support of Habeas/Mandamus Relief:**

(c). Petitioner did not receive a "**FOR LIFE**" sentence. Without any evidence to deny him his vested rights, Respondents, et al., have failed to follow the law as written when Petitioner was not released "subject to earned good-time credits", infra. The result is his sentence has **not** been administered according to what the voters were told in the title of the bill. This case will provide, inter alia, indisputable evidence that after the Adult Authority's discretion to fix terms was repealed for abuse, they enlarged Pen. Code § 5076.1 as well as the D.S.L. penalty structure in order to re-vest themselves repealed term fixing discretion. Furthermore, they misused their powers to make rules and regulations created by them under the repealed I.S.L., to continue a hearing process - that was labeled as a failed experiment under a repealed body of laws - to vest themselves power where none was conferred by law (See: **s/n #2**). The result is Respondent(s) have been imposing their will on

---

**s/n #2:** Witkin, Const. Law 9ed Vol. 7 §§ 481 & 497 (1988) [Re: substantive due process and repealed laws]; see also Vol. 8 §§ 591, 593, & 597 [Re: equal protection of the law]; see Hopkins v. Detrick, 97 Cal.App.2d 50, **58-59** [217 P.2d 78, **84**] (1950); Palermo v. Stockton Theaters, Inc., 32 C.2d 53, **58-61** [195 P.2d 1] (1948) [Re: adoption of P.C. § 2931, by specific reference]; Carter v. Osborn, 150 Cal. 620, **622** [89 P. 608] (1907); Fletcher v. Prather, 102 Cal. 413, **420** [36 P. 648] (1894) [Re: amendment or adoption of repealed law]; see Cal. Gov. Code § 9609; United States v. Chambers, 291 U.S. 217, **223-226** (1934); Norton v. Shelby County, 118 U.S. ___, 6 S.Ct. 1121, **1125** (1886); see Cal. Const. Art. 1 §§ 7(a)&(b), Art. 1 §§ 9 & 26; Art. IV §§ 9 & 16, supra, see also Fairbank v. United States, 181 U.S. 283, **294** [21 S.Ct. 648] (1901) [Re: Limitation on Legislative Power]; see **EXHIBIT 1**, Part 2, supra, Id at ¶¶ 8 & 10; see also **EXHIBIT 5**, Abstract of Judgment and documents in support of granting this application.

Petitioner by requiring him to perform acts unauthorized by law. This deceived and misled Petitioner into the false hope and belief that his release was being determined by those who had the right authority to decide the penalty for his offense. When in point of fact, and according to law, Petitioner's parole should have been fixed based on his own specific performance "**subject to good-time credits**", by the Department of Corrections (CDC&R), and **not** the Board of Prison Terms so-called suitability hearing process retained by the Legislature for those receiving a "**FOR LIFE**" penalty as decided by a jury (Note: the Parole Agency is now called the Board of Parole Hearings [B.P.H]). This denied Petitioner his right of contract and his constitutional guarantees of substantive due process and equal protection of the law under both State and Federal Constitutions.

**GROUND II:**

**(4). Petitioner's penalty for his offense, is arbitrarily being administered in violation of the "rule of law".**

**Supporting Facts:**

(a). Had the Legislature meant to retain some part of the repealed "Indeterminate Sentencing Law" (I.S.L.) under the policy of "punishment" for the crime itself, it would have made provision for it by law. The way Petitioner's sentence is now being administered, it allows for different penalties to be inflicted on different persons committing the same offense. This has the imposition of the "final term" of the penalty to be inflicted, being arbitrarily determined at an uncertain time many years into the future by those within the

same branch as those charged with Petitioner's prosecution. Petitioner contends it would be unconstitutional if the final determination of his penalty can be determined according to the whim or caprice of persons within a executive branch agency, whose powers have been repealed for abuse. That to have the effect of law, the Constitution would have to be amended to provide the Legislature the authority allowing it to vest its powers elsewhere, and to provide for this kind of uncertain law making. This was not a subject submitted to the voters in the 1978 Prop. 7 Initiative.

**Supporting cases, rules, and other authority:**

(b). Because Respondent(s) cannot show the Court under the "rule of law" that they were given constitutional power in some form and/or statutory jurisdiction over Petitioner's sentence to fix his penalty, under the Legislature's declared policy of "punishment" for the crime itself, he is being denied both "substantive due process" and "equal protection of the law" under both State and Federal Constitutions, supra, (See **s/n #3**:).

**GROUND III:**

(5). **Petitioner is being denied his right of contract after fulfilling his obligations entitling him to his "MANDATORY" earned parole release earned from the credits off the sentence; according to the will of**

**s/n #3**: e.g., In re Porterfield, 168 P.2d 706, **718-19** (1976); Drummey v. State Bd. of Funeral Directors, 13 C.2d 75, **84-85** [87 P.2d 848] (1939); In re Kinney, 53 Cal.App. 792, **794-795** (1921); Witkin & Epstein, Crim. Law 2ed Vol. 1 § 12 (1988), 13 Cal.Jur 3d §§ 104 to 107; Cal. Const. Art. III § 3, supra; People v. Superior Court, 13 Cal.4th 497, [917 P.2d 628] (1996) [applying separation of powers analysis to statute enacted by initiative]; cf. Bagley v. City of manhattan Beach, 18 Cal.3d 22, **26** [132 C.R. 668] (1976); Springer v. Government of Philippine Islands, 277 U.S. 189, 48 S.Ct. 480, **482** (1928); and U.S. Const's 1st, 5th, & 14th Amend's; Witkin, Const. Law 9ed Vol. 7 §§ 114, 129, 497, 500, 556 at pp. 765-767 & 557 at pp. 767-768; see also: **EXHIBIT 4**, supra, SB-42 - **WAYS AND MEANS**, depicting Legislature's "Seven Category Classification System for Crimes" codified by the DSL in Pen. Code § 1170, et seq.).

the voters due to the expressed language used in the title of the initiative and the terms of the contract clause contained in the statutes adopted as the implementing mechanism for determining the amount of "punishment" for his offense.

Supporting Facts:

(a). Petitioner contends he has not committed any of the acts prohibited by Pen. Code § 2931, et seq., - as it was adopted by the voters - therefore, based on his specific performance his sentence must be reduced according to the provisions of Pen. Code § 2931 and he must be paroled according to Pen. Code § 3000(f), by the "CDC&R" as the proper authority, according to these statutes as they existed at the time of Prop. 7's ratification. OR, unless it can be shown otherwise, he is being denied the same rights and privileges as those within the class for which these laws were created; in violation of substantive due process and equal protection of the law provisions of both State and Federal Constitutions.

Supporting cases, rules or other authority:

(b). Petitioner was told he would be paroled once he served his base term less his earned credits fixing his "**MANDATORY**" release date. In this case, he offers evidence that shows his continued imprisonment is in violation of the Constitutions of the State and Federal Governments (See: Cal. Const. Art. 1 §§§ 7(a)&(b), 9, 26; Art. II § 10(c); Art. III § 3; Art. IV §§ 9 & 16; and Art. 1 § 10(1) and the 1st, 5th, & 14th Amend.'s to the U.S. Const., supra, see also: Witkin, supra, Const. Law 9ed Vol. 7 §§ 114 & 129, supra; see also: 13 Cal.Jur 3d 107, supra and 14 Cal.Jur 3d §§ 62 to 64 and 87 to 101). As such, this Court has both personal and subject

matter jurisdiction over Petitioner's claims based on both State and Federal law (See: Board of Pardons v. Allen, 482 U.S. 369, 374-380 [107 S.Ct. 2415] (1987); [Re: liberty interest based on Pen. Code §§ 1170 et seq., 2930 et seq., and Prop. 7's Title]; Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982); Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 567 (1964) [Holding: state procedural rule cannot be invoked mechanically to defeat federal constitutional right]; Scheuer v. Rhodes, 416 U.S. 232, 236 [94 S.Ct. 1683] (1974) [Articulating the "rule" that all well-pled factual allegation as true, and views all reasonable inferences in petitioner's favor]; **see s/n #4**:). In this case, Petitioner asks that this Court construe this matter under both State and Federal Constitutions (See: e.g., Terhune

---

**s/n #4**: Petitioner served in excess of his Mandatory good-time release date, he has reduced his point level threat to "zero", and specifically performed according to statute. See e.g., People v. Caddick, 160 Cal.App.3d 46, 51-53 [206 C.R. 221, 225] (1984); People v. Caruso, 161 Cal.App.3d 13, 17-20 [207 C.R. 221, 225] (1984); see Toussaint v. McCarthy, supra, 801 F.2d Id at 1094-1097; People v. Saffell, 25 Cal.3d 223, 236 [157 C.R. 897] (1979); People v. Ramirez, supra, 25 Cal.3d Id at p. 268-69; [Re: "...freedom from arbitrary adjudication procedures is a substantive element of one's liberty."]; Way v. Superior Court, supra, 74 Cal.App.3d Id at p. 171 [holding: "[I]n prison, the Act provides for 'good time' and 'participation' credits to reduce the sentence by up to one-third (Pen. Code §§ 2930 & 2931). Upon expiration of the prison sentence, the inmate must be released on parole for a period not exceeding one year."]; and Himes v. Thompson, 336 F.3d 848, 851-852 n. 2 (9th Cir. 2003) [holding: "[T]he 'good time' date refers to an inmate's entitlement to a reduction in prison term if 'the inmate faithfully has observed the rules of the institution. Once an inmate's good time date arrives', the inmate is entitled to unconditional release, and the Board of Parole loses jurisdiction over the inmate."]; see Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495-98 [102 S.Ct. 1186] (1982) [holding: "A facial attack against a law's constitutionality may proceed along four axes: (1). the law may impermissibly burden the plaintiff's rights, (2). it may impermissibly burden the rights of third parties, (3). it may fail to provide adequate notice of what conduct is prohibited, or (4). it may lack sufficient guidelines to prevent arbitrary and discriminatory enforcement."]; Daniels v. Williams, 474 U.S. 327, 333-34, 106 S.Ct. 662, 665, 677-78 (1986); see EXHIBIT 3, supra - Pen. Code §§ 2930 to 2932, Stats 1977 C 165 §§§ 37, 38, & 39; EXHIBIT 2 - AB-476 & Part 1 - WAYS AND MEANS STAFF ANALYSIS and Part 2 - ENROLLED BILL REPORT AND ASSEMBLY COMMITTEE ON CRIMINAL JUSTICE AB-476 Bill Analysis; see also: People v. Martinez, 88 Cal.App.3d 890, 895-97 [152 C.R. 204] (1979); and EXHIBIT 4 - SB-42 (1976) - "Classification of Crimes" applicable to Pen. Code §§ 1170 and 2931, et seq.).

Superior Court, 65 Cal.App.4th 864, **873-74** [76 C.R. 841] (1998); Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, **823-26** [110 S.Ct. 1566] (1990)). At best, Respondent(s) failure to act in implementing Petitioner's sentence according to the conditions outlined in Pen. Code § 2931 on the same terms equally, only proves who is responsible for violating Petitioner's constitutional rights (See: Ortez v. Washington County, 88 F.3d 804, **807** (9th Cir. 1996); cf., Haines v. Kerner, 404 U.S. 519, **520-21** [92 S.Ct. 594] (1972); see also: Albright v. Oliver, 510 U.S. 266, **276** [114 S.Ct. 807, **810**] (1994); Wolff v. McDonnel, supra, 418 U.S. id at pp. **555-57**; Miller v. Municipal Court, 22 C.2d 818, **841**, **851** [147 P.2d 297] (1947); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, **1070** (1886) see: **EXHIBIT** 5, Part 2; see also: **s/n #4**, supra).

**Conclusions:**

(6). Unless Respondents can supply this Court with statutory evidence allowing them to hold an arbitrary hearing process to decide whether or not Petitioner is entitled to his vested rights to his already earned Mandatory good-time release date, without a hearing in this Court to decide the matter, then, he has been denied his earned liberty and he should be immediately released by the Court. Petitioner has shown that the specific performance clause contained in the credit earning statutes adopted by the voters and set forth in the language used in the title of the 1978 Prop. 7 Initiative, based on the statutes as they existed at the time they were adopted into Prop. 7 was the only means for implementing the amount of "punishment" to be inflicted for his offense. In

any event, Petitioner will show that Respondent(s) actions to hold so-called "suitability hearings" that interfer with his right of contract, is against the law and outside the Parole Board's conferred authority. In addition to Petitioner's already made statements, Petitioner will produce documented evidence showing Respondent(s) are acting on their own agenda to vest themselves powers where none was conferred by law and the result has been his sentence is being unlawfully administered in violation of his rights guaranteed under the State and Federal Constitutions, supra (See: **EXHIBITS 1** - Prop. 7 and 3 - Pen. Code § 2931, et seq. see also: **EXHIBIT** 5, Part 1: **ABSTRACT OF JUDGMENT** and Part 2: **CREDIT COMPUTATION SHEET** - Showing "Mandatory" good-time release date and Zero "0" threat level status sheet created by the Department of Corrections).

Relief Requested

(7). If Respondents fail or cannot respond to the Court's "ORDER TO SHOW CAUSE" - requested by a separate motion attached hereto - due to incurred liability stemming from the proof of Petitioner's claims showing how Respondent(s) have knowingly failed to administer his sentence, that this Court grant Petitioner's habeas/mandamus writ, and order immediate relief in the form of his discharge; based on his substantial showing that he has been denied due process and equal protection of the law. In addition, that this Court grant Petitioner's request for declaratory and injunctive relief, declaring his sentence has been served up to his earned release date and he has been denied his earned right to parole

for no reason; after earning his credits that guaranteed him his liberty under both State and Federal Constitutions. For which, this Court is asked to "ORDER" Petitioner to be released forthwith (emphasis on Cal. Const. Art. 1 § 7(a)&(b) and Art. III § 3, as well as the due process and equal protection of the law provisions of Art. 1 §§ 9(2) and 10(1) and the 1st, 5th, 6th and 14th Amend's to the U.S. Const.).

Respectfully submitted,

**VERIFICATION**

As the Petitioner in the above entitled action, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on 01 (Month) 26th (Day), 2008.

Michael Matlock
(Signature)

****************

# PROOF OF SERVICE BY MAIL

Case Name: Michael S. Matlock, Petitioner,

vs.

EDMOND G. BROWN, Jr., Attorney General; JAMES E. TILTON, Sec. of CDC&R; JAMES DAVIS, B.P.H., (C); M. MARTEL, Warden, A; and ARNOLD SCHWARZENEGGER, Governor of the State of California,

Respondents, et al.

Case Number:

I DAVID JONES, declare and state as follows: I am 18 years or older and not a party to this action. My Address is Post Office Box Number 409040, Ione, California 95640.

On January (Month) 26th (Day), 2008, I served the attached: **PETITION FOR WRIT OF HABEAS CORPUS WITH P&A'S AND EXHIBITS** by placing a true copy enclosed in a sealed envelope with postage fully paid thereon, in the United States Mail at Mule Creek State Prison, at Ione, California addressed as follows:

**PARTIES SERVED**

| NAME | ADDRESS | DATE SERVED |
|---|---|---|
| Office of the Clerk U.S. Dist. Court for the Northern District | 450 Golden Gate Avenue San Francisco, CA 94102 | 01/26/08 |
| Edmond G. Brown Jr. Attorney General | 1300 I. Street Sacramento, CA 95814 | |
| James E. Tilton, Sec. of CDC&R | Post Office Box No. 942883 Sacramento, California 95814 | |
| Bd. of Parole Hearings Attn: James Davis (C) | Post Office Box No. 4036 Sacramento, CA 95812-4036 | |
| M. Martel, Warden (A) | Mule Creek State Prison Post Office Box # 409099 Ione, California 95640 | |

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on January (Month) 26th (Day), 2008, at Mule Creek State Prison, at Ione, CA 95640-9000.

DAVID JONES

David Jones
(Signature)

E-filing

# TABLE OF EXHIBITS

CV 08 0745 JW (PR)

1. Part 1 - 1978 Proposition 7 Murder Penalty Initiative Statute; Part 2 - Exhaustion of Administrative Remedies.

2. Assembly Bill 476, Stats 1977 C 165; showing that all persons, whether sentenced under the repealed Indeterminate Sentencing Law (ISL), or the Determinate Sentencing Law (DSL), are entitled to know the "**CERTAINTY**" of the penalty for their offense at the time of sentencing.

3. Penal Code §§§ 2930, 2931, and 2932, Stats 1977 C. 165; describing the specific performance contractual agreement between the State and the prisoner as adopted by the voters in the 1978 Prop. 7 Initiative.

4. Senate Bill 42 (1976), Stats 1976 C 1139; listing the seven category classification system created by the Legislature proving Petitioner's offense was intended to be part of the General Sentencing Law under the D.S.L.

5. Part 1 - Abstract of Judgment; Part 2 - Credit Computation Sheet with Zero "0" Threat Level CDC Status Sheet.

6. Part 1 - "NOTICE AND RESTATEMENT OF CLAIMS REGARDING DENIAL OF HABEAS/MANDAMUS RELIEF" in the State; Part 2 - State Supreme Court "ORDER" denying application for writ of Habeas Corpus and/or Mandamus Relief without a ruling on the merits (See: Cal. Const. Art. IV § 14).

7. "SANTA CLARA LAW REVIEW, VOL. 17; dealing with SB-42 and describing "**THE END OF THE INDETERMINATE SENTENCE**".

8. Proposed Court "ORDER" for issuance of "**ORDER TO SHOW CAUSE**" listing questions concerning fact and law.

**NOTE**: Petitioner respectfully requests this Court take judicial notice of the Legislative bills as exhibits obtained from the State Archives and the Statutes and Decisions relating to this case pursuant to the Federal Rules of Evidence Rules 201, 301, 401, and 901 thru 1005.

# 7 Murder. Pen[illegible]y—Initiative Statute

## Official Title and Summary Prepared by the Attorney General

**MURDER. PENALTY. INITIATIVE STATUTE.** Changes and expands categories of first degree murder for which penalties of death or confinement without possibility of parole may be imposed. Changes minimum sentence for first degree murder from life to 25 years to life. Increases penalty for second degree murder. Prohibits parole of convicted murderers before service of 25 or 15 year terms, subject to good-time credit. During punishment stage of cases in which death penalty is authorized: permits consideration of all felony convictions of defendant; requires court to impanel new jury if first jury is unable to reach a unanimous verdict on punishment. Financial impact: Indeterminable future increase in state costs.

## Analysis by Legislative Analyst

**Background:**

Under existing law, a person convicted of *first degree murder* can be punished in one of three ways: (1) by death, (2) by a sentence of life in prison without the possibility of parole, or (3) by a life sentence with the possibility of parole, in which case the individual would become eligible for parole after serving seven years. A person convicted of *second degree murder* can be sentenced to 5, 6, or 7 years in prison. Up to one-third of a prison sentence may be reduced through good behavior. Thus, a person sentenced to 6 years in prison may be eligible for parole after serving 4 years.

Generally speaking, the law requires a sentence of death *or* life without the possibility of parole when an individual is convicted of first degree murder under one or more of the following special circumstances: (1) the murderer was hired to commit the murder; (2) the murder was committed with explosive devices; (3) the murder involved the killing of a specified peace officer or witness; (4) the murder was committed during the commission or attempted commission of a robbery, kidnapping, forceable rape, a lewd or lascivious act with a child, or first degree burglary; (5) the murder involved the torture of the victim; or (6) the murderer has been convicted of more than one offense of murder in the first or second degree. If any of these special circumstances is found to exist, the judge or jury must "take into account and be guided by" aggravating or mitigating factors in sentencing the convicted person to either death or life in prison without the possibility of parole. "Aggravating" factors which might warrant a death sentence include brutal treatment of the murder victim. "Mitigating" factors, which might warrant life imprisonment, include extreme mental or emotional disturbance when the murder occurred.

**Proposal:**

This proposition would: (1) increase the penalties for first and second degree murder, (2) expand the list of special circumstances requiring a sentence of either death or life imprisonment without the possibility of parole, and (3) revise existing law relating to mitigating or aggravating circumstances.

The measure provides that individuals convicted of first degree murder and sentenced to life imprisonment shall serve a minimum of 25 years, less whatever credit for good behavior they have earned, before they can be eligible for parole. Accordingly, anyone sentenced to life imprisonment would have to serve at least 16 years and eight months. The penalty for second degree murder would be increased to 15 years to life imprisonment. A person sentenced to 15 years would have to serve at least 10 years before becoming eligible for parole.

The proposition would also expand and modify the list of special circumstances which require either the death penalty or life without the possibility of parole. As revised by the measure, the list of special circumstances would, generally speaking, include the following: (1) murder for any financial gain; (2) murder involving concealed explosives or explosives that are mailed or delivered; (3) murder committed for purposes of preventing arrest or aiding escape from custody; (4) murder of any peace officer, federal law enforcement officer, fireman, witness, prosecutor, judge, or elected or appointed official with respect to the performance of such person's duties; (5) murder involving particularly heinous, atrocious, or cruel actions; (6) killing a victim while lying in wait; (7) murder committed during or while fleeing from the commission or attempted commission of robbery, kidnapping, specified sex crimes (including those sex crimes that now represent "special circumstances"), burglary, arson, and trainwrecking; (8) murder in which the victim is tortured or poisoned; (9) murder based on the victim's race, religion, nationality, or country of origin; or (10) the murderer has been convicted of more than one offense of murder in the first or second degree.

Also, this proposition would specifically make persons involved in the crime other than the actual murderer subject to the death penalty or life imprisonment without possibility of parole under specified circumstances.

Finally, the proposition would make the death sentence *mandatory* if the judge or jury determines that the aggravating circumstances surrounding the crime *outweigh* the mitigating circumstances. If aggravating circumstances are found *not* to outweigh mitigating circumstances, the proposition would require a life sentence without the possibility of parole. Prior to weighing the aggravating and mitigating factors, the jury

would have to be informed that life w[illegible]e possibility of parole might at a later date be su[illegible] to commutation or modification, thereby allowing parole.

**Fiscal Effect:**

We estimate that, over time, this measure would increase the number of persons in California prisons, and thereby increase the cost to the state of operating the prison system.

The increase in the prison population would result from:

- the longer prison sentences required for first degree murder (a minimum period of imprisonment equal to 16 years, eight months, rather than seven years);
- the longer prison sentences required for second degree murder (a minimum of ten years, rather than four years); and
- an increase i[illegible]umber of persons sentenced to life without the [illegible]ibility of parole.

There could also be an increase in the number of executions as a result of this proposition, offsetting part of the increase in the prison population. However, the number of persons executed as a result of this measure would be significantly less than the number required to serve longer terms.

The Department of Corrections states that a small number of inmates can be added to the prison system at a cost of $2,575 per inmate per year. The additional costs resulting from this measure would not begin until 1983. This is because the longer terms would only apply to crimes committed after the proposition became effective, and it would be four years before any person served the minimum period of imprisonment required of second degree murderers under existing law.

## Text of Proposed Law

This initiative measure proposes to repeal and add sections of the Penal Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

Section 1. Section 190 of the Penal Code is repealed.

~~190. Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in state prison for life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5. Every person guilty of murder in the second degree is punishable by imprisonment in the state prison for five, six, or seven years.~~

Sec. 2. Section 190 is added to the Penal Code, to read:

*190. Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.*

*Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life.*

*The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time.*

Sec. 3. Section 190.1 of the Penal Code is repealed.

~~190.1. A case in which the death penalty may be imposed pursuant to this chapter shall be tried in separate phases as follows:~~

~~(a) The defendant's guilt shall first be determined. If the trier of fact finds the defendant guilty of first degree murder, it shall at the same time determine the truth of all special circumstances charged as enumerated in Section 190.2, except for a special circumstance charged pursuant to paragraph (5) of subdivision (c) of Section 190.2 where it is alleged that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree.~~

~~(b) If the defendant is found guilty of first degree murder and one of the special circumstances is charged pursuant to paragraph (5) of subdivision (c) of Section 190.2 which charges that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree, there shall thereupon be further proceedings on the question of the truth of such special circumstance.~~

~~(c) If the defendant is found guilty of first degree murder and one or more special circumstances as enumerated in Section 190.2 has been charged and found to be true, his sanity on any plea of not guilty by reason of insanity under Section 1026 shall be determined as provided in Section 190.4. If he is found to be sane, there shall thereupon be further proceedings on the question of the penalty to be imposed. Such proceedings shall be conducted in accordance with the provisions of Sections 190.3 and 190.4.~~

Sec. 4. Section 190.1 is added to the Penal Code, to read:

*190.1. A case in which the death penalty may be imposed pursuant to this chapter shall be tried in separate phases as follows:*

*(a) The question of the defendant's guilt shall be first determined. If the trier of fact finds the defendant guilty of first degree murder, it shall at the same time determine the truth of all special circumstances charged as enumerated in Section 190.2 except for a special circumstance charged pursuant to paragraph (2) of subdivision (a) of Section 190.2 where it is alleged that the defendant had been convicted in a prior proceeding of the offense of murder in the first or second degree.*

*(b) If the defendant is found guilty of first degree murder and one of the special circumstances is charged pursuant to paragraph (2) of subdivision (a) of Section 190.2 which charges that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree, there shall thereupon be further proceedings on the question of the truth of such special circumstance.*

*(c) If the defendant is found guilty of first degree murder and one or more special circumstances as enumerated in Section 190.2 has been charged and found to be true, his sanity on any plea of not guilty by reason of insanity under Section 1026 shall be determined as provided in Section 190.4. If he is*

*Continued on page 41*

*(g) "Fully Enclosed" means c[illegible] y a ceiling or roof and by walls on all sides.*

*(h) "Health Facility" has the meaning set forth in Section 1250 of the Health and Safety Code, whether operated by a [illegible]ublic or private entity.*

*(i) "Place of Employment" means any area under the control of a public or private employer which employees normally frequent during the course of employment but to which members of the public are not normally invited, including, but not limited to, work areas, employee lounges, restrooms, meeting rooms, and employee cafeterias. A private residence is not a "place of employment."*

*(j) "Polling Place" means the entire room, hall, garage, or other facility in which persons cast ballots in an election, but only during such time as election business is being conducted.*

*(k) "Private Hospital Room" means a room in a health facility containing one bed for patients of such facility.*

*(l) "Public Place" means any area to which the public is invited or in which the public is permitted or which serves as a place of volunteer service. A private residence is not a "public place." Without limiting the generality of the foregoing, "public place" includes:*

*(i) arenas, auditoriums, galleries, museums, and theaters;*

*(ii) business establishments dealing in goods or services to which the public is invited or in which the public is permitted;*

*(iii) instrumentalities of public transportation while operating within the boundaries of the State of California;*

*(iv) facilities or offices of physicians, dentists, and other persons licensed to practice any of the healing arts regulated under Division 2 of the Business and Professions Code;*

*(v) elevators in commercial, governmental, office, and residential buildings;*

*(vi) public restrooms;*

*(vii) jury [illegible] and juror waiting rooms;*

*(viii) pollin[illegible] [illegible]es;*

*(ix) courtesy vehicles.*

*(m) "Restaurant" has the meaning set forth in Sectio[n] 28522 of the Health and Safety Code except that the ter[m] "restaurant" does not include an employee cafeteria or a tav[ern] or cocktail lounge if such tavern or cocktail lounge is "bar" pursuant to Section 25939(a).*

*(n) "Retail Tobacco Store" means a retail store used pr[i]marily for the sale of smoking products and smoking accesso[]ries and in which the sale of other products is incidenta[l]. "Retail tobacco store" does not include a tobacco departmen[t] of a retail store commonly known as a department store.*

*(o) "Rock Concert" means a live musical performanc[e] commonly known as a rock concert and at which the musi[]cians use sound amplifiers.*

*(p) "Semi-Private Hospital Room" means a room in [a] health facility containing two beds for patients of such facilit[y].*

*(q) "Smoking" means and includes the carrying or holdin[g] of a lighted cigarette, cigar, pipe, or any other lighted smok[]ing equipment used for the practice commonly known a[s] smoking, or the intentional inhalation or exhalation of smok[e] from any such lighted smoking equipment."*

SECTION 2: Severability

If any provision of Chapter 10.7 of the Health and Safety Code or the application thereof to any person or circumstance is held invalid, any such invalidity shall not affect other provisions or applications of said Chapter which can be given effec[t] without the invalid provision or application, and to this end the provisions of said Chapter are severable.

SECTION 3: Effective Date

Chapter 10.7 of the Health and Safety Code becomes effective 90 days after approval by the electorate.

---

TEXT OF PROPOSITION 6—*Continued from page 29*

*truth of the charges upon which a finding of probable cause was based and whether such charges, if found to be true, render the employee unfit for service. This hearing shall be held in private session in accordance with Gov't. Code § 54957, unless the employee requests a public hearing. The governing board's decision as to whether the employee is unfit for service shall be made within thirty (30) working days after the conclusion of this hearing. A decision that the employee is unfit for service shall be determined by not less than a simple majority vote of the entire board. The written decision shall include findings of fact and conclusions of law.*

*(f) Factors to be considered by the board in evaluating the charges of public homosexual activity or public homosexual conduct in question and in determining unfitness for service shall include, but not be limited to: (1) the likelihood that the activity or conduct may adversely affect students or other employees; (2) the proximity or remoteness in time or location of the conduct to the employee's responsibilities; (3) the extenuating or aggravating circumstances which, in the judgment of the board, must be examined in weighing the evidence; and (4) whether the conduct included acts, words or deeds, of a continuing or comprehensive nature which would tend to encourage, promote, or dispose schoolchildren toward private or public homosexual activity or private or public homosexual conduct.*

*(g) If, by a preponderance of the evidence, the employee is found to have engaged in public homosexual activity or public homosexual conduct which renders the employee unfit for service, the employee shall be dismissed from employment. The decision of the governing board shall be subject to judicial review.*

SECTION 4. Severability Clause

If any provision of this enactment or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or application of this enactment which can be given effect without the invalid provision of application, and to this end the provisions of this enactment are severable.

---

TEXT OF PROPOSITION 7—*Continued from page 33*

*found to be sane, there shall thereupon be further proceedings on the question of the penalty to be imposed. Such proceedings shall be conducted in accordance with the provisions of Section 190.3 and 190.4.*

Sec. 5. Section 190.2 of the Penal Code is repealed.

~~190.2. The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found, in a proceeding under Section 190.4, to be true:~~

~~(a) The murder was intentional and was carried out pursuant to agreement by the person who committed the murder to accept a valuable consideration for the act of murder from any person other than the victim;~~

~~(b) The defendant, with the intent to cause death, physi[cal]~~

~~cally aided or committed such act or act: death, and the murder was willful, deliberate, and p... meditated, and was perpetrated by means of a destructive device or explosive;~~

~~(c) The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists:~~

~~(1) The victim is a peace officer as defined in Section 830.1, subdivision (a) or (b) of Section 830.2, subdivision (a) or (b) of Section 830.3, or subdivision (b) of Section 830.5, who, while engaged in the performance of his duty was intentionally killed, and the defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties.~~

~~(2) The murder was willful, deliberate, and premeditated; the victim was a witness to a crime who was intentionally killed for the purpose of preventing his testimony in any criminal proceeding; and the killing was not committed during the commission or attempted commission of the crime to which he was a witness.~~

~~(3) The murder was willful, deliberate, and premeditated and was committed during the commission or attempted commission of any of the following crimes:~~

~~(i) Robbery in violation of Section 211;~~

~~(ii) Kidnapping in violation of Section 207 or 209. Brief movements of a victim which are merely incidental to the commission of another offense and which do not substantially increase the victim's risk of harm over that necessarily inherent in the other offense do not constitute a violation of Section 209 within the meaning of this paragraph.~~

~~(iii) Rape by force or violence in violation of subdivision (2) of Section 261; or by threat of great and immediate bodily harm in violation of subdivision (3) of Section 261;~~

~~(iv) The performance of a lewd or lascivious act upon the person of a child under the age of 14 years in violation of Section 288;~~

~~(v) Burglary in violation of subdivision (1) of Section 460 of an inhabited dwelling house with an intent to commit grand or petit larceny or rape.~~

~~(4) The murder was willful, deliberate, and premeditated, and involved the infliction of torture. For purposes of this section, torture requires proof of an intent to inflict extreme and prolonged pain.~~

~~(5) The defendant has in this proceeding been convicted of more than one offense of murder of the first or second degree, or has been convicted in a prior proceeding of the offense of murder of the first or second degree. For the purpose of this paragraph an offense committed in another jurisdiction which if committed in California would be punishable as first or second degree murder shall be deemed to be murder in the first or second degree.~~

~~(d) For the purposes of subdivision (c), the defendant shall be deemed to have physically aided in the act or acts causing death only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or a battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim.~~

Sec. 6. Section 190.2 is added to the Penal Code, to read:

*190.2. (a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true:*

*(1) The murder was intentional and carried out for financial gain.*

*(2) The defendant was previously convicted of murder in the first degree or se... degree. For the purpose of this paragraph an offens... committed in another jurisdiction which if committed in California would be punishable as first or second degree murder shall be deemed murder in the first or second degree.*

*(3) The defendant has in this proceeding been convicte... of more than one offense of murder in the first or second degree.*

*(4) The murder was committed by means of a destructive device, bomb, or explosive planted, hidden or concealed in any place, area, dwelling, building or structure, and the defendant knew or reasonably should have known that his act or acts would create a great risk of death to a human being or human beings.*

*(5) The murder was committed for the purpose of avoiding or preventing a lawful arrest or to perfect, or attempt to perfect an escape from lawful custody.*

*(6) The murder was committed by means of a destructive device, bomb, or explosive that the defendant mailed or delivered, attempted to mail or deliver, or cause to be mailed or delivered and the defendant knew or reasonably should have known that his act or acts would create a great risk of death to a human being or human beings.*

*(7) The victim was a peace officer as defined in Section 830.1, 830.2, 830.3, 830.31, 830.35, 830.36, 830.4, 830.5, 830.5a, 830.6, 830.10, 830.11 or 830.12, who, while engaged in the course of the performance of his duties was intentionally killed, and such defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties; or the victim was a peace officer as defined in the above enumerated sections of the Penal Code, or a former peace officer under any of such sections, and was intentionally killed in retaliation for the performance of his official duties.*

*(8) The victim was a federal law enforcement officer or agent, who, while engaged in the course of the performanc... of his duties was intentionally killed, and such defendan... knew or reasonably should have known that such victim was a federal law enforcement officer or agent, engaged in the performance of his duties; or the victim was a federal law enforcement officer or agent, and was intentionally killed in retaliation for the performance of his official duties.*

*(9) The victim was a fireman as defined in Section 245.1, who while engaged in the course of the performance of his duties was intentionally killed, and such defendant knew or reasonably should have known that such victim was a fireman engaged in the performance of his duties.*

*(10) The victim was a witness to a crime who was intentionally killed for the purpose of preventing his testimony in any criminal proceeding, and the killing was not committed during the commission, or attempted commission or the crime to which he was a witness; or the victim was a witness to a crime and was intentionally killed in retaliation for his testimony in any criminal proceeding.*

*(11) The victim was a prosecutor or assistant prosecutor or a former prosecutor or assistant prosecutor of any local or state prosecutor's office in this state or any other state, or a federal prosecutor's office and the murder was carried out in retaliation for or to prevent the performance of the victim's official duties.*

*(12) The victim was a judge or former judge of any court of record in the local, state or federal system in the State of California or in any other state of the United States and the murder was carried out in retaliation for or to prevent the performance of the victim's official duties.*

*(13) The victim was an elected or appointed official o... former official of the Federal Government, a local or Stat... government of California, or of any local or state government of any other state in the United States and the killing was*

*intentionally carried out in retaliation ... to prevent the performance of the victim's official du...*

*(14) The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity, as utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim.*

*(15) The defendant intentionally killed the victim while lying in wait.*

*(16) The victim was intentionally killed because of his race, color, religion, nationality or country of origin.*

*(17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies:*

*(i) Robbery in violation of Section 211.*

*(ii) Kidnapping in violation of Sections 207 and 209.*

*(iii) Rape in violation of Section 261.*

*(iv) Sodomy in violation of Section 286.*

*(v) The performance of a lewd or lascivious act upon person of a child under the age of 14 in violation of Section 288.*

*(vi) Oral copulation in violation of Section 288a.*

*(vii) Burglary in the first or second degree in violation of Section 460.*

*(viii) Arson in violation of Section 447.*

*(ix) Train wrecking in violation of Section 219.*

*(18) The murder was intentional and involved the infliction of torture. For the purpose of this section torture requires proof of the infliction of extreme physical pain no matter how long its duration.*

*(19) The defendant intentionally killed the victim by the administration of poison.*

*(b) Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraphs (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found under Section 190.4 to be true.*

*The penalty shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.*

Sec. 7. Section 190.3 of the Penal Code is repealed.

~~190.3. If the defendant has been found guilty of murder in the first degree, and a special circumstance has been charged and found to be true, or if the defendant may be subject to the death penalty after having been found guilty of violating subdivision (a) of Section 1672 of the Military and Veterans Code, or Section 37, 128, 219 or 4500 of this code, the trier of fact shall determine whether the penalty shall be death or life imprisonment without possibility of parole. In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentence, including, but not limited to, the nature and circumstances of the present offense, the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved the expressed or implied threat to use force or violence; and the defendant's character, background, history, mental condition and physical condition.~~

~~However, no evidence shall be admitted regarding other criminal activity by the defendant which did not involve the use or attempted use of force or violence or which did not involve the expressed or implied threat to use force or violence. As used in this section, criminal activity does not require a conviction.~~

~~However, in no event shall evidence of prior criminal activity be admitted ... offense for which the defendant was prosecuted and w... ...itted. The restriction on the use of this evidence is intended to apply only to proceedings conducted pursuant to this section and is not intended to affect statutory or decisional law allowing such evidence to be used in other proceedings.~~

~~Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time, as determined by the court, prior to the trial. Evidence may be introduced without such notice in rebuttal to evidence introduced by the defendant in mitigation.~~

~~In determining the penalty the trier of fact shall take into account any of the following factors if relevant:~~

~~(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.~~

~~(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the expressed or implied threat to use force or violence.~~

~~(c) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.~~

~~(d) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.~~

~~(e) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.~~

~~(f) Whether or not the defendant acted under extreme duress or under the substantial domination of another person.~~

~~(g) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or the affects of intoxication.~~

~~(h) The age of the defendant at the time of the crime.~~

~~(i) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.~~

~~(j) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.~~

~~After having heard and received all of the evidence, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall determine whether the penalty shall be death or life imprisonment without the possibility of parole.~~

Sec. 8. Section 190.3 is added to the Penal Code, to read:

*190.3. If the defendant has been found guilty of murder in the first degree, and a special circumstance has been charged and found to be true, or if the defendant may be subject to the death penalty after having been found guilty of violating subdivision (a) of Section 1672 of the Military and Veterans Code or Sections 37, 128, 219, or 4500 of this code, the trier of fact shall determine whether the penalty shall be death or confinement in state prison for a term of life without the possibility of parole. In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentence including, but not limited to, the nature and circumstances of the present offense, any prior felony conviction or convictions whether or not such conviction or convictions involved a crime of violence, the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved*

*the express or implied threat to use fo[illegible] [illegible]lence, and the defendant's character, background, his[illegible] [illegible]mental condition and physical condition.*

*However, no evidence shall be admitted regarding other criminal activity by the defendant which did not involve the use or attempted use of force or violence or which did not involve the express or implied threat to use force or violence. As used in this section, criminal activity does not require a conviction.*

*However, in no event shall evidence of prior criminal activity be admitted for an offense for which the defendant was prosecuted and acquitted. The restriction on the use of this evidence is intended to apply only to proceedings pursuant to this section and is not intended to affect statutory or decisional law allowing such evidence to be used in any other proceedings.*

*Except for evidence in proof of the offense or special circumstance which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, prior to trial. Evidence may be introduced without such notice in rebuttal to evidence introduced by the defendant in mitigation.*

*The trier of fact shall be instructed that a sentence of confinement to state prison for a term of life without the possibility of parole may in future after sentence is imposed, be commuted or modified to a sentence that includes the possibility of parole by the Governor of the State of California.*

*In determining the penalty, the trier of fact shall take into account any of the following factors if relevant:*

*(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.*

*(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.*

*(c) The presence or absence of any prior felony conviction.*

*(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.*

*(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.*

*(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.*

*(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.*

*(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the affects of intoxication.*

*(i) The age of the defendant at the time of the crime.*

*(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.*

*(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.*

*After having heard and received all of the evidence, and after having heard and considered the arguments of counsel, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall impose a sentence of death if the trier of fact concludes that the aggravating circumstances outweigh the mitigating circumstances. If the trier of fact determines that the [illegible]ing circumstances outweigh the aggravating circums[illegible]s the trier of fact shall impose a sentence of confinement in state prison for a term of life without the possibility of parole.*

Sec. 9. Section 190.4 of the Penal Code is repealed.

~~190.4. (a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to subdivision (b) of Section 190.1.~~

~~In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that it is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Wherever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.~~

~~If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.~~

~~If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of the separate penalty hearing.~~

~~In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach a unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the special circumstances which were found by a unanimous verdict of the previous jury to be untrue. If such new jury is unable to reach the unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and impose a punishment of confinement in state prison for life.~~

~~(b) If defendant was convicted by the court sitting without a jury, the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.~~

~~If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and impose a punishment of confinement in state prison for life without possibility of parole.~~

~~(c) If the trier of fact which convicted the defendant of a crime for which he may be subjected to the death penalty was a jury, the same jury shall consider any plea of not guilty by reason of insanity pursuant to Section 1026, the truth of any special circumstances which may be alleged, and the penalty to be applied, unless for good cause shown the court discharges that jury in which case a new jury shall be drawn. The court shall state facts in support of the finding of good cause upon the record and cause them to be entered into the minutes.~~

~~(d) In any case in which the defendant may be subjected to the death penalty, evidence p... at any prior phase of the trial, including any proceeding ... a plea of not guilty by reason of insanity pursuant to Section 1026, shall be considered at any subsequent phase of the trial, if the trier of fact of the prior phase is the same trier of fact at the subsequent phase.~~

~~(e) In every case in which the trier of fact has returned a verdict or finding imposing the death penalty, the defendant shall be deemed to have made an application for modification of such verdict or finding pursuant to subdivision (7) of Section 1181. In ruling on the application the judge shall review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3, and shall make an independent determination as to whether the weight of the evidence supports the jury's findings and verdicts. He shall state on the record the reason for his findings.~~

~~The judge shall set forth the reasons for his ruling on the application and direct that they be entered on the Clerk's minutes.~~

~~The denial of the modification of a death penalty verdict pursuant to subdivision (7) of Section 1181 shall be reviewed on the defendant's automatic appeal pursuant to subdivision (b) of Section 1239. The granting of the application shall be reviewed on the peoples appeal pursuant to paragraph (6) of subdivision (a) of Section 1238.~~

~~The proceedings provided for in this subdivision are in addition to any other proceedings on a defendant's application for a new trial.~~

Sec. 10. Section 190.4 is added to the Penal Code, to read:

*190.4. (a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to Subdivision (b) of Section 190.1.*

*In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.*

*If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.*

*If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of a separate penalty hearing.*

*In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach an unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the special circ...tances which were found by an unanimous verdict of the ...us jury to be untrue. If such new jury is unable to reach ... unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and in the court's discretion shall either order a new jury impaneled to try the issues the previous jury was unable to reach the unanimous verdict on, or impose a punishment of confinement in state prison for a term of 25 years.*

*(b) If defendant was convicted by the court sitting without a jury the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.*

*If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and shall order a new jury impaneled to try the issue as to what the penalty shall be. If such new jury is unable to reach a unanimous verdict as to what the penalty shall be, the court in its discretion shall either order a new jury or impose a punishment of confinement in state prison for a term of life without the possibility of parole.*

*(c) If the trier of fact which convicted the defendant of a crime for which he may be subject to the death penalty was a jury, the same jury shall consider any plea of not guilty by reason of insanity pursuant to Section 1026, the truth of any special circumstances which may be alleged, and the penalty to be applied, unless for good cause shown the court discharges that jury in which case a new jury shall be drawn. The court shall state facts in support of the finding of good cause upon the record and cause them to be entered into the minutes.*

*(d) In any case in which the defendant may be subject to the death penalty, evidence presented at any prior phase of the trial, including any proceeding under a plea of not guilty by reason of insanity pursuant to Section 1026 shall be considered an any subsequent phase of the trial, if the trier of fact of the prior phase is the same trier of fact at the subsequent phase.*

*(e) In every case in which the trier of fact has returned a verdict or finding imposing the death penalty, the defendant shall be deemed to have made an application for modification of such verdict or finding pursuant to Subdivision 7 of Section 11. In ruling on the application, the judge shall review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3, and shall make a determination as to whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented. The judge shall state on the record the reasons for his findings.*

*The judge shall set forth the reasons for his ruling on the application and direct that they be entered on the Clerk's minutes. The denial of the modification of the death penalty verdict pursuant to subdivision (7) of Section 1181 shall be reviewed on the defendant's automatic appeal pursuant to subdivision (b) of Section 1239. The granting of the application shall be reviewed on the People's appeal pursuant to paragraph (6).*

Sec. 11. Section 190.5 of the Penal Code is repealed.

~~190.5. (a) Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 years at the time of commission of the crime. The burden of proof as to the age of such person shall be upon the defendant.~~

~~(b) Except when the trier of fact finds that a murder was committed pursuant to an agreement as defined in subdivision (a) of Section 190.2, or when a person is convicted of a violation of subdivision (a) of Section 1672 of the Military and~~

NOTICE

~~Veterans Code, or Section 37, 128, 4500,~~ ... ~~ision (b) of Section 190.2 of this code, the death pen~~... ~~d not be imposed upon any person who was a principal in the commission of a capital offense unless he was personally present during the commission of the act or acts causing death, and intentionally physically aided or committed such act or acts causing death.~~

~~(e) For the purposes of subdivision (b), the defendant shall be deemed to have physically aided in the act or acts causing death only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or a battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim.~~

Sec. 12. Section 190.5 is added to the Penal Code, to read:

*190.5. Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 at the time of the commission of the crime. The burden of proof as to the age of such person shall be upon the defendant.*

Sec. 13. If any word, phrase, clause, or sentence in any section amended or added by this initiative, or any section or provision of this initiative, or application thereof to any person or circumstance, is held invalid, such invalidity shall not affect any other w..., phrase, clause, or sentence in any section amended or add... this initiative, or any other section, provisions or application of this initiative, which can be given effect without the invalid word, phrase, clause, sentence, section, provision or application and to this end the provisions of this initiative are declared to be severable.

Sec. 14. If any word, phrase, clause, or sentence in any section amended or added by this initiative or any section or provision of this initiative, or application thereof to any person or circumstance is held invalid, and a result thereof, a defendant who has been sentenced to death under the provisions of this initiative will instead be sentenced to life imprisonment, such life imprisonment shall be without the possibility of parole.

If any word, phrase, clause, or sentence in any section amended or added by this initiative or any section or provision of this initiative, or application thereof to any person or circumstance is held invalid, and a result thereof, a defendant who has been sentenced to confinement in the state prison for life without the possibility of parole under the provisions of this initiative shall instead be sentenced to a term of 25 years to life in a state prison.

PART 2

S.B. 42: codifies current law. Adds one year to the base term.

A.B. 476: Deleted the definition of a "deadly weapon". Adds "dangerous weapons". Both are undefined.

7. USE OF A FIREARM ENHANCEMENT (Section 12022.5)

Current Law: enhances the prison sentence when the defendant uses a firearm during the commission of or attempted commission of seven specified felonies.

S.B. 42: codifies the "use of a firearm" enhancement and provides for two years to be added to the base term. Expands the coverage of the enhancement to all felonies.

A.B. 476: changes "use of firearm" to "use of a deadly or dangerous weapon" (undefined). Adds the requirement that the use be personal (Codifying People v. Walker 18 C. 3d 232 (1976)).

8. GREAT BODILY INJURY ENHANCEMENT (Section 12022.7)

Current Law: provides for enhanced punishment when defendant inflicts great bodily injury upon the victim during the commission of three specified felonies. Great bodily injury is undefined.

S.B. 42: expands enhancement to cover all felonies. Specifically defines great bodily injury. Provides for three years to be added to the base term. Will not apply in cases of assault by means of force likely to produce great bodily injury. (P.C. 245 (a)).

A.B. 476: Adds "serious bodily injury". Does not define great bodily injury. Will apply in assault by means of force likely to produce great bodily injury.

. EXCESSIVE TAKING OR LOSS ENHANCEMENT (Section 12022.6)

Current Law: no provision

S.B. 42: when the elements of the crime involve a criminal taking or property damage and a loss ensues exceeding $100,000, then 50% of the base term may be added; when exceeds $500,000, then 100% of base term may be added. Does not apply in cases of robbery, burglary, or arson not involving insurance fraud. Is intended to cover white collar crimes (embezzling, polluting, etc.).

A.B. 476: the two limits are reduced. For a $25,000 loss, one year is added; for a $50,000 loss, 2 years are added. Does not exempt any felony. Would cover fortuitours results (drunk driving with an accident with injuries and major property damage, etc.).

--MORE--

**BOARD OF PRISON TERMS**
**OFFICE OF POLICY AND APPEALS**
**DECISION ON APPEAL**

**STATE OF CALIFORNIA**

Your appeal was received by the BPT Office of Policy and Appeals on March 28, 2001.

Received necessary documents on March 28, 2001.

Decision at issue

Life parole consideration hearing of February 5, 2001. Parole denied. Next hearing in 2 years.

Reasons for appeal

1. The prisoner contends that the Board of Prison Terms lacks jurisdiction to determine parole suitability.
2. The prisoner contends that his term should be fixed, and that present rules are being applied to him ex post facto.
3. The prisoner contends that the panel's decision is based on erroneous information.
4. The prisoner contends that requiring a parolee to return to the prison "at any time" pursuant to PC § 3056 operates as a "substitute term-fixing statute."
5. The prisoner contends that his two concurrently running Murder 2nd sentences have become disparate as compared to the sentence for Murder 1st and should be recalled by the sentencing court pursuant to PC § 1170(d).

The following represents the findings, determination, and order of the Board of Prison Terms, State of California.

[ X ] Deny [ ] Grant [ ] Dismiss

COMMISSIONER Dave Hepburn DATE 7-10-01

COMMISSIONER Carol A. Daly DATE 7-13-01

| NAME | CDC NUMBER | INST/REGION | DECISION DATE |
|---|---|---|---|
| MATLOCK, Michael | D-14884 | MCSP<br>Log No. 01/06 | JUL 13 2001 |

PAC

APPEAL DECISION

Introduction

Title 15 of the California Code of Regulations (15 CCR), § 2400 et seq., sets forth parole suitability criteria and procedures for life prisoners who committed murder on or after November 8, 1978. Prisoner rights are specified at 15 CCR §§ 2245-2256. Appeals from parole consideration hearings are governed by 15 CCR §§ 2050-2056.

Decision on Appeal

1. The prisoner contends that the Board of Prison Terms (hereinafter BPT) lacks jurisdiction to determine parole suitability of life term prisoners.

**Appeal Denied:** Prisoner cites PC §3040 as the only authority that is vested in the BPT. A reading of PC§§ 3041 and 3042 clearly vests the authority to grant or deny parole in the BPT. Furthermore, CCR Title 15 Division 2 confers the authority on BPT to grant or deny parole to life term inmates.

2. The prisoner contends that his term should be fixed, and that present rules are being applied to him ex post facto.

**Appeal Denied:** The prisoner contends that the Board should have fixed a term for his offense. The Appeals Unit disagrees. In *In re Rodriguez* (1975) 14 Cal.3d 639, 651-652, the court said that it followed *People* v. *Wingo* (1975) 14 Cal.3d 169, in that case a prisoner who had a maximum term which may be disproportionate to his individual culpability has a right to have his term fixed at a number of years that is proportionate to his offense. The *maximum* term for the prisoner's offense (i.e., life) is not disproportionate to his culpability. Therefore, he is not entitled to have his term fixed prior to a finding of suitability for parole. Board rules regarding its pre-suitability procedures were upheld in *In re Seabock* (1983) 140 Cal.App.3d 29.

3. The prisoner contends that the panel's decision is based on erroneous information.

**Appeal Denied:** The prisoner contends that the decision was based on erroneous information. The prisoner contends the following information is erroneous: 1) inference that murder was premidated, and 2) inference of prior drug use. Hearing panels use any and all material available to them to determine parole suitability. A prisoner may enter a written response to any material in his file (Title 15 CCR §2247). Also, if the prisoner feels that a document has been placed in his file which is not accurate or true, he has the responsibility to challenge that document through the California Department of Corrections (CDC) appeals system or enter a written response to the document pursuant to Title 15 CCR §2247. CDC is the custodian of the prisoner's central file and the Board has no jurisdiction over what material is contained within a prisoner's central file.

4. The prisoner contends that requiring a parolee to return to the prison "at any time" pursuant to PC § 3056 operates as a "substitute term-fixing statute."

**Appeal Denied:** The Appeals Unit disagrees. PC § 3063 states that "no parole shall be suspended or revoked without cause."

5. The prisoner contends that his two concurrently running Murder 2nd sentences have become disparate as compared to a sentence for Murder 1st and should be recalled by the sentencing court pursuant to PC § 1170(d).

**Appeal Denied:** Since the prisoner has not had a term fixed, this contention is premature. *In re Rodriguez* (1975) 14 Cal.3d 639, 652 stated that if no term is fixed, the court will presume the term at maximum (here, life) and make a determination as to whether the term fixed is disproportionate to the prisoner's offense. If the maximum term is disproportionate to the offense, the court will be required to fix a term. Here, since the crime fully justifies the maximum punishment, no term fix is required.

Exhaustion of Remedies

Since all grounds of appeal must be included in the same appeal (15 CCR § 2052(a)(2)), this decision is the final administrative decision on all issues from the decision in question. No further appeals or requests for review based on the issues from this decision will be accepted.

1 3 2001

STATE OF CALIFORNIA

# APPEAL

(TITLE 15, CCR §§ 2050-2056)

NAME: MATLOCK, Michael
CDC NUMBER: D-14884
INSTITUTION: Mule Creek State Prison
DATE SUBMITTED: 3/25/01

**CDC STAFF USE ONLY**
LOG NUMBER: 01-06
DATE RECEIVED: 3/27/01

RECEIVED
MAR 28 2001
BOARD OF PRISON TERMS

**DECISION BEING APPEALED**

- ☐ PAROLE REVOCATION
- ☐ REVOCATION EXTENSION
- ☐ RETAIN ON PAROLE
- ☐ SCREENING DECISION
- X☒ LIFE PRISONER
- ☐ MENTALLY DISORDERED OFFENDER
- X☒ OTHER (SPECIFY): Lack of jurisdiction to determine punishment for offense; no term-fixing authority; vagueness, etc.

**BASIS FOR APPEAL**

DATE OF DECISION/HEARING BEING APPEALED (SPECIFY): 2/5/2001 and ongoing.

- X☒ THE DECISION WAS BASED ON INCOMPLETE OR INCORRECT INFORMATION.
- ☐ THE DECISION IS UNREASONABLE IN VIEW OF THE FACTS.
- X☒ THE DECISION IS ILLEGAL.
- X☒ THE DECISION VIOLATES THE FOLLOWING BOARD REGULATIONS OR RULES. (SPECIFY): (See below)

WHAT ACTION ARE YOU REQUESTING THE BOARD TO TAKE? Cease unconstitutional enforcement of Penal Code § 190 pursuant to Penal Code § 1168 and recommend to the sentencing court recall of my disparate sentence pursuant to PC § 1170(d).

PLEASE STATE (TYPE OR PRINT) AND SEPARATELY NUMBER EACH BASIS FOR YOUR APPEAL.

1. The Legislature has broadly declared that the purpose of imprisonment for crime today is "punishment," and has reserved unto itself the power to determine same. (PC § 1170(a)(1)).

2. Under the ISL, the courts were not to fix the term or duration when imposing sentence under PC § 1168; that function was delegated to the parole board, which could constitutionally perform that function then precisely because under the ISL the legislative penal policy was not "punishment" but rehabilitation. Under the ISL, once the parole board had fixed the term, it could grant a period of parole; these were two distinct and separate functions, governed by two separate sets of statutes, PC §§ 2940 et seq., 3020 et seq., 5077, in the case of the term-fixing function

(CONTINUED ON ADDITIONAL ATTACHED PAGES)

| SIGNATURE (All appeals must be signed.) | CDC NUMBER | INSTITUTION/REGION |
|---|---|---|
| Michael Matlock | D-14884 | Mule Creek State Prison |

BPT 1040 (rev. 9/88)

Attach more pages if necessary.
See other side for instructions.

PERMANENT ADDENDA

Noted [signature] CHPN 3-26-01

and PC §§ 3040 et seq. in the case of the parole setting function. (In re Stanley, 54 Cal.App.3d 1030, 1033 (1976); see also In re Rodriguez, 14 Cal.3d 639, 645 (1975)).

3. The California Constitution precludes the delegation of legislative and judicial power to a statutorily created, state-wide administrative agency, such as the BPT, to determine and impose the punishment for criminal offenses. (Cal. Const. Art. III § 3, VI § 1; Drummey v. State Bd. of Funeral Directors, 13 Cal.2d 75, 84-85 (1939); Burns v. Superior Court, 140 Cal. 1, 12-13 (1903); Schaezlein v. Cabaniss, 135 Cal. 466 (1902)).

4. When the Legislature enacted the DSL in 1976 (S.B. 42), it retained the life sentence for murder 1st as an inherently indeterminate sentence, and retained its then prospectively operating term-fixing statutes PC §§ 3020 et seq., as implementing mechanism for same. (See generally Stats.1976, Ch. 1139). However, the Legislature then realized that the Constitution would not authorize it to delegate to the CRB the power to determine the "punishment" for murder 1st with these prospectively operating term-fixing statutes, as described in para 3, supra, and attempted to remedy this oversight with clean-up legislation the following year, repealing the prospectively operating term-fixing statutes PC §§ 3020 et seq. (Stats.1977, Ch. 165 §§ 40, 43).

5. Prop. 7 was then passed by the voters in 1978, repealing former PC § 190 and enacting a new PC § 190, changing murder 1st to 25 years to life and changing murder 2nd to 15 years to life. (See PC § 190, as adopted by the voters in the general election of November 1978). However, Prop. 7 did not contain any declaration of penal policy contrary to that previously declared by the Legislature in the DSL, (ibid.), and sought to use the DSL as implementing mechanism, as evinced by PC § 190's express reference to the DSL credit statutes PC §§ 2930 et seq., (ibid.), but did not otherwise delegate any power or provide for an implementing mechanism, (ibid.), and did not make reference to any existing provisions of law, other than the DSL credit statutes, as implementing mechanism; it particularly did not make reference to neither PC § 1168 nor to PC § 3041 as implementing mechanism. (Ibid.).

6. PC §§ 12 & 13 provide, inter alia, that whenever in the Penal Code "punishment" for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case must be determined by the court authorized to pass sentence, within such limits as may be prescribed by the Penal Code. (PC §§ 12, 13; emphasis added). The California Supreme Court in In re Jeanice D., 28 Cal.3d 210 (1980), has determined that the PC § 190 "x years to life" sentences "range" between the "x year" minimums and the maximum of life. (28 Cal.3d at 217). The "punishment" for murder 1st and 2nd is thus left undetermined between the limits set forth by PC § 190. (Ibid.).

7. Upon Prop. 7's enactment, the Attorney General's office subsequently usurped legislative powers by unilaterally determining that PC § 1168 made the courts without power to determine the punishment on the new PC § 190 murder 1st and 2nd sentences,

and thereafter delega[illegible] that power to the CRB, i[illegible] violation of Separation of Powers and in contravention of PC §§ 12 & 13. (See copies of Memorandums by Michael D. Wellington, Deputy Attorney General, dated August 22, 1979, and July 26, 1979, attached hereto; cf. Cal. Const. Art. III § 3).

> Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority.

(Drummey, supra, 13 Cal.2d at 85, citing St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 52).

8. The BPT thus acted without jurisdiction at my hearing on 2/5/2001, over my jurisdictional objection stated on the record at the outset of that hearing. (Copy of the 2/5/2001 BPT decision attached hereto; see also RT at 5:11-7:14, attached).

> A cardinal principle holds that administrative regulations must conform to the enabling law; that an administrative agency has no discretion to exceed the authority conferred upon it by statute. [citation omitted]. The question before the reviewing court is not the wisdom of the agency's rule or policy, but whether it would alter or amend the statute. [citation omitted].

(Stanley, supra, 54 Cal.App.3d at 1036).

9. Here, PC § 3040 expressly and plainly on its face confers only the power on the BPT to allow prisoners imprisoned in the state prisons to go upon parole outside the prison walls and enclosures. (See PC § 3040; emphasis added). Nothing more, nothing less.

10. PC § 3000.1, however, provides, in relevant parts:

> (a) In the case of any inmate sentenced under Section 1168 for any offense of first or second degree murder with a maximum term of life imprisonment, the period of parole, if parole is granted, shall be the remainder of the inmate's life.
>
> (b) Notwithstanding any other provision of law, when any person referred to in subdivision (a) has been released on parole from the state prison, and has been on parole continuously for seven years in the case of any person imprisoned for first degree murder, and five years in the case of any person imprisoned for second degree murder, since release from confinement, the board shall, within 30 days, DISCHARGE SUCH PERSON FROM PAROLE, unless the board, for good cause, determines that such person will be retained on parole. . . . .
>
> . . . .

(PC § 3000.1; emphasis added).

11. PC § 3000.1, in connection with the BPH's parole-setting statutes and criteria, including its matrices for murder 1st and 2nd, (e.g., PC §§ 3040 et seq.; 15 CCR §§ 2400 et seq.), operates in effect as a substitute term-fixing statute, when receipt of notice of such "discharge" ultimately reduces the maximum term from life to some other, lesser duration of imprisonment, or "punishment." (See PC § 3056 (Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure [sic] of the prison)).

12. Such substitute term-fixing provision, described in para 11, supra, is unconstitutional as it does not recognize the Eight Amendment rule that the measure of the constitutionality of punishment is individual culpability in the underlying crime, when the fixing of the term by such "discharge" is based upon the person's conduct on parole. (PC § 3000.1; cf. U.S. Const., Amend. 8; Trop v. Dulles, 356 U.S. 86, 100 (1958); Weems v. United States, 217 U.S. 349, 381 (1910); People v. Anderson, 6 Cal.3d 628, 643 (1972); Rodriguez, supra, 14 Cal.3d at 652-653; People v. Wingo, 14 Cal.3d 169, 178, 182-183 (1975); Jackson v. Superior Court, 140 Cal.App.3d 526, 532 (1983)).

13. The Wingo- and Rodriguez-courts addressed the very issue once again at stake here on point, only in those cases there existed a term-fixing statute, (PC §§ 3020 et seq.), only it was not being administered by the parole board in a manner passing constitutional muster. (Wingo, supra, 14 Cal.3d at 178, 182-183; Rodriguez, supra, 14 Cal.3d at 650, 652-653, 654 fn. 18). Here, by contrast, the term-fixing statute exists de facto. The procedural due process and Eight Amendment violations cannot be any less!

14. Wingo's analysis was one based on the 8th and 14th Amendments, and there the court ruled that terms must be fixed on indeterminate sentences in proportion to culpability of the underlying offense, and the court was concerned with instances where a more severe offense may receive a lesser term than a lesser offense under the same statute. (14 Cal.3d at 178, 182-183).

15. Rodriguez' analysis was one based solely on the 8th Amendment and the California Constitution's prohibition against cruel or unusual punishment, and in that case the court was concerned with instances where offenses of varying degrees of individual culpability were receiving the same maximum term. There the court stated, along the lines it previously had held in Wingo, that the parole board in failing to administer the term-fixing statutes did not recognize "the rule that the measure of the constitutionality of punishment for crime is individual culpability [and] is well established in the law of this state." (14 Cal.3d at 652-653).

16. In the case of prisoners sentenced to 15 years to life under PC § 190 pursuant to negotiated plea-agreements, PC § 1192.1 similarly provides that once a guilty plea for a lesser degree of the crime has been agreed to by the prosecuting attorney

and approved by the c..., the prisoner cannot sub[se]quently be punished for a higher degree of the crime than the degree so specified. (PC § 1192.1).

17. In a different statutory context, the rule that the maximum term must be proportionate to the degree of culpability in the underlying offense was applied to an analysis done specifically on 2nd versus 1st degree murder in Jackson v. Superior Court, supra, 140 Cal.App.3d at 532, and in that case the court likewise upheld the rule. The rule is universal, and transcends Rodriguez even though the ISL may have passed into history by the enactment of the DSL.

18. At the 2/5/2001 hearing, the BPT cultivated facts in the record which are either erroneous or untrue, foremost that my offense was carried out in a manner which would indicate some prior knowledge, inferring that the murder was premeditated and thus of the 1st degree, not 2nd degree murder of which I am in fact convicted. (RT 23:17-21). But the BPT also cultivated erroneous or untrue facts of prior criminal offenses of use or possession of controlled substances (methamphetamine; marijuana; cocaine; PCP; and, heroin), of which I have not been convicted. (RT 24:13-15, 26:24-26). The BPT made findings and based its 2-year denial of release on these cultivated erroneous or untrue facts. (RT 23:17-21, 24:13-15, 26:24-26). The correctness and veracity of the findings of fact in the area of criminal offenses is significant for purposes of due process and when the measure of the constitutionality of punishment is to be determined on the basis of individual culpability. (See supra).

19. Having served approximately 15 years and six months since reception in the CDC on 9/27/85, the 2/5/2001 2-year denial will cause me to pass the 16 years and eight months mandatory minimum for murder 1st before I will again be considered for release or de facto determination of punishment for my commitment offense, even though the degree of murder I am convicted is 2nd. As a result, I will no longer be able to ascertain whether I am being punished for murder 1st or 2nd when my sentence from that point on will be ranging from the same 16 years and eight months to life as that for murder 1st. The above-stated individual culpability rule under the Eight Amendment therefore is violated by the BPT, and the sentence has become unconstitutionally vague or uncertain when I must now "guess" of which degree of murder I am being punished. (U.S. Const., Amend. 14; Connally v. General Construction Co., 269 U.S. 385, 391 (1926)(a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law); Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939)(no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes; all are entitled to be informed as to what the State commands or forbids)). My two concurrently running murder 2nd sentences have thus become disparate, as compared to the sentence for murder 1st, by the above-described manner in which they have been implemented by the BPT, making recommendation for recall by the sentencing court pursuant to PC § 1170(d) appropriate. (PC § 1170(d); see In re

ADOPTED
APR 19 1977
JAMES D DRISCOLL
CHIEF CLERK

1/12 Stats 1977 c165

Req. #7788
Substantive

AMENDMENTS TO ASSEMBLY BILL NO. 476

AS AMENDED IN ASSEMBLY APRIL 12, 1977

AMENDMENT 1

In line 11 of the title of the printed bill, as amended in Assembly April 12, 1977, strike out "and 12022.7" and insert:

12022.6 and 12022.7

AMENDMENT 2

In line 21 of the title, strike out "Code," and insert:

Code, and to amend Section 11483 of the Welfare and Institutions Code,

AMENDMENT 3

On page 12, strike out lines 12 to 15, inclusive, and insert:

this subdivision for any prison term served prior to a period of 10 years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction.

AMENDED IN ASSEMBLY APRIL 12, 1977

AMENDED IN ASSEMBLY MARCH 17, 1977

CALIFORNIA LEGISLATURE—1977–78 REGULAR SESSION

**ASSEMBLY BILL** **No. 476**

Introduced by Assemblyman Boatwright ~~(Principal coauthor: Assemblyman Nestande)~~ *(Principal coauthors: Assemblyman Nestande and Senator Beverly)* *Assemblymen Chacon, Chimbole, Cordova, Fazio, Gualco, Imbrecht, Lanterman, McVittie, Suitt, Vincent Thomas, William Thomas, Thurman, and Tucker* *(Coauthors: Senators Rains and Nimmo)*

February 10, 1977

An act to amend Sections 11555 and 11556 of, and to repeal Section 11563.5 of, the Government Code, and to amend Sections 148.1, ~~270, 480, 502.7,~~ *213, 480,* 594, 597.5, 653h, 654, 664, 667.5, 969c, 969d, 1168, 1170, 1170.2, 1170.4, 1191, 1203, 1203.03, 1203.06, *1213.5,* 1389.7, 2081.5, 2400, ~~2401,~~ 2401.5, 2402, 2403, 2651, 2684, 2772, 2790, 2911, 2930, 2931, 2932, 3000, 3040, 3041, 3041.5, 3041.7, 3042, 3046, 3052, 3053, 3053.5, 3057, 3059, 3060, 3062, 3084, 4532, 4801, 4802, 4803, 4810, 4812, 4813, 4814, 4850, 4851, 4852.14, 4852.18, 5000, 5001, 5002, 5003.5, 5011, 5055, 5068, 5076.1, 5076.2, 5082, 5089, 6053, 6081, 11193, 11194, 12022, 12022.5, ~~12022.6, 12022.7, 12120, and 12560~~ *and 12022.7* of, to amend and renumber ~~Sections 1170.1 and~~ *Section* 1170.1a of, to add Article 3 (commencing with Section 2947) to Chapter 7 of Title 1 of Part 3 of, to repeal Sections *1170.1, 1170.1b,* 1389.3, 2399, 3043, 3044, 3050, 3054, and 3055 of, and to repeal Article 2 (commencing with Section 2920) of Chapter 7 of Title 1 of Part 3, Article 3 (commencing with Section 2940) of Chapter 7 of Title 1 of Part 3, Article 2 (commencing with Section 3020) of Chapter 8 of Title 1 of Part 3 and Article 4 (commencing ...

Case 5:08-cv-00745-JW Document 1-4 Filed 01/31/2008 Page 3 of 19

~~Institution for Women, the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.~~

*969c. Whenever a defendant uses a weapon under such circumstances as to bring such defendant within the operation of Section 12022 the fact that the defendant so used a weapon may be charged in the accusatory pleading. This charge, if made, shall be added to and be a part of the count or each of the counts of the accusatory pleading which charge the offense at the time of the commission of which the defendant used a weapon. That portion of any count which charges that the defendant used a weapon shall be sufficient if it can be understood therefrom that at the time of his commission of the offense set forth in the count, the defendant used a weapon. The nature of the weapon must be set forth. One such charge may name more than one weapon. If the defendant pleads not guilty of the offense charged in any count which alleges that the defendant used a weapon, the question whether or not he used a weapon as alleged must be tried by the court or jury which tries the issue upon the plea of not guilty. If the defendant pleads guilty of the offense charge the question whether or not he used a weapon as alleged must be determined by the court before pronouncing judgment.*

*SEC. 13.5. Section 969d of the Penal Code is amended to read:*

*969d. Whenever a defendant used or was armed with a firearm as recited in Section 12022.5, the fact that the defendant used or was armed with a firearm may be charged in the accusatory pleading. This charge, if made, shall be added to and be a part of the count or each of the counts of the accusatory pleading which charged the offense. That portion of any count which charges that the defendant used or was armed with a firearm shall be sufficient if it can be understood therefrom that at the time of his commission of the offense set forth in the count the defendant used or was armed with a firearm. The na[illegible]re of the firearm must be set forth. One such charge may name more than one firearm. If the defendant pleads not guilty to the offense charged in any count which alleges that the defendant used or was armed with a firearm, the question whether or not he used or was armed with a firearm as alleged must be determined by the court before pronouncing judgment.*

*SEC. 14. Section 1168 of the Penal Code is amended to read:*

*1168. (a) Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2.*

*(b) For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment.*

SEC. 15. Section 1170 of the Penal Code is amended to read:

1170. (a) (1) The Legislature finds and declares that the purpose of imprisonment ~~in state prison~~ for crime is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances. The Legislature further finds and declares that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion. *This declaration applies to persons sentenced under this section or Section 1168.*

(2) In any case in which the punishment prescribed by statute for a person convicted of a public offense is a term of imprisonment in the state prison of 16 mon[illegible] two or three years; two, three or four years; three, four or five

~~of the sentence he may be on parole for a period as provided in Section 3000.~~

*(b) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. Upon denial of probation, either party may move that the upper or lower term be imposed by the court. The motion shall specify the circumstances which justify imposition of the upper or lower term. Imposition of the upper or lower term shall be based on the circumstances alleged. Either party may request a hearing to prove or rebut the circumstances alleged. In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the motion, the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and presentence reports submitted by the prosecution or the defendant, the sentencing rules of the Judicial Council, and any evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term. The court may not impose an upper term by using the same fact used to enhance the sentence under Section 667.5, 1170.1, 12022, 12022.5, 12022.6, or 12022.7. A term of imprisonment shall be specified in every case unless imposition of sentence is suspended.*

*(c) The court shall state the reasons for its sentence choice on the record at the time of sentencing. The court shall also inform the defendant that as part of the sentence after expiration of the term he may be on parole for a period as provided in Section 3000.*

*(d) When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own mo[illegible]n, or at any time upon the recommendation of the Dire[illegible]or of Corrections or the Community Release Board, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The resentence under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. Credit shall be given for time served.*

*(e) Any sentence imposed under this article shall be subject to the provisions of Sections 3000 and 3057 and any other applicable provisions of law.*

*(f) In all cases the Community Release Board shall, not later than one year after the commencement of the term of imprisonment, review the sentence and shall by motion recommend that the court recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not been previously sentenced if the board determines the sentence is disparate. The review under this section shall apply the sentencing rules of the Judicial Council and the information regarding the sentences in this state of other persons convicted of similar crimes so as to eliminate disparity of sentences and to promote uniformity of sentencing.*

*SEC. 16. Section 1170.1 of the Penal Code is repealed.*

~~1170.1. The trial judge shall state the reasons for his sentence choice on the record at the time of sentencing. The trial judge shall also inform the defendant that after the expiration of his sentence he shall be on parole for a period of up to one year unless for good cause parole is waived as provided in Section 3000.~~

SEC. 17. Section 1170.1a of the Penal Code is amended and renumbered to read:

1170.1. (a) Except as provided in subdivisions (b) and (c) and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings [illegible]courts, and whether by judgment rendered by the same or by a

WAYS AND MEANS STAFF ANALYSIS

BILL NUMBER AB AUTHOR Boatwright AGENDA ITEM 10

LAST AMENDED 5/2 CONSULTANT Williams FINANCE

COST: Undetermined

REVENUE: None

MANDATED LOCAL COST: None

SUBJECT:
Imprisonment

SUMMARY:
This bill makes various substantive and technical amendments to SB 42 which is scheduled to become operative on July 1, 1977. Primary empnasis has been given to the retroactivity, enhancement, and parole violation provisions of SB 42.

COMMENT/BACKGROUND:
SB 42, Chapter 1139, Statutes of 1976, was a major attempt to reform the existing indeterminate sentence law which has been predicated upon an assumption that an incarcerated offender could be rehabilitated while in prison and participating in various programs. Obviously the major problem with such a sentencing system is in recognizing when an offender has been rehabilitated and thus eligible for parole.

The failure of the sentencing and correctional system to accurately realize when rehabilitation has occurred has brought about a desire for determinate sentences whereby an offender is remanded to jail or prison for a specified time period for punishment and not for rehabilitation per se.

Under SB 42 there are four ranges of sentences for various crimes: 16 months, 2 years, 3 years; 2, 3, 4; 3, 4, 5; and 5, 6, 7. Life without possibility of parole remains under limited but specified circumstances.

FISCAL IMPACT:
The Department of Corrections has indicated that this bill will have additional cost above SB 42 which is related to an increase in institutional population and parole caseload. Estimates, which are unverifiable, have ranged between $12 million and $17 million.

ANALYSIS:

Enhancement of prison terms for new offenses because of prior prison terms. (Sec. 667.5)

SB 42 provides for a 1 year enhancement for prior prison terms served and a 3 year enhancement for prior prison term served if the offense involved violence and the current commitment is for a similar offense. The former prior would not count if the defendant went 5 years free of prison custody and the latter would not count if the defendant went 10 years free of prison and felony conviction.

(cont'd.)

ANALYSIS: (cont'd.)

AB 476 provides for the one-third of the middle term for consecutive sentences in the case of a "violent felony" (1) murder or voluntary manslaughter, (2) mayhem, (3) rape as defined, (4) sodomy by force, violence, duress, menace or threat of great bodily injury, (5) oral copulation by force, violence, duress, menace, or threat of great bodily harm, (6) lewd acts on a child under 14 as defined, (7) any felony punishable by death or imprisonment in state prison for life, (8) any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice... (1170.1(A))

Five-year consecutive sentence limit

SB 42 limits the aggregate of consecutive sentences and one-year non-violent terms to no more than five years.

AB 476 only allows for such five-year limit for "non-violent felonies." (1170.1A)

Sentencing Hearing

SB 42 allows the court to deviate from the middle term only upon motion of counsel.

AB 476 allows the court to select the upper or lower term, but requires the court to set forth on the record the facts and reasons for imposing the upper or lower term (1170.b)

Retroactivity for Present Prison Population

SB 42 provides for the middle term in addition to enhancements for the present prison population with no credit for good time prior to July 1, 1977. Longer terms require a hearing with counsel within 90 days of July 1.

AB 476 provides that if at least two of the members of the Community Release Board, after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions, or due to the fact that the prisoner was armed with a deadly weapon, etc., etc., the prisoner should serve a longer term, the prisoner shall be entitled to a hearing before panel consisting of at least two members of the Board.

The Board shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. The hearing shall be held before April 1, 1978, or 120 days of receipt of the prisoner, whichever is later. The Board may, by resolution, extend the period by an additional 90 days. Either House of the Legislature may veto by resolution. (1170.2)

Parole

SB 42 provides for a one-year parole except for life terms which is three years. The one-year time would not stop even upon violation of the terms of parole where no new offense is committed.

AB 476 does not include the time spent in prison for parole violation. It provides an eighteen-month maximum on normal parole and four years for lifer

ANALYSIS:  (cont'd.)

AB 476 changes the 1 year prior prison term enhancement for non-violent offenses by stipulating that in addition to going five years without going to prison, the defendant must also be free of felony conviction.  The 3-year enhancement is changed to include within the definition of "violent felony" any felony in which the defendant uses a firearm.

Use of a firearm or deadly weapon 1-year enhancement.

SB 42 provides for a one-year enhancement for being personally armed with a specified deadly weapon during the commission of a felony.

Vicarious liability

AB 476 would apply this additional one-year enhancement to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not such person is personally armed with a firearm.  (12022A)

If a deadly weapon is used, other than a firearm, the above one-year enhancement requires personal use and thus no vicarious liability to any other principal not using a deadly weapon.  This enhancement applies unless use of a deadly or dangerous weapon is an element of the offense of which the defendant is convicted.  (12022B)

2-year Enhancement for use of a firearm.

SB 42 provides for a two-year enhancement for use of a firearm during the commission of a felony; however, it does not specify whether the defendant or an accomplice must have used the firearm.

AB 476 requires personal use for this two-year enhancement unless use of the firearm is an element of the offense.  (12022.5)

Major damage, destruction, or taking of property enhancement.
SB 42 enhances a conviction by 50% of the base for taking or damage of property over $100,000 and 100% of the base term for a loss over $500,000 as specified.

AB 476 adds one year for $25,000 of loss and two years for $100,000 of loss to a victim.   (12022.6)

Great bodily injury enhancement

SB 42 provides for a three-year enhancement for the infliction of great bodily injury as specifically defined during the commission of a crime.

SB 476 deletes specific definitions for great bodily injury and requires "significant or substantial physical injury."   (12022.7)

Consecutive Sentences

SB 42 provides for one-third of the middle term for consecutive sentences for an additional crime.

(cont'd.)

SEMBLY COMMITTEE ON CRIMINAL JUSTICE
Kenneth Maddy Chairman

ate Capitol - Room 4/35
5-1264

BILL ANAL
Staff Member MPU
Ways & Means YES
Rev. & Tax. NO

HEARING DATE: March 21, 1977

ILL: A.B. 476 (As Amended March 17, 1977)

UTHOR: BOATWRIGHT

UBJECT: REVISION OF S.B. 42

BILL DESCRIPTION:

Last year, the California Legislature passed the Uniform Determinate Sentencing Act of 1976 (S.B. 42, Nejedly). The basic structure was to repeal the long indetermin_te ranges for felonies (that had penalties less than straight life in prison) and to substitute a sentencing choice of three terms for the base terms. These ranges are 16 months, 2, 3 years; 2, 3, 4 years; 3, 4, 5 years; and 5, 6, 7 years. To this base range there are an array of enhancements that can be added. The term can also be enhanced by the imposition of consecutive sentences. Generally, the consecutive sentence would be one-third the middle term. In order to prevent unduly harsh sentencing, limits were placed on the amount of time that could be added to the base sentence by enhancements and consecutive sentences. The bill is to be retroactively applied to the current prison population. S.B. 42 is to become operative on July 1, 1977.

A.B. 476, generally, will rewrite the bulk of S.B. 42. It contains many technical and grammatical amendments to the Uniform Determinate Sentence Act of 1976; makes numerous name changes (from Adult Authority to the Community Release Board); repeals obsolete sections dealing with the discretionary powers and paroling functions of the Adult Authority; gives determinate sentences to crimes overlooked last year during the legislative consideration of S.B. 42; and will make many substantive changes.

The following is a summary of the major changes. When comparable, the current law and the law under S.B. 42 is indicated.

1. BASE TERMS

A.B. 476 raises the penalties for two crimes. P.C. Section 594, Vandalism, is changed from 6 months to one year for the misdemeanor violation; and from one year to 16 months, 2, 3 years for the felony violation. P.C. Section 12560, Ex-felon with a Gun, is changed from a 16 month, 2, 3 year wobbler to a 2, 3, 4 year wobbler.

--MORE--

YEAR AND A DAY CRIMES

Several crimes under prior law (are unchanged by S.B. 42) carry a sentence "of not exceeding a year and a day" in state prison. A.B. 476 changes all of these crimes to "one year in county jail" misdemeanors.

ATTEMPT (Section 664)

Current law: Attempt of a felony is punished at one-half the term for the completed felony. S.B. 42 did not change this law.

A.B. 476: Attempt of a crime punishable alternatively as a felony or misdemeanor (wobbler) is punished in the state prison for one-half the felony sentence. It appears that attempt of a wobbler cannot be punished as a misdemeanor.

PRIOR PRISON TERMS (Section 667.5)

S.B. 42: Prior terms in prison would enhance the current sentence one year for each separate term served. Old priors would washout if the defendant had been free of prison custody for five years.

A.B. 476: The one year for each prior term is changed to one-fourth the new prison term including enhancements added for weapons, great bodily injury and excessive loss. It appears that the prior will also add one-fourth of all new consecutive terms. The washout period of five years must be free of both prison custody and felony convictions.

PRIOR TERMS FOR VIOLENT FELONIES (Section 667.5(a) and (c))

S.B. 42: lists eight categories of "extraordinary crimes of violence against the person" (murder, rape, mayhem, child molesting, etc.). A prior term for such a crime, when the defendant is currently charged with such a crime, would add three years to the base term.

A.B. 476: changes the three years for a violent prior to one-half the new prison term including the enhancements for weapons, great bodily injury, and excessive loss. It would also add to the list of eight violent felonies the use of a firearm.

ARMED WITH A DEADLY WEAPON ENHANCEMENT (Section 12022)

Current Law: enhances the prison sentence for committing a felony while armed with a deadly weapon. The statute specifies the deadly weapons that are covered.

--MORE--

the Penal Code, relating to imprisonment, and declaring the urgency thereof to take effect immediately.

LEGISLATIVE COUNSEL'S DIGEST

AB 476, as amended, Boatwright. Imprisonment.

The Uniform Determinate Sentencing Act of 1976, generally, provides a system whereby the judge selects a term of imprisonment in the state prison from 3 statutory choices, [illegible]h the Community Release Board administering provisions [illegible]ating to good-time credit and parole.

This bill would make various conforming, corrective, and substantive changes in such act and related provisions of law.

The bill would take effect immediately as an urgency statute, to become operative July 1, 1977.

Vote: ⅔. Appropriation: no. Fiscal committee: yes. State-mandated local program: no.

*The people of the State of California do enact as follows:*

SECTION 1. Section 11555 of the Government Code is amended to read:

11555. An annual salary of twenty-six thousand two hundred fifty dollars ($26,250) shall be paid to the following:

(a) Chairman of the Community Release Board

(b) Chairman of the Board of Equalization

(c) Chairman of the State Water Resources Control Board

(d) Chairman of the Youth Authority Board.

SEC. 2. Section 11556 of the Government Code is amended to read:

11556. An annual salary of twenty-five thousand dollars ($25,000) shall be paid to each of the following:

(a) Director of Navigation and Ocean Development

(b) Director, Office of Emergency Services

(c) Members of the Community Release Board

(d) Members of the Board of Equalization

(e) Members of the State Water Resources Control Board

(f) [illegible]embers of the Youth Authority Board

(g) State Fire Marshal

SEC. 3. Section 11563.5 of the Government Code is repealed.

SEC. 4. Section 148.1 of the Penal Code is amended to read:

148.1. (a) Any person who reports to any police officer, sheriff, employee of a fire department or fire service, district attorney, newspaper, radio station, television station, deputy sheriff, deputy district attorney, member of the California Highway Patrol, employees of the Department of Justice, employees of an airline, employees of an airport, employees of a railroad or busline, an employee of a telephone company, occupants of a building or a news reporter in the employ of a newspaper or radio or television station, that a bomb or other explosive has been or will be placed or secreted in any public or private place knowing that such report is false, is guilty of a crime punishable by imprisonment in the state prison, or imprisonment in the county jail not to exceed one year.

(b) Any person who maliciously informs any other person that a bomb or other explosive has been or will be placed or secreted in any public or private place, knowing that such information is false, is guilty of a crime punishable by imprisonment in the state prison, or imprisonment in the county jail not to exceed one year.

(c) Any person who maliciously gives, mails, sends, or causes to be sent any false or facsimile bomb to another person, or places or causes to be placed any false or facsimile bomb, with the intent that any other person thinks it is a real bomb and with knowledge that it is a false or facsimile bomb, is guilty of a crime punishable by imprisonment in the state prison, or imprisonment in the county jail not to exceed one year.

~~SEC. 5. Section 270 of the Penal Code is amended to read:~~

~~270. If a parent of a minor child willfully omits, without lawful excuse, to furnish necessary clothing, f[illegible]d, shelter or medical attendance, or other remedial ca[illegible] for his or her child, he or she is guilty of a misdemeanor punishabl[illegible]~~

Sandel, 64 Cal.2d 41 .13, 416 (1966)(administra ve correction of sentence imposed by trial court in excess of administrative jurisdiction)).

CONCLUSION

20. For the foregoing reasons, this Administrative Appeal should be granted.

DATED: 3/25/01

Respectfully submitted,

MICHAEL MATLOCK, Appellant
D-14884

Attachments
cc: File

///

///

///

10. CONSECUTIVE SENTENCES (Section 1170.1)

S.B. 42: for each consecutive sentence imposed, one-third of the middle term of the consecutive crime would be added to the original sentence. No enhancements would apply to the consecutive terms.

A.B. 476: changes the one-third to one-half the middle term plus enhancements.

11. 100% CONSECUTIVE TERMS (Section 1170.1(b))

S.B. 42: if a crime is committed while a person is confined in a state prison, then the consecutive sentence would be 100%, to be served after the current term. However, if there are more than one count, consecutive sentences for the extra counts would be one-third the middle term.

A.B. 476: adds offenses that are committed while the person is an escapee. Provides that all offenses that are committed while in prison or while on escape will be all 100% if imposed consecutively.

12. LIMITS ON ENHANCEMENTS (Section 1170.1(e) and (f))

S.B. 42: arming or use will not apply when they are elements of the crime. A.B. 476 deletes this language.

S.B. 42: enhancements and consecutives are limited to 100% of the base term unless the crime is a 667.5(c) felony, or there is arming, use, or great bodily injury. A.B. 476: deletes this limit.

S.B. 42: five year limit on non-violent prior terms and consecutives.

A.B. 476: deletes all limits on consecutive sentences.

13. SENTENCING HEARING (Section 1170 (b))

S.B. 42: provides for a hearing if the court is to deviate from imposing the middle term. The upper or lower term can only be imposed when sought by a motion. The court must find circumstances of aggravation or mitigation of the crime to be true upon evidence heard at trial or at the time of they hearing. Would not allow a fact to be used twice to determine, aggravate or enhance a sentence.

--MORE--

A.B. 476:  changes the standard from a finding of circumstances of aggravation or mitigation "of the crime" to "of the punishment".  Provides for the determination to be made upon the probation officer's report and other hearsay documents introduced by counsel, and "other information the court requests".  Allows for a hearing to "resolve any disputed questions of fact".  Deletes prohibition against using a fact twice to both determine the sentence and to aggravate or enhance it.

4.    DATE OF S.B. 42 SENTENCE

S.B. 42:  the determinate sentences will apply to those cases sentenced after July 1, 1977.  Those sentenced before will be sentenced indeterminately and will receive the retroactive application.

A.B. 476:  changes the date from sentencing to the date the offense was committed.  Expands the use of retroactive hearings to cover those who will be received "indeterminately" in prison after July 1, 1977 (due to probation violations that could occur in the future, under A.B. 476, there will be defendants received with indeterminate sentences years into the future).

5.    RETROACTIVITY (Section 1170.2)

S.B. 42:  inmates in prison, when the act becomes operative, will receive S.B. 42 dates, unless they already have dates that will let them out earlier (from the Adult Authority).  The general rule is an inmate will receive the middle term plus all other enhancements that were imposed by the sentencing judge.  They will not receive the benefit of consideration of the low term.  They will not be afforded the credit of one-third off of the sentence for time served prior to July 1, 1977.  If the majority of the en banc Community Release Board, after reviewing the inmate's file, feels that the inmate deserves a longer time, due to a number of convictions, priors, weapons involvement, great bodily injury, or a 667.5(c) felony, then a hearing may be scheduled with counsel for the inmate to determine that date.  The hearing will be before three members of the CRB.  In setting the date, the CRB shall be guided by what could be reasonably be imposed under S.B. 42.  In the case of 667.5(c) felonies, the CRB shall be guided by the Legislative intent that the protection of the public from repeated acts of extraordinary violence is paramount.  These special hearings are limited to the first 90 days following July 1, 1977.

A.B. 476:  allows the CRB to impose a term for a "finding of fact" imposed by the sentencing court for all inmates.  Does not define "finding of fact" or provide for a hearing to determine disputes as to what is contemplated.  For the cases in which a longer term may be imposed, the following changes are made:

--MORE--

Case 5:08-cv-00745-JW Document 1-4 Filed 01/31/2008 Page 14 of 19

a. deletes the en banc review of the CRB and substitutes a review by two members.

b. changes the hearing board from three members to two members.

c. adds "due to the aggravated circumstances of the offense" as qualifying an inmate for a "longer term" hearing.

d. takes away the 90 day limit in which to conduct the hearings. Requires that they be held as promptly as possible and the most expeditious manner possible. No time limit is specified.

e. the date set need not be limited to a term which could be reasonably imposed under S.B. 42.

f. the language requiring the CRB to consider the protection of the public from crimes of violence as the paramount concern would no longer be limited to 667.5(c) felonies. The coverage of this language will be expanded to all categories in this section.

16. PAROLE OF NON-LIFERS

S.B. 42: one year parole. The period is tolled only if the parolee absconds. The maximum period of reconfinement for a violation absent a new commitment is six months. The period ends in one calendar year.

A.B. 476: the period of parole is tolled during periods of reconfinement for a parole violation. The total amount of time allowed is two calendar years. One year on the streets is required, however, the total period cannot exceed two years.

17. RETROACTIVITY OF PAROLE

S.B. 42: the one year on parole and the six months for revocations of parole appear to be fully retroactive. In other words, if a person has served more than six months on a violation independent of a new commitment on July 1, he must be released. If he has already served one year on parole, he must be discharged. (Note: The Attorney General has issued an opinion to the contrary. However, the reasoning in the opinion appears to be confused.) A person who has already been re-released on parole by July 1, 1977, will be on parole up to one year from his release date.

--MORE--

e. S.B. 42 requires notice of the charges within 30 days of discovery (or up to 90 days in the extraordinary case where there is a discovery of new evidence); and the hearing to proceed within the next 30 days. A.B. 476 changes the 30 day notice to 90 days; the 30 days until hearing to 60 days (the provisions to have speedy resolution of the issue within 60 days will be extended to six months).

f. S.B. 42 provides that if there is a criminal prosecution for the offense and if there is an acquittal, then the credits could not be lost. A.B. 476 deletes this provision.

g. S.B. 42 allowes the credits to vest only after eight full months are served. A.B. 476 allows the vesting to occur (on the same formula basis) over a lesser period if necessary.

20. OTHER PROVISIONS

a. Changes days between judgement of guilt to sentencing hearing for all criminal cases (including misdemeanors) from 21 days to 28 days; requires probation report to be delivered seven days before sentencing hearing rather than two days.

b. repeals provision allowing for credits on sentence for time served in the diagnostic facility for a 1203.03 report and time served in C.R.C. either as in-patient or out-patient.

c. Places requirement that a defendant personally uses a firearm for the mandatory prison sentence section (Section 1203.06).

d. Changes the composition of CRB panels from three board members to three persons including hearing representatives.

e. Repeals statute that requires the Director of Corrections to attend six parole hearings annually.

f. Places the Department of Corrections in charge of certain parole decisions of non-lifers rather than the parole board. Section 3053.5; 3059.

--MORE--

A.B. 476: makes the parole provisions fully non-retroactive. A person who has been on parole for two weeks, or 12 months, or three years by July 1, will still do one calendar year of parole after July 1.

18. PAROLE OF LIFERS

A.B. 476: makes the following changes from the procedure spelled out in S.B. 42:

a. The requirement that three members of the CRB hear and decide the parole suitability and date is changed to two members and a hearing representative.

b. The requirement that one member that decides on parole suitability must have sat on the case the previous hearing has been deleted and now reads "should" have been present the previous hearing.

c. Deletes the requirement that the inmate have the undivided attention of all board members who will vote on his case.

d. Deletes the requirement that the prisoner be told when he could reasonably expect to receive a release date.

e. Limits the public access to materials and transcripts of the hearing to only non-confidential matters.

19. LOSS OF CREDITS FOR GOOD TIME AND PARTICIPATION

S.B. 42: provides for one-third off of the sentence for abstaining from specified acts and for participating in prison programs. A.B. 476 makes the following substantive changes:

a. The plan for the inmate's program for participation credit was to be signed by prison officials and the inmate. Under A.B. 476, the plan is to be "given" to the inmate.

b. The specified offenses in which good time could be lost carry maximum amounts of 15 days, 30 days, and 45 days. A.B. 476 doubles these amounts.

c. A.B. 476 adds the offenses of being under the influence of controlled substances, being under the influence of intoxicants, possession of $10 in cash, urging others to commit acts of force or violence which threaten institutional security.

d. S.B. 42 limits the period in which the credits could be lost to eight months. A.B. 476 expands this to 16 months.

--MORE--

COMMENTS:

1. A.B. 476 is a bill designed to raise the prison sentences. Would such legislation be wise at this time? S.B. 42 was designed to modify the current years of paroling practices of the Adult Authority. Some analyses indicate that the terms will be reduced (on the average) due to S.B. 42; some indicate that the average term will increase (See Analysis of the Impact of Senate Bill 42, prepared for the Assembly Committee on Criminal Justice, by The Institute for the Study of Human Systems). The Judicial Council has been assigned the task of weighing the impact of amendatory legislation to the determinate sentence law. However, this function will not become operative until July 1, 1977. Should the Legislature raise sentences at this time prior to being able to properly analyze how S.B. 42 will operate?

2. Are increased prison sentences a desirable goal? Currently, the prisons are at near capacity. If legislation is passed that significantly raises prison sentences, wouldn't the capacity limit force judges to grant probation to persons who should be in prison?

3. A.B. 476 removes the limits on consecutive sentences, which under S.B. 42 allows up to five years. This would, generally, effect property offenders whose crimes are committed in numbers. For example, a credit card forger or a bad check writer would traditionally be facing many separate counts. Twenty counts of bad checks (or other theft or property offenses) would change the maximum sentence of six years, under S.B. 42, to 15 2/3 years, under A.B. 476.

4. A.B. 476 expands on the list of "extraordinary crimes of violence" by adding "use of a firearm". The list currently includes violent or sexual conduct not motivated by monetary gain (such as murder, mayhem, rape, great bodily injury, etc.). The adding of "use of a firearm" will bring armed robbery into the 667.5(c) list, even though there is no injury. The case law defines "use" to cover both attempted injury (i.e. shooting or striking with a gun) and a menacing display of a gun. Should menacing display be included in the list of violent crimes?

5. A.B. 476 changes the effect of prior prison terms by changing the one year for each prior to a percentage of the new term. Is this appropriate? Should the addition to a current prison term for a prior term served for possession of marijuana be different in rape cases as opposed to grand theft?

--MORE--

6. Should the [illegible] S.B. 42 be repealed? Under the indeterminate sentence, [illegible] parole [illegible] are available to let people out of [illegible] who should have not been committed in the first place (in particular, many women committed from rural counties with no local corrections system for women) or who were given excessive sentences. This parole power will no longer be available under S.B. 42. The bill does provide for a disparate sentence review by the Community Release Board, but such provision has no teeth in forcing a judge to change an excessive sentence. The only requirement on the judge is he follow the rules of the Judicial Council. The proposed draft of these rules is broad and leaves absolute discretion to the judge.

7. Last year in this Committee, an amendment was taken that prohibited the use of the three year great bodily injury enhancement in Assault with a Force Likely to Produce great bodily injury cases (P.C. 245a). The infliction of the injury is not an element of the offense, but it was recognized that the case would not be prosecuted as a felony unless there are significant injuries. A.B. 476 repeals this amendment and allows for the enhancement to apply. The result would be in Assault great bodily injury cases: 2, 3, 4 years for base term plus 3 years for the enhancement. It should be noted that the penalty for inflicting death would be the same (5, 6, 7 years). Should the Legislature punish infliction of injury the same as killing the victim?

8. Should the three year enhancement for "serious bodily injury" be undefined? Under S.B. 42, the types of great bodily injury are specifically defined. Prior case law has held that the trauma of rape without physical injury constitutes great bodily injury. Is the intent of the proposed amendment to delete the requirement of physical injury?

9. Should the "white collar" ~~[illegible]~~ enhancement be changed to punish for fortuitous results rather than intentional takings or damage? Should the amounts be lowered?

10. Should the Legislature allow the CRB an unspecified amount of time to accomplish the retroactivity hearings? By adding "aggravated circumstances" of the crime as a standard to qualify an inmate for the special longer term consideration would cover everyone in prison. Is it the intent that there be no specific guidelines given to the CRB? Are there "equal protection" problems in giving this wide latitude to an administrative body to separate persons who will be given dates according to S.B. 42 and persons who will be "warehoused"? Should the McAlister language placed into S.B. 42 on the floor that allows for warehousing of 667.5(c) felons be expanded to cover everyone who is to receive a longer term, i.e., persons convicted of a number of crimes, persons who have a number of priors?

--MORE--

11. Should the duration of parole be extended to go beyond the one year? Under A.B. 476, an alcoholic with continuing problems could spend 15 months in prison on violations, even though no crime is committed. S.B. 42 amended the parole provisions to prevent these possible abuses. Last year, this Committee voted down amendments that were offered to extend parole.

12. Should parole not be retroactive for persons already on the streets on July 1, 1977? Is there a policy reason for requiring an additional year of parole?

13. A.B. 476 seriously amends the procedure and the amount of time that may be lost for violations of good time provisions. Last year, the Committee voted down an amendment that is contained in A.B. 476 to double the amount of time that may be lost. Are offenses such as "possession of $10" appropriate to place in this category? There are many other tools available to the Department of Corrections, such as loss of privileges, isolation, etc., that can be used for management control. Should the period of uncertainty as to a hearing on charges for loss of credits be extended from 60 days to six months? Isn't the purpose of S.B. 42 to alleviate such uncertainty?

14. Should the parole functions be turned over to the Department of Corrections as opposed to the Community Release Board? A.B. 476 appears to be giving the "lifers" to the CRB and the "non-lifers" to the Department of Corrections. Is this appropriate given that the CRB is the final arbiter on all decisions regarding parole?

15. A.B. 476 changes P.C. Section 1203 to extend the time for the probation and sentence hearing from 21 days to 28 days after judgement of guilt. This amendment was placed into the bill upon the request of the Judicial Council to accomodate its proposed rules regarding the special hearings and notice of motions for aggravation/mitigation. Since A.B. 476 also eliminates the need for these special hearings, isn't the need for this amendment obviated? The section amended will affect everyone in the courts, including felons who will not be seriously considered for prison and misdemeanants. Is there a need for an extra week of custody for persons awaiting custody and the general delay in sentencing?

SOURCE: Author
SUPPORT: California Peace Officers Association
Attorney General
OPPOSITION: California Attorneys for Criminal Justice

Cross References
Habitual offender, application of this article, see § ... 0.

§ 2912 to 2918. Blank

§ 2919. Repealed by Stats.1957, c. 2256, § 96

## ARTICLE 2. CREDITS ON TERM OF IMPRISONMENT [REPEALED]

*Article 2 was repealed by Stats.1977, c. 165, § 36, urgency, eff. June 29, 1977.*

§§ 2920 to 2926. Repealed by Stats.1977, c. 165, § 36

## ARTICLE 2.5. CREDIT ON TERM OF IMPRISONMENT

Sec.
2930. Informing prisoners of prison rules, regulations and programs; entry in prisoner's central file.
2931. Reduction of term for good behavior and participation; document outlining conditions; modifications.
2932. Denial of credit; procedures; notice of good behavior credit, participation credit and anticipated release date; conduct constituting crime.

**§ 2930. Informing prisoners of prison rules, regulations and programs; entry in prisoner's central file**

(a) The Department of Corrections shall inform every prisoner sentenced under Section 1170, not later than 14 days after reception in prison, of all applicable prison rules and regulations including the possibility of receiving a one-third reduction of the sentence for good behavior and participation. Within 14 days of the prisoner's arrival at the institution to which the prisoner is ultimately assigned by the Department of Corrections, the prisoner shall be informed of the range of programs offered by that institution and their availability at that institution. The prisoner's central file shall reflect compliance with the provisions of this section not later than 90 days after reception in prison.

(b) The department shall, within 90 days after July 1, 1977, inform every prisoner who committed a felony before July 1, 1977, and who would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, of all applicable prison rules and regulations, which have not previously been provided, of the range of programs offered and their availability, and the possibility of receiving a reduction for good behavior and participation of one-third of the prisoner's remaining sentence after July 1, 1977. The inmate's central file shall reflect compliance with the provisions of this section.

(Added by Stats.1976, c. 1139, § 276. Amended by Stats.1977, c. 2, § 3; Stats.1977, c. 165, § 37.)

§ 2931. Reduction of term for good behavior and participation; document outlining conditions; modifications

(a) In any case in which an inmate was sentenced to the state prison pursuant to Section 1170, or if he committed a felony before July 1, 1977, and he would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2. A document shall be signed by a prison official and given to the inmate, at the time of compliance with Section 2930, outlining the conditions which the inmate shall meet to receive the credit. The conditions specified in such document may be modified upon any of the following:

(1) Mutual consent of the prisoner and the Department of Corrections.

(2) The transfer of the inmate from one institution to another.

(3) The department's determination of the prisoner's lack of adaptability or success in a specific program or assignment. In such case the inmate shall be entitled to a hearing regarding the department's decision.

(4) A change in custodial status.

(b) Total possible good behavior and participation credit shall result in a four-month reduction for each eight months served in prison or in a reduction based on this ratio for any lesser period of time. Three months of this four-month reduction, or a reduction based on this ratio for any lesser period, shall be based upon forbearance from any or all of the following activities:

(1) Assault with a weapon; or escape.

(2) Physically assaultive behavior; possession of a weapon without permission; possession of controlled substances without prescription; attempt to escape; or urging others by words or acts, with the intent to cause a riot, to commit acts of force or violence, at a time and place under circumstances which produce a clear and present and immediate danger of a riot which results in acts of force or violence; or active participation in a riot that results in acts of force or violence.

(3) Intentional destruction of state property valued in excess of fifty dollars ($50); falsification of a

significant record or document; possession of escape tools without permission; or manufacture, sale or unauthorized possession or use of alcoholic beverages or any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code; or urging of others by words or acts, with the intent to cause a riot, to commit acts of force or violence at a time and place under circumstances which present a clear and present and immediate danger of a riot, or committing any act, with the intent to precipitate a riot, at a time and place under circumstances which present a clear and present and immediate danger of a riot. Activities specified in paragraph (1) may result in a maximum denial of good behavior credit of 45 days for each such prohibited activity. Activities specified in paragraph (2) may result in a maximum denial of good behavior credit of 30 days for each such prohibited activity. Activities specified in paragraph (3) may result in a maximum denial of good behavior credit of 15 days for each such prohibited activity. Nothing in this section shall prevent the Department of Corrections from seeking criminal prosecution for violations of law.

(c) One month of this four-month reduction, or a reduction based on this ratio for a lesser period, shall be based solely upon participation in work, educational, vocational, therapeutic or other prison activities. Failure to succeed after demonstrating a reasonable effort in the specified activity shall not result in loss of participation credit. Failure to participate in the specified activities can result in a maximun loss of credit of 30 days for each failure to participate. However, those confined either by choice or due to behavior problems shall be given specified activities commensurate with the custodial status.

(Added by Stats.1976, c. 1139, § 276. Amended by Stats. 1977, c. 2, § 4; Stats.1977, c. 165, § 38; Stats.1978, c. 380, § 125; Stats.1978, c. 532, § 1; Stats.1979, c. 373, § 247; Stats.1979, c. 319, § 1; Stats.1980, c. 676, § 254.)

Subordination of amendment by Stats.1979, c. 373 to other legislation enacted during the 1979 portion of the 1979-80 regular session and which takes effect on or before January 1, 1980, see note under Bus. & Prof.C. § 700.

## § 2932. Denial of credit; procedures; notice of good behavior credit, participation credit and anticipated release date; conduct constituting crime

(a) Not more than 90 days of good behavior credit nor more than 30 days of participation credit may be denied or lost during any eight-month period during which the misbehavior or failure to participate took place. Good behavior and participation credit shall be deemed to be earned in cases where the department fails to adhere to the time limitations of this section except as specified in subdivision (e). Any procedure not provided for by this section, but necessary to carry out the purposes of this section, shall be those procedures provided for by the Department of Corrections for serious disciplinary infractions if those procedures are not in conflict with this section.

(1) The Department of Corrections shall, using reasonable diligence to investigate, provide written notice to the prisoner. The written notice shall be given within five days after the discovery of information leading to charges that may result in a possible denial of good behavior or participation credit, but not later than 30 days after the alleged misbehavior took place, unless the evidence was not reasonably discoverable. The written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at such hearing, and in the case where the prisoner has been notified more than 30 days after the alleged misbehavior why the evidence was not reasonably discoverable within the 30 days or any sooner than it was discovered. Such hearing shall be conducted by an individual who shall be independent of the case and shall take place within 10 days of such written notice; unless for good cause shown by the Department of Corrections that extraordinary circumstances prevented the hearing from being conducted within 10 days and the prisoner is not prejudiced by the delay the Department of Corrections shall notify the prisoner in writing specifying the extraordinary circumstances and shall conduct the hearing as soon as possible but in no case later than 30 days after the initial written notice of possible good behavior or participation credit denial.

(2) The prisoner has the right to elect to be assigned an investigative employee who will gather information, talk to witnesses, prepare a written report and be present at the hearing.

(3) The prisoner may request witnesses to attend the hearing and they shall be called unless the person conducting the hearing has specific reasons to deny this request. Such specific reasons shall be set forth in writing and a copy of such document shall be presented to the prisoner.

(4) The person who will conduct the hearing shall determine if the prisoner shall need assistance with presentation of a defense at the hearing and if so, at the prisoner's discretion, the prisoner has the right to be assigned an employee of the Department of Corrections to assist in presenting the prisoner's defense.

Case 5:08-cv-00745-JW Document 1-5 Filed 01/31/2008 Page 3 of 8

(5) The prisoner has the right, under the ... of the person conducting the hearing, to question all witnesses.

(6) At the conclusion of the hearing the charge shall be dismissed if the facts do not support the charge, or the inmate may be found guilty on the basis of a preponderance of the evidence.

(7) If found guilty the prisoner shall be advised within 10 days in writing of the guilty finding and the specific evidence relied upon to reach this conclusion and the amount of good-time loss. The prisoner may appeal such decision through the Department of Corrections review procedure, and may, upon final notification of appeal denial, within 10 days of such notification demand review of the department's denial of credit to the Board of Prison Terms, and the board may affirm, reverse, or modify the department's decision or grant a hearing before the board at which hearing the inmate will have the rights specified in Section 3041.5.

(b) Within 30 days of reception in prison, each prisoner shall be notified of the total amount of good behavior and participation credit which may be credited to his term and his anticipated good-time release date and shall be notified of any change in the anticipated release date.

(c) If the conduct the prisoner is charged with also constitutes a crime, the Department of Corrections may refer the case to criminal authorities for possible prosecution and notify the prisoner as provided in subdivision (a). The prisoner may request postponement of the disciplinary proceedings pending such referral, in which case the time limitations specified in subdivision (a) shall not apply.

The prisoner may revoke his request for postponement of the disciplinary proceedings up until the filing of the accusatory pleading. In the event of the revocation of the request for postponement of the proceeding, the department shall hold the hearing within 15 days of the revocation.

In the case where the prisoner is prosecuted by the district attorney, the Department of Corrections shall not deny good behavior credit where the prisoner is found not guilty and may deny good behavior credit pursuant to the schedule specified in Section 2931 if the prisoner is found guilty.

(d) If good behavior or participation credit denial proceedings, or criminal prosecution prohibit the release of a prisoner who would have otherwise been released, and the prisoner is found not guilty of the alleged misconduct, the amount of time spent incarcerated, in excess of what the period of incarceration would have been absent the al[illegible] misbehavior, shall be deducted from the prisoner's [illegible] parole period.

(Added by Stats.1976, c. 1139, § 276. Amended by Stats.1977, c. 165, § 39; Stats.1979, c. 255, § 16; Stats.1980, c. 1108, § 1.)

## ARTICLE 3. BLACKLIST OR EXTORTION OF DISCHARGED PRISONER

*Article 3 was added by Stats.1977, c. 165, § 41.*

*Former Article 3 was repealed by Stats.1977, c. 165, § 40.*

Sec.
2940 to 2946. Repealed.
2947. Misdemeanor.

### §§ 2940 to 2946. Repealed by Stats.1977, c. 165, § 40

### § 2947. Misdemeanor

Any person who knowingly and willfully communicates to another, either orally or in writing, any statement concerning any person then or theretofore convicted of a felony, and then finally discharged, and which communication is made with the purpose and intent to deprive such person so convicted of employment, or to prevent him from procuring the same, or with the purpose and intent to extort from him any money or article of value; and any person who threatens to make any such communication with the purpose and intent to extort money or any article of value from such person so convicted of a felony is guilty of a misdemeanor.

(Added by Stats.1977, c. 165, § 41.)

Former § 2947 was repealed by Stats.1977, c. 165, § 40.

#### Cross References

Communications intended to deprive parolees from employment or to extort funds, prohibition of, see § 3058.
Definitions
Felony, see § 17.
Misdemeanor, see § 17.
Punishment for misdemeanor, see §§ 19, 19a.
Threats inducing fear to expose commission of a crime, see § 519.
Use of photograph or fingerprints to detriment of employee or applicant for employment, see Labor Code § 1051.

## ARTICLE 4. DISPOSITION OF MENTALLY DISORDERED PRISONERS UPON DISCHARGE

Sec.
2960. Placement in treatment facility; effect on discharge time; duration of confinement.
2961 to 2964. Repealed.

#### Cross References

Disposition of criminally insane upon recovery of sanity, see Welfare and Institutions Code § 7375.
Inquiry into insanity of defendant before trial or after conviction, see § 1367 et seq.

d upon conviction thereof shall be punished by imprisonment in e county jail for a term not more than six months, or by a fine of t more than two hundred dollars ($200), or by both such fine and iprisonment. Any peace officer or any officer or guard of any state ison or any superintendent of such work, having in charge the nvicts used in such camps, may arrest without a warrant any rson violating any provisions of this article.

SEC. 35. Section 2911 of the Penal Code is amended to read:

2911. (a) The Director of Corrections may enter into contracts, th the approval of the Director of General Services, with propriate officials or agencies of the United States for the ifinement, care, education, treatment and employment of such sons convicted of criminal offenses in the courts of this state and nmitt ... state prisons as the director believes can benefit by h c... ement, care, education, treatment and employment.

... y contract entered into pursuant to subdivison (a) shall ...ior (1) reimbursement to the United States government for cost of such services, including any costs incurred by such ernment in transporting such prisoners, and (2) such other ters as may be necessary and appropriate to fix the obligations, ponsibilities and rights of the respective parties to the contract.

:) No inmate may be transferred from an institution within this e to a federal facility pursuant to such a contract unless he has cuted, in the presence of the warden or other head of the tution in this state in which he is confined, a written consent to transfer. The inmate shall have the right to a private consultation an attorney of his choice, concerning his rights and obligations er this section, prior to his appearance before the warden or r head of the institution for the purpose of executing the written ent.

) Whenever a contract has been made pursuant to this section dir... may direct the transfer of an inmate to the facility gnat... and shall thereafter deliver the inmate to the custody of ...iate federal officials for transportation to such facility. An ... transferred shall at all times be subject to the jurisdiction is state and may at any time be removed from the facility in h he is confined for return to this state, for transfer to another ty in which this state may have a contractual or other right to ne inmates, for release on probation or parole, for discharge, or ny other purpose permitted by the laws of this state; in all other cts an inmate transferred to a federal facility shall be subject provisions of the law or regulations applicable to persons itted for violations of laws of the United States not inconsistent the sentence imposed on such inmate.

The Community Release Board, and the panels and members of, may meet at the federal facility where an inmate is confined ant to this section or enter into cooperative arrangements with ponding federal agencies or officials, as necessary to carry out rm-fixing and parole functions. Nothing in this subdivision shall be deemed to waive an inmate's right to personally appear before the Community Release Board.

(f) Any inmate confined pursuant to a contract entered into pursuant to this section shall be released within the territory of this state unless the inmate, this state and the federal government shall agree upon release in some other place. This state shall bear the cost of return of the inmate to its territory.

SEC. 36. Article 2 (commencing with Section 2920) of Chapter 7 of Title 1 of Part 3 of the Penal Code is repealed.

SEC. 37. Section 2930 of the Penal Code is amended to read:

2930. (a) The Department of Corrections shall inform every prisoner sentenced under Section 1170, not later than 14 days after reception in prison, of all applicable prison rules and regulations including the possibility of receiving a one-third reduction of the sentence for good behavior and participation. Within 14 days of the prisoner's arrival at the institution to which the prisoner is ultimately assigned by the Department of Corrections, the prisoner shall be informed of the range of programs offered by that institution and their availability at that institution. The prisoner's central file shall reflect compliance with the provisions of this section not later than 90 days after reception in prison.

(b) The department shall, within 90 days after July 1, 1977, inform every prisoner who committed a felony before July 1, 1977, and who would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, of all applicable prison rules and regulations, which have not previously been provided, of the range of programs offered and their availability, and the possibility of receiving a reduction for good behavior and participation of one-third of the prisoner's remaining sentence after July 1, 1977. The inmate's central file shall reflect compliance with the provisions of this section.

SEC. 38. Section 2931 of the Penal Code is amended to read:

2931. (a) In any case in which an inmate was sentenced to the state prison pursuant to Section 1170, or if he committed a felony before July 1, 1977, and he would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2. A document shall be signed by a prison official and given to the inmate, at the time of compliance with Section 2930, outlining the conditions which the inmate shall meet to receive the credit. The conditions specified in such document may be modified upon any of the following:

(1) Mutual consent of the prisoner and the Department of Corrections.

(2) The transfer of the inmate from one instution to another.

(3) The department's determination of the prisoner's lack of adaptability or success in a specific program or assignment. In such

Case 5:08-cv-00745-JW Document 1-5 Filed 01/31/2008 Page 5 of 8

e the inmate shall be entitled to a hearing regarding the artment's decision.

4) A change in custodial status.

b) Total possible good behavior and participation credit shall ult in a four-month reduction for each eight months served in or in a reduction based on this ratio for any lesser period of e. Three months of this four-month reduction, or a reduction ed on this ratio for any lesser period, shall be based upon nce from any or all of the following activities:

1) Assault with a weapon; or escape.

2) Physically assaultive behavior; possession of a weapon without nission; possession of controlled substances without prescription; mpt to escape; or urging others, with the intent to cause a riot, o acts of force or violence, at a time and place under ces which produce a clear and present and immediate a riot which results in acts of force or violence.

) intentional destruction of state property valued in excess of dollars ($50); falsification of a significant record or document; ession of escape tools without permission; or manufacture or sale toxicants. Activities specified in paragraph (1) may result in a mum denial of good behavior credit of 45 days for each such ibited activity. Activities specified in paragraph (2) may result maximum denial of good behavior credit of 30 days for each such ibited activity. Activities specified in paragraph (3) may result maximum denial of good behavior credit of 15 days for each such ibited activity. Nothing in this section shall prevent the rtment of Corrections from seeking criminal prosecution for tions of law.

One of the four months reduction, or a formula based on this for a lesser period, shall be based solely upon participation in educational, vocational, therapeutic or other prison activities. re icceed after demonstrating a reasonable effort in the fied ctivity shall not result in loss of participation credit. participate in the specified activities can result in a loss of credit of 30 days for each failure to participate. ver, those confined either by choice or due to behavior ms shall be given specified activities commensurate with the dial status.

. 39. Section 2932 of the Penal Code is amended to read:

2. (a) Not more than 90 days of good behavior credit nor than 30 days of participation credit may be denied or lost any eight-month period during which the misbehavior or to participate took place. Good behavior and participation shall be deemed to be earned in cases where the department adhere to the time limitations of this section except as ed in subdivision (c). Any procedure not provided for by this , but necessary to carry out the purposes of this section, shall se procedures provided for by the Department of Corrections ious disciplinary infractions if those procedures are not in

conflict with this section.

(1) The Department of Corrections shall, using reasonable diligence to investigate, provide written notice to the prisoner. The written notice shall be given within five days after the discovery of information leading to charges that may result in a possible denial of good behavior or participation credit, but not later than 30 days after the alleged misbehavior took place, unless the evidence was not reasonably discoverable. The written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at such hearing, and in the case where the prisoner has been notified more than 30 days after the alleged misbehavior why the evidence was not reasonably discoverable within the 30 days or any sooner than it was discovered. Such hearing shall be conducted by an individual who shall be independent of the case and shall take place within 10 days of such written notice; unless for good cause shown by the Department of Corrections that extraordinary circumstances prevented the hearing from being conducted within 10 days and the prisoner is not prejudiced by the delay the Department of Corrections shall notify the prisoner in writing specifying the extraordinary circumstances and shall conduct the hearing as soon as possible but in no case later than 30 days after the initial written notice of possible good behavior or participation denial.

(2) The prisoner has the right to elect to be assigned an investigative employee who will gather information, talk to witnesses, prepare a written report and be present at the hearing.

(3) The prisoner may request witnesses to attend the hearing and they shall be called unless the person conducting the hearing has specific reasons to deny this request. Such specific reasons shall be set forth in writing and a copy of such document shall be presented to the prisoner.

(4) The person who will conduct the hearing shall determine if the prisoner shall need assistance with presentation of a defense at the hearing and if so, at the prisoner's discretion, the prisoner has the right to be assigned an employee of the Department of Corrections to assist in presenting the prisoner's defense.

(5) The prisoner has the right, under the direction of the person conducting the hearing, to question all witnesses.

(6) At the conclusion of the hearing the charge shall be dismissed if the facts do not support the charge, or the inmate may be found guilty on the basis of a preponderance of the evidence.

(7) If found guilty the prisoner shall be advised within 10 days in writing of the guilty finding and the specific evidence relied upon to reach this conclusion and the amount of good-time loss. The prisoner may appeal such decision through the Department of Corrections review procedure, and may, upon final notification of appeal denial, within 10 days of such notification demand review of the

Case 5:08-cv-00745-JW Document 1-5 Filed 01/31/2008 Page 6 of 8

partment's denial of credit to the Community Release Board, and e board may affirm, reverse, or modify the department's decision grant a hearing before the board at which hearing the inmate will ve the rights specified in Section 3041.5.

(b) Within 30 days of reception in prison, each prisoner shall be tified of the total amount of good behavior and participation credit hich may be credited to his term and his anticipated good-time ease date and shall be notified of any change in the anticipated ease date.

(c) If the conduct the prisoner is charged with also constitutes a me, the Department of Corrections may refer the case to criminal thorities for possible prosecution and notify the prisoner as ovided subdivision (a), in which case the time limitations ecified subdivision (a) shall not apply. If the district attorney has fil n accusatory pleading against the prisoner within 60 days ferral, the prisoner may request that a hearing be held in ich case the department must hold the hearing within 15 days of h request.

n the case where the prisoner is prosecuted by the district orney, the Department of Corrections shall not deny good avior credit where the prisoner is found not guilty and may deny d behavior credit pursuant to the schedule specified in Section 1 if the prisoner is found guilty.

d) If good behavior or participation credit denial proceedings, or ninal prosecution prohibit the release of a prisoner who would e otherwise been released, and the prisoner is found not guilty he alleged misconduct, the amount of time spent incarcerated, in ess of what the period of incarceration would have been absent alleged misbehavior, shall be deducted from the prisoner's parole od.

EC. Article 3 (commencing with Section 2940) of Chapter Title of Part 3 of the Penal Code is repealed.

EC. Article 3 (commencing with Section 2947) is added to of Title 1 of Part 3 of the Penal Code, to read:

Article 3. Blacklist or Extortion of Discharged Prisoner

47. Any person who knowingly and willfully communicates to her, either orally or in writing, any statement concerning any on then or theretofore convicted of a felony, and then finally harged, and which communication is made with the purpose and nt to deprive such person so convicted of employment, or to ent him from procuring the same, or with the purpose and t to extort from him any money or article of value; and any on who threatens to make any such communication with the ose and intent to extort money or any article of value from such on so convicted of a felony is guilty of a misdemeanor.

C. 42. Section 3000 of the Penal Code is amended to read:

0. The Legislature finds and declares that the period

immediate following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to Section 1168 or 1170 shall include a period of parole, unless waived, as provided in this section. Notwithstanding any provision to the contrary in Article 3 (commencing with Section 3040) of this chapter:

(a) At the expiration of a term of imprisonment of one year and one day, or a term of imprisonment imposed pursuant to Section 1170, or at the expiration of such term as reduced pursuant to Section 2931, if applicable, the inmate shall be released on parole for a period not exceeding one year, unless the board for good cause waives parole and discharges the inmate from custody of the department.

(b) In the case of any inmate sentenced under Section 1168, the period of parole shall not exceed three years in the case of an inmate imprisoned under a life sentence, and shall not exceed one year in the case of an inmate whose prison sentence does not consist of imprisonment under a life sentence, unless in either case the board for good cause waives parole and discharges the inmate from custody of the department. This subdivision shall be also applicable to inmates who committed crimes prior to July 1, 1977, to the extent specified in Section 1170.2.

(c) The board shall consider the request of any inmate regarding the length of his parole and the conditions thereof.

(d) Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate under subdivision (a) or (b), as the case may be, whichever is earlier, the inmate shall be discharged from custody. The date of the maximum statutory period of parole under this subdivision and subdivisions (a) and (b) shall be computed from the date of initial parole, or July 1, 1977, whichever is later, and shall be a period chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward such period of parole unless the prisoner is found not guilty of the parole violation. However, in no case, except as provided in Section 3064, may a prisoner sentenced pursuant to Section 1170 be retained under parole supervision or in custody for a period longer than 18 months from the date of his initial parole, and, except as provided in Section 3064, in no case may a prisoner sentenced pursuant to subdivision (b) of Section 1168 be retained under parole supervision or in custody for a period longer than four years from the date of his initial parole.

(e) It is not the intent of this section to diminish resources presently allocated to the Department of Corrections for parole functions.

(f) The Department of Corrections shall meet with each inmate

it 30 days prior to his good-time release date, unless such release is within 30 days of July 1, 1977, and shall provide, under lines specified by the Community Release Board, the tions of parole and the length of parole up to the maximum d of time provided by law. The inmate has the right to sideration of the length of parole and conditions thereof by the nunity Release Board.

. 43. Article 2 (commencing with Section 3020) of Chapter itle 1 of Part 3 of the Penal Code is repealed.

. 44. Section 3040 of the Penal Code is amended to read:

). The Community Release Board shall have the power to prisoners imprisoned in the state prisons pursuant to ision (b) of Section 1168 to go upon parole outside the prison and sures. The board may parole prisoners in the state s t aps for paroled prisoners established under Section

Section 3041 of the Penal Code is amended to read:

. (a) In the case of any prisoner sentenced pursuant to any on of law, other than Chapter 4.5 (commencing with Section of Title 7 of Part 2, the Community Release Board shall meet ach such inmate within the first year of incarceration solely for urposes of reviewing the inmate's file and making nendations. One year prior to the inmate's minimum eligible release date a three-member panel of the board shall again with the inmate and shall normally set a parole release date. ommunity Release Board shall set the parole release date in a r that will provide uniform terms for offenses of similar and magnitude in respect to their threat to the public. The shall comply with the sentencing rules that the Judicial l may issue and any sentencing information relevant to the of parole release dates. The board shall establish criteria for ing parole release dates and in doing so shall consider the c ims of the crime for which the prisoner was sentenced ors in mitigation or aggravation of the crime. At least r of the panel shall have been present at the last ng meeting, unless it is not feasible to do so or where the last ng meeting was the initial meeting. Any person on the panel may request review of any decision regarding parole ll board for an en banc hearing. In case of such a review, a vote of the full Community Release Board in favor of parole ed to grant parole to any prisoner.

he board shall set a release date unless it determines that the of the current convicted offense or offenses, or the timing ity of current or past convicted offense or offenses, is such sideration of the public safety requires a more lengthy f incarceration for this individual, and that a parole date, e, cannot be fixed at this meeting.

or the purpose of reviewing the suitability for parole of those s eligible for parole under prior law at a date earlier than that calculated under Section 1170.2, the board shall appoint panels of at least two persons to meet annually with each such prisoner until such time as the person is released pursuant to such proceedings or reaches the expiration of his term as calculated under Section 1170.2.

SEC. 46. Section 3041.5 of the Penal Code is amended to read:

3041.5. (a) At all hearings for the purpose of reviewing a prisoner's parole suitability, or the setting, postponing or rescinding of parole dates:

(1) At least 10 days prior to any hearing by the Community Release Board, the prisoner shall be permitted to review his or her file which will be examined by the board and shall have the opportunity to enter a written response to any material contained in such file.

(2) The prisoner shall be permitted to be present, to ask and answer questions, and to speak on his own behalf.

(3) Unless legal counsel is required by some other provision of law, a person designated by the Department of Corrections shall be present to insure that all facts relevant to the decision be presented, including, if necessary, contradictory assertions as to matters of fact that have not been resolved by departmental or other procedures.

(4) The prisoner shall be permitted to request and receive a stenographic record of all proceedings.

(5) If the hearing is for the purpose of postponing or rescinding of parole dates, the prisoner will have rights set forth in paragraphs (3) and (5) of subdivision (a) of Section 2932.

(b) (1) Within 10 days following any meeting where a parole date has been set, the board shall send the prisoner a written statement setting forth his parole date, the conditions he must meet in order to be released on the date set, and the consequences of failure to meet such conditions.

(2) Within 20 days following any meeting where a parole date has not been set for the reasons stated in subdivision (b) of Section 3041, the board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date; and suggest activities in which he might participate that will benefit him while he is incarcerated. The board shall hear each such case annually thereafter.

(3) Within 10 days of any board action resulting in the postponement of a previously set parole date, the board shall send the prisoner a written statement setting forth a new date and the reason or reasons for such action and shall offer the prisoner an opportunity for review of such action within 90 days of the time the prisoner receives the statement.

(4) Within 10 days of any board action resulting in the rescinding of a previously set parole date, the board shall send the prisoner a written statement setting forth the reason or reasons for such action and shall, within six months, set the prisoner's parole release date in accord with the provisions of Section 3041 and this section.

SEC. 47. Section 3041.7 of the Penal Code is amended to read:

Case 5:08-cv-00745-JW Document 1-5 Filed 01/31/2008 Page 8 of 8

..7. A prisoner under a life sentence whose release date has set at more than three years beyond the minimum eligible date, or whose parole release date is not set at the meeting takes place one year prior to the prisoner's minimum eligible date, or whose parole date has been rescinded shall be notified or her right to request a rehearing by the board. Such rehearing be held within 60 days of such request. At the rehearing and at subsequent hearings for the purpose of setting or advancing a date, the inmate shall be entitled to be represented by counsel the provisions of Section 3041.5 shall apply.

. 48. Section 3042 of the Penal Code is amended to read:

. (a) At least 30 days before the Community Release Board ieets to review or consider the parole suitability or the setting and of a parole date for any prisoner sentenced to a life ce, board shall send written notice thereof to each of the sons: the judge of the superior court before whom the r was tried and convicted, the attorney for the defendant, the attorney of the county from which the prisoner was ced and the law enforcement agency that investigated the

The Community Release Board shall record all such hearings nscribe such recordings within 30 days of any such hearing. h transcripts, including the transcripts of all such prior gs, shall be filed and maintained in the office of the nity Release Board and shall be made available to the public than 30 days from the date of the hearing. No such prisoner tually be released on parole prior to 60 days from the date of ring.

At any such hearing the presiding hearing officer must state and supporting reasons on the record.

Any statements, recommendations, or other materials re ll be incorporated into the transcript of any such , un s such material is confidential in order to preserve ecurity and the security of others who might be r by disclosure.

49. Section 3043 of the Penal Code is repealed.

50. Section 3044 of the Penal Code is repealed.

51. Section 3046 of the Penal Code is amended to read:

No prisoner imprisoned under a life sentence may be until he has served at least seven calendar years. The nity Release Board shall, in considering a parole for such , consider all statements and recommendations which may en submitted by the judge, district attorney, and sheriff, to Section 1203.01, or in response to notices given under 3042, and recommendations of other persons interested in ting or denying of such parole. The board shall enter on its inting or denying parole to such prisoners, the fact that such its and recommendations have been considered by it.

52. Section 3050 of the Penal Code is repealed.

SEC. 53. Section 3052 of the Penal Code is amended to read:

3052. The Community Release Board shall have the power to establish and enforce rules and regulations under which prisoners committed to state prisons may be allowed to go upon parole outside the prison buildings and enclosures when eligible for parole.

SEC. 54. Section 3053 of the Penal Code is amended to read:

3053. The Community Release Board upon granting any parole to any prisoner may also impose on the parole such conditions as it may deem proper.

SEC. 55. Section 3053.5 of the Penal Code is amended to read:

3053.5. Upon granting parole to any prisoner convicted of any of the offenses enumerated in Section 290, the Community Release Board shall inquire into the question whether the defendant at the time the offense was committed was intoxicated or addicted to the excessive use of alcoholic liquor or beverages at that time or immediately prior thereto, and if it is found that the person was so intoxicated or so addicted, it shall impose as a condition of parole that such prisoner shall totally abstain from the use of alcoholic liquor or beverages.

SEC. 56. Section 3054 of the Penal Code is repealed.

SEC. 57. Section 3055 of the Penal Code is repealed.

SEC. 58. Section 3057 of the Penal Code is amended to read:

3057. Confinement pursuant to a revocation of parole in the absence of a new conviction and commitment to prison under other provisions of law, shall not exceed six months. Upon completion of confinement pursuant to parole revocation without a new commitment to prison, the inmate shall be released on parole for a period which shall not extend beyond that portion of the maximum statutory period of parole specified by Section 3000 which was unexpired at the time of each revocation.

SEC. 59. Section 3059 of the Penal Code is amended to read:

3059. If any paroled prisoner shall leave the state without permission of the Community Release Board, he shall be held as an escaped prisoner and arrested as such.

SEC. 60. Section 3060 of the Penal Code is amended to read:

3060. The Community Release Board shall have full power to suspend or revoke any parole, and to order returned to prison any prisoner upon parole. The written order of any member of the Community Release Board shall be a sufficient warrant for any peace or prison officer to return to actual custody any conditionally released or paroled prisoner.

SEC. 61. Section 3062 of the Penal Code is amended to read:

3062. The Governor of the state shall have like power to revoke the parole of any prisoner. The written authority of the Governor shall likewise be sufficient to authorize any peace officer to retake and return said prisoner to the state prison. His written order revoking the parole shall have the same force and effect and be executed in like manner as the order of the Community Release Board.

10

WAYS & MEANS STAFF ANALYSIS LAST AMENDED 8/13 AUTHOR Nejedly NO. SB 4

CONSULTANT Williams DUE 8/17 DEPT. OF FINANCE

FISCAL IMPACT APPROPRIATION } STATE COST SB 90 COST REVENUE LOSS

SUBJECT:
Determinate Sentencing.

COMMENT:
Existing law provides for an indeterminate sentence following the conviction of a person for a felony. In theory, the indeterminate sentence authorizes the trial judge to commit a convicted felon to state prison but the decision as to when such felon shall be released is the responsibility of the Adult Authority or the Women's Board of Terms and Paroles.

The repeal of the indeterminate sentence law is considered by many to be the number one priority for present-day penal reform because under such system prisoners spend most of their time not knowing when they are to be released or what they must actually do to speed up their release da

This bill repeals the existing indeterminate sentence statute except those that are for life imprisonment, life without possibility of parole, or death and establishes a seven category sentence structure from which the judge shall sentence based upon which category the particular crime committed falls into. Four of the seven categories have three choices which the judge may make in sentencing.

This bill also provides for credits from the sentence for good behavior as specified and for enhancements to the sentence depending upon the actual circumstances of the crime as committed by the convicted person.

This bill also abolishes the aforementioned existing parole boards and establishes a Community Release Board with specified duties.

This bill also specifies new duties for the Judicial Council whereby they are to adopt sentencing rules for the consideration of trial court to collect, analyze and distribute sentencing information to trial judge and to conduct sentencing institutes.

FISCAL IMPACT:
The Department of Corrections has not been able to accurately calculate the fiscal impact of this legislation, however, each of their estimates has indicated that a net savings will accrue as a result of this bill.

The Judicial Council indicates that their costs would be increased by $512,027 and the annual increase to the Superior Courts would be $1,109,912.

(SEE ATTACHED)

This bill should result in a total net savings to the state.

-more-

ANALYSIS:
This bill amends all relevant code sections where penalties and sentences apply in order to conform such with the determinate sentence law as provided for in this legislation.

Legislative Findings and Declarations

This bill finds and declares that the purpose of imprisonment for crim is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances.

Trial Court Sentencing

All crimes that carry a prison sentence are placed in seven categories with four categories containing three classifications. The trial cour shall sentence the defendant to one of the terms of imprisonment specified unless such convicted person is given any other disposition provided by law, including a fine, jail, probation or the suspension o imposition or execution of sentence. In sentencing the convicted pers the court shall take into consideration the sentencing rules of the Judicial Council.

Sentencing Classifications -- Section 1170 a(2) b

(1) 16 months, 2, 3 years - this classification is to cover the least serious felonies. It contains all felonies that currently carry a maximum of two years and a maximum of three years, all felonies that carry a maximum of five years (with one exception, Penal Code Section 243, battery with serious bodily injury), all wobblers (with three exceptions: P.C. 243, battery with bodily injury; P.C. 245a, assault with a deadly weapon or force likely to commit great bodily injury; P.C. 4532a, escape with force), some crimes with 10 year maxima, some crimes with 14 year maxima, and some others that have higher maxima such as statutory rape

and offenses involving prisoners. This category includes most non-violent property offenses (grand theft, forgery, receiving stolen property, joy-riding, credit card offenses, second degree burglary), possession of all controlled substances (that are currently felonies), possession for sale of dangerous drugs and marijuana, and some felonious assaults (simple assault on a peace officer, assault with intent to commit a felony, shooting into a dwelling).

-more-

(2) 2, 3, 4 years - this classification is to cover more serious offenses. It contains only one felony that currently has a maximum of less than seven years (P.C. 243, battery with injury). Most other crimes with 10 and 14 year maxima are in this classification. It contains all wobblers that were not in the previous classification. It contains some crimes that currently carry a maximum of life imprisonment (sale of marijuana, first degree burglary, assault with a deadly weapon). Some of the felonies in this classification are: mayhem, assault with intent to commit murder, assault with a deadly weapon, voluntary manslaughter, involuntary manslaughter, bribery, perjury, possession for sale of opiates, sale of dangerous drugs and marijuana, second degree robbery, first degree burglary, arson, forceable oral copulation, forceable sodomy, oral copulation on a child under 14, sodomy on a child under 14, pimping, pandering, and assaults with intent to rape or rob.

(3) 3, 4, 5 years - this classification covers the second most serious felonies that are to be determinately sentenced. All crimes in this group currently carry maxima of life imprisonment or a very high term. The minima currently range from six months to ten years for these crimes. Included in this classification are the following crimes: sale of opiates, kidnap, unarmed robbery of a taxi or bus driver, assault with a deadly weapon on a peace officer, forceable rape, gang sodomy and oral copulation, child molestation, and burglary with explosives.

(4) 5, 6, 7 years - this classification covers the most serious crimes that are to be punished with something less than life imprisonment or death. SB 42 places the following five crimes into this category: second degree murder; attempted murder; explosives with bodily injury; gang rape, and conspiracy to commit a crime on certain elected officials. All these crimes currently carry maxima of from 20 years to life imprisonment and minima ranging from five to fifteen years.

(5) Life imprisonment - this covers murder in the first degree, explosives with great bodily injury, kidnap for ransom, trainwrecking.

(6) Life with no parole - included in this classification is trainwrecking with injury, and kidnap for ransom with injury.

-more-

(7) Death - this covers special circumstance murders and kidnap with death.

Attempts are to be punished as 1/2 of the term selected, plus enhancements, consecutive sentences, etc. Attempt of a crime punishable by life imprisonment is to be punished 5, 6, 7 years. Attempt of the lowest class felony can be punished with state prison (current law only allows one year in the county jail for such attempts).

Enhancement and Mitigation of Sentence -- Section 1170 (b)

When a judgement of imprisonment is entered, the court shall order the middle of three possible terms of imprisonment, unless there are circumstances in aggravation or mitigation of the crime. Such circumstances shall only be considered if set for in a motion made prior to or at the time set for sentencing.

The upper term or lower term may be imposed only when the circumstance alleged to be in aggravation or mitigation respectively of the crime are found to be true by the trial judge upon the evidence introduced at the hearing on the motion, and are set forth as findings of fact on the record at the time of sentencing.

The following is a list of such circumstances that can enhance a sentence:

(A) Where the new offense is one of the following "violent felonies": (Section 667.5 a,c)

(1) Murder or voluntary manslaughter
(2) Mayhem
(3) Forceable rape as defined
(4) Sodomy by force, violence, duress, menace, or threat of great bodily harm
(5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm
(6) Kidnapping as defined
(7) Lewd acts on a child under 14 as defined
(8) Any other felony in which the defendant inflicts great bodily injury on any person other than accomplices has been alleged and proved.

The trial court shall impose a three year term for each prior separate prison term served by the defendant for any of the above felonies. (Except in any case in which the defendant has remained free of prison custody and free of felony conviction for 10 years immediately preceeding the filing of an accusatory pleading that results in conviction.

(B) Any person who attempts or commits any felony while personally armed with any specified deadly weapon (one year enhancement) (Section 12022).

-more-

(C) Any person who uses a firearm in the commission or attempted commission of a felony. (Two year enhancement) (Section 12022.5).

(D) Where the elements of any felony, excepting robbery, arson, and burglary as specified, involve taking of funds or property from or property damage in excess of $100,000 but less than $500,000. (One-half the base year enhancement) (Section 12022.6a).

(1) If the amount is equal to or greater than $500,000, the enhancement shall be equivalent to the base term selected by the judge. (Section 12022.6b).

(E) In any case, except a homicide offense, in which defendant is convicted of a felony in which great bodily injury is not an element of the crime but in the course of the commission of said crime and wit the intent to inflict such injury the defendant inflicts such injury upon any person other than accomplices. (3 year enhancement) (Section 12022.7).

(F) Consecutive sentences may be imposed that would add one-third of the middle base term to the sentence, for each consecutive sentence. Such consecutive sentence must be free of enhancements.

Judicial Council

(1) Provides that the Judicial Council shall adopt rules to promote uniformity in sentencing by providing criteria for the consideration o: the trial judge at the time of sentencing regarding the court's decision to:

(a) Grant probation or order state imprisonment.
(b) Impose the lower or upper prison term.
(c) Impose concurrent or consecutive sentences.
(d) Consider an additional sentence for prior prison terms.
(e) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the inflicti of great bodily injury.

(2) The Judicial Council shall:

(a) Collect, analyze, and quarterly distribute and publish in the official reporter relevant information to trial judges relating to sentencing throughout the state and penalties provided for in other jurisdictions.

(b) Conduct annual sentencing institutes for trial court judges pursuant to the Government Code, toward the end of assisting the judge in the imposition of appropriate sentences.

(c) The Judicial Council shall adopt rules to promote uniformity i parole release decisions by providing term-setting criteria for the consideration of the Community Release Board.

(d) The Judicial Council shall meet annually, in public hearing, providing prior public notice, for the purposes of reviewing statutory sentences and the operation of existing criminal sentencing statutes an shall thereafter report to the appropriate policy committees of the Legislature regarding all proposed legislation regarding this subject

matter and make recommendations. Such review and recommendations shall take into consideration:

I. The nature of the offense with the degree of danger the offense presents to society.
II. The penalty of the offense as compared to penalties for offenses that are in their nature more serious.
III. The penalty of the offense as compared to penalties for the same offense in other jurisdictions.
IV. The penalty of the offense as compared to recommendations for sentencing suggested by national commissions and other learned bodies.

Community Release Board

This bill abolishes the Adult Authority and the Women's Board of Terms and Parole and establishes the Community Release Board.

The board shall be composed of nine members, each of whom shall be appointed by the Governor with the advice and consent of the Senate, for a term of four years. Two of the regional appointees shall be persons who were members of the Adult Authority immediately prior to the effective date of this legislation, and two shall be persons who were members of the Women's Board of Terms and Parole immediately prio to the effective date of this legislation.

The board shall reflect as nearly as possible a cross-section of the racial, sexual, economic, and geographic features of the population of state. (Section 5075).

The board shall meet at each of the state prisons at such times as may necessary for a full and complete study of the cases of all prisoners whose applications for parole come before it. (Section 5076.1).

The board may meet and transact business in panels. Each board panel shall consist of at least three members. (Section 5076.1).

The board shall review all prisoners' requests for reconsideration of denial of good time credit, and setting of parole length or conditions and shall have the authority to modify the previously made decisions of the Department of Corrections as to these matters. The revocation of parole shall be determined by the Community Release Board.

Credits for Good Behavior and Participation

This bill allows for credits to be deducted from the term of imprisonm Three months a year are to be deducted for the forebearance of specifi acts (such as escape, assaultive behavior, possession of drugs, possession of a weapon, etc.) These acts are placed into three

-more-

categories: acts which will allow the loss of 15 days; acts which wi: allow the loss of 30 days; acts which will allow the loss of 45 days. The bill provides for some procedural safeguards for the loss of good time.

One month a year is to be deducted for participation in work, educational, vocational, therapeutic, or other prison programs and activities.

All prisoners will serve eight months of each one year of the term unless good time or participation time credits are lost. If the inmat is prosecuted by the local district attorney for an act for which good time could be lost, then good time can only be lost by a conviction. An acquittal is binding as a factual determination.

Prisoners sentenced prior to the effective date of SB 42 will receive crédits on their terms only after the effective date of the Act.

Parole

Prescribes rules and procedures for parole of persons sentenced under this bill, including an automatic parole of no longer than one year, or three years for "lifers", at the expiration of the term, unless CRB for good cause waives parole and discharges the inmate.

The bill prescribes rules and procedures for parole of persons receivi an indeterminate (life) sentence, including the following:

(1) Meetings between the inmate and CRB, at which a majority of a three member panel of CRB will decide whether to set or decline to s a release date. The first is within one year of his incarceration. I no release date is set prior to his minimum eligible parole release date, or if the date is more than three years after the minimum, he ca: have a re-hearing with counsel.

(2) The right of the inmate to the undivided attention of panel members, to a transcript and to receive notice of the panel's decision with an explanatinn whenever a release date has been denied, postponed or rescinded.

Limits parole revocation in the following respects:

(1) Reconfinement shall not exceed six months.

(2) In no event shall reconfinement and re-parole extend beyond tl original one-year, or three-year maximum.

Retroactivity

For those prisoners already in prison but who would have been determinately sentenced under SB 42 (had it been law at the time of th sentence), the following guidelines are set up for the Community Release Board:

-more-

(a) Figure the middle term of the crime for which the prisoner has been convicted and aggregate it by any additional terms which were imposed by the trial court.

(b) The CRB should use this figure as the prisoner's term unless he already has a parole date from the Adult Authority (or Women's Board) that will let the prisoner out earlier; then the earlier date shall be selected. There shall be no good time credit for time served prior to the effective date of the Act.

(c) However, if the CRB feels that the prisoner merits more time because of the number of convictions or priors, or due to the fact tha a deadly weapon was involved or that an attempt to inflict great bodil injury was involved, the Board may set a later date for release (upon a hearing with counsel for the inmate).

In fixing a term in these cases, the board "shall be guided by the ter which reasonably could be imposed on a person convicted after the effective date of this act of a similar crime under similar circumstances."

PART 1

CASE NO. C 14833 PEOPLE OF THE STATE OF CALIFORNIA vs. Michael Stephen Matlock

Sentencing Attachment

X Sentence is imposed as follows: Department of Corrections for 15 years to life on Count VS 187 2nd degree, Count II VS 187 2nd Degree 15 years to life concurrent with Count I. Sentence on Count III VS 664/187 and Count IV VS 664/187 are stayed. The allegation of 12022.5/1203.06(a)(1) on all four counts are stricken pursuant to 1170.1(h)PC. Credit for time served 144actual plus 72 good/work time days for a total credit of 216 days

X Defendant committed to Department of Corrections for VS 187 PC 2nd Degree to be delivered by the Sheriff to Director of Dept. of Corrections, Vacaville, CA. for placement

____ Defendant committed to the California Youth Authority for ____ to be delivered by the Sheriff to the Director. If the defendant is no accepted, to be brought before this Court for further proceedings.

____ Defendant sentenced to San Mateo County Jail for term of ____ with credit for ____ served. Work furlough recommended Eligible/not eligible for county parole.

X Defendant fined in the sum of $ 100.00 as mandated by plus penalty assessment of $ 13967 GC plus Indemnity Fund Assessment of $ ____ to be paid ____

____ Sentence to run consecutively/concurrently with ____

____ Conditions of Probation (in addition to usual conditions re supervision, employment, obedience of laws, abstinence from intoxicating liquors remaining in State, and keeping Probation Officer advised of his/her whereabouts):

____ Serve ____ in County Jail, with credit for ____ served. Work furlough recommended. Eligible/not eligible for county parole.

____ Execution of jail sentence stayed to ____ Defendant ordered to report to the jail on such day and time.

____ Pay fine of $ ____ plus penalty assessment of $ ____ plus Indemnity Fund assessment of $ ____ through the Probation Department as directed.

____ Make restitution in amount of $ ____

____ Perform ____ hours of uncompensated public service work ____

____ Submit to chemical testing for the detection of ingestion of alcohol/narcotics/restricted dangerous drugs.

____ Submit to search and seizure of his/her person, vehicle, or residence by any peace or probation officer, day or night, with or without his/he consent, with or without a search warrant.

____ Seek and maintain alcoholic/narcotic treatment or counselling as directed by Probation Officer.

____ Enter and participate in alcoholic/narcotic treatment program at ____ as directed/approved by Probation Officer.

____ Seek and maintain participation in a vocational or educational program as directed by Probation Officer.

Date 9/12/85 Sentencing Attachment

232

REPORT—INDETERMINATE SENTENCE, OTHER SENTENCE CHOICE

FORM CI

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

BRANCH

COURT I.D. 4 1 1

PEOPLE OF THE STATE OF CALIFORNIA versus [X] PRESENT [ ] NOT PRESENT

DEFENDANT: MICHAEL STEPHEN MATLOCK

AKA:

CASE NUMBER(S): C 14833 -A, -B, -C, -D

REPORT TO JUDICIAL COUNCIL OF: [X] INDETERMINATE SENTENCE TO STATE PRISON [ ] SENTENCE CHOICE OTHER THAN STATE PRISON

SEP 25 1985

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 09 12 85 | 13 | ROBERT D. MILLER | CELIA WESTLUND |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| SONIA KOLKOURIS | CHARLES SMITH | DEN KETCHUM and GORDON ROCKHILL | KYRA CARSWELL |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

A. [ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTION BY JURY TRIAL | COURT TRIAL | PLEA | 654 STAY | 12022(a) | 12022(b) | 12022.3(a) | 12022.3(b) | 12022.5 | 12022.6(a) | 12022.6(b) | 12022.7 | 12022.8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1A | PC | 187** | MURDER-2nd Deg | 85 | 08 15 85 | XX | | | | | | | | | | | | |
| 2A | PC | 187** | MURDER-2nd Deg | 85 | 08 15 85 | XX | | | | | | | | | | | | |
| 3A | PC | 664/187 | ATTEMPTED MURDER | 85 | 08 15 85 | XX | | | X | | | | | | | | | |
| 4A | PC | 664/187 | ATTEMPTED MURDER | 85 | 08 15 85 | XX | | | X | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |

A. Number of prior prison terms charged and found

| SECTION | NUMBER |
|---|---|
| 667.5(a) | |
| 667.5(b) | |
| 667.5(b) | |

B. Number of prior felony convictions

| SECTION | NUMBER |
|---|---|
| 667.6(a) | |

3. [ ] Defendant was sentenced to death on counts ______, ______, ______.

4. [XX] Defendant was sentenced to State Prison:

A. [X] For life, or a term such as 15 or 25 years to life, with possibility of parole, on counts 1, 2, ______, ______, ______.

B. [ ] For life without the possibility of parole on counts ______, ______, ______, ______, ______.

C. [ ] For other term prescribed by law on counts ______, ______, ______, ______, ______.

5. [ ] Counts ______, ______, ______, ______, were deemed misdemeanors.

A [ ] Defendant sentenced to ______ (NUMBER) days in county jail for all counts.

B. [ ] Defendant fined in sum of $ ______.

6. [ ] For counts ______, ______, ______, ______, the defendant was placed on probation.

A. (1) [ ] Sentence pronounced and execution of sentence was suspended; or

(2) [ ] Imposition of sentence was suspended.

B. Conditions of probation included [ ] Jail Time ______ days [ ] Fine

7. Other dispositions

A. [ ] Defendant was committed to California Youth Authority.

B. [ ] Proceedings suspended, and defendant was committed to California Rehabilitation Center.

C. [ ] Proceedings suspended, and defendant was committed as a Mentally Disordered Sex Offender.

D. [ ] Proceedings suspended, and defendant was committed as mentally incompetent.

E. [ ] Other (Specify) ______

NOTE: PURSUANT TO ARTICLE VI, SECTION 6 OF THE CALIFORNIA CONSTITUTION AND SECTION 68505 OF THE GOVERNMENT CODE, T CHIEF JUSTICE REQUIRES THAT EACH SUPERIOR COURT SHALL COMPLETE THIS FORM FOR EACH INDETERMINATE SENTENCE STATE PRISON OR SENTENCE CHOICE OTHER THAN STATE PRISON. THE REPORTS IMPLEMENT SECTION 1170.4 OF THE PENAL CO AND SHALL BE MAILED TO: ADMINISTRATIVE OFFICE OF THE COURTS, 350 McALLISTER, 3200 STATE BUILDING, SAN FRANCIS( CALIFORNIA 94102

DATE: September 24, 1985

SIGNATURE OF CLERK: [signature]

REPORT—INDETERMINATE SENTENCE, OTHER SENTENCE CHOICE

Const., Art. VI, Pen C. 1170.4, 117

WHITE COPY TO

In the Superior Court of the State of California

in and for the County of SAN MATEO

# Abstract of Judgment

Commitment to State Prison

SEP 24 1985
MARVIN CHURCH, County Clerk
By [signature] DEPUTY CLERK

Dept. No. 13 Case No. C 14833

The People of the State of California

vs.

MICHAEL STEPHEN MATLOCK

Defendant.

REGISTERED
SEP 25 1985

Present:

Hon. ROBERT D. MILLER
Judge of the Superior Court

CHARLES J. SMITH
Prosecuting Attorney

GORDON ROCKHILL
Counsel for Defendant

This certifies that on the 12 day of September, 19 85, judgment of conviction of the above-named defendant was entered as follows:

(1) In Case No. C 14833 Count No. I he was convicted by Jury (court or jury); on his plea of Not Guilty (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of insanity)

of the crime of MURDER OF THE SECOND DEGREE

(designation of crime and degree if any, including fact that it constitutes a second subsequent conviction of same offense if that affects the sentence.)

in violation of Section 187, Penal Code, CA (reference to Code or Statute, including Section and Subsection thereof, if any violated)

with prior felony convictions as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Defendant has been held in jail custody for 144 days as a result of the same criminal act or acts for which he has been convicted., plus 72 days good time/work time

Defendant was not (was or was not) armed with a deadly weapon at the time of his commission of the offense or a concealed deadly weapon at the time of his arrest within the meaning of Sections 969c and 3024 of the Penal Code.

Defendant was not (was or was not) armed with a deadly weapon at the time of his commission of the offense within the meaning of Sections 969c and 12022 of the Penal Code.

Defendant did not use (used or did not use) a firearm in his commission of the offense within the meaning of Sections 969d and 12022.5 of the Penal Code.

(Repeat foregoing with respect to each count of which defendant was convicted.).

PART 2

229

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

HONORABLE: ROBERT D. MILLER JUDGE DEPT. 13, Celia Westlund Deputy Clerk

Date September 12, 1985 Sonia Kolokouris Reporter

CASE NO. C 14833 (Parties and counsel checked if present) Present

PEOPLE OF THE STATE OF CALIFORNIA

vs

MICHAEL STEPHEN MATLOCK

District Attorney By Charles Smith DDA

Defense Counsel Gordon Rockhill and Jek Ketchum

CHARGE VS 187PC 12022.5PC/1203.06(a)(1) 2 Cts., VS 664/187PC 12022.5/1203.06(a 2

NATURE OF PROCEEDINGS

Motion for Probation Pronouncement of Judgment and Imposition of Sentence

X Defendant not present

____ Private Defender appointed with ____ designate

X Assistant Probation Officer Kyra Carswell XXXX present

____ Defendant states true name as ____

____ Defendant was handed a copy of the Certification pursuant to Section 859(a)PC, was arraigned on same, and reaffirmed plea made in Municipal Court.

____ On ____ motion ____ continued to ____

X Probation Report/ ____ received, reviewed and ordered file

____ Supplemental Probation Report/ ____ ordered

____ Criminal proceedings suspended, Sheriff ordered to deliver defendant to the Department of Corrections diagnostic facility at Vacaville, C Corona, CA for diagnosis and evaluation pursuant to Sec. 1203.03 PC for a temporary period not to exceed ninety days.

____ Defendant and counsel waived time for sentencing.

X Defendant waived formal arraignment for judgment and states there is no legal cause why sentence should not now be pronounced.

____ Imposition of sentence suspended. X Defendant sentenced per attachment. ____ Sentence suspended

X Probation denied. ____ Formal/Court Probation granted for a period of ____ per conditions on attachment.

____ Conditions of Probation accepted by defendant.

____ Defendant advised of period of parole pursuant to Section 1170.1 PC.

X Defendant advised of right to appeal, appeal procedure and right to appointed counsel pursuant to Rule 250, California Rules of Court.

____ Defendant failing to appear, without sufficient excuse ____ Bail foreited ____ O.R. revoked.

____ Bench Warrant ordered issued with no bail/bail fixed at $ ____ .

____ Defendant appearing ____ Bench Warrant recalled ____ Bail/O.R. reinstated.

____ Motion for issuance of Bench Warrant/Forfeiture of Bail/Revocation of O.R. submitted/continued to ____

____ Motion for reduction of Bail/Release O.R. is granted/denied. Bail reset at $ ____ .

X Defendant X Remanded ____ On Bail ____ O.R. ____ Ordered to appear

____ Bail exonerated ____

Date 9/12/85 Proceedings ____ MFP/POJ

2348

COMPUTATION OF EARNED CREDITS BASED
ON FOUR MONTHS CREDIT FOR EACH
EIGHT MONTHS SERVED ACCORDING TO
PEN. C. SEC. 2931, STATS 1977 C 165

NAME OF PRISONER: Michael Matlock (D-14884)

CASE NO.: 14833 San Mateo County

ARREST DATE: 4-22-85

JAIL TIME: 144 Days JAIL CREDITS: 72 Days TOTAL: 216 Days

SENTENCE: 9-12-85: Two 15 years to life concurrently (P.C. 187/190/669)

SENTENCE COMPUTATION:

Matlock was given a 15 year base term, or 5475 days. Subtract 216 days county jail time (144 + 72) for a prison term of 5259 days or 172.9 months upon his commitment to state prison on 4-22-88.

PRISON TERM COMPUTATION:

The 1978 Proposition 7 initiative adopted Pen. C. Sec. 2930 et seq., as its implementing mechanism for release on parole, *infra.* Pen. C. Sec. 2931 allowed the prisoner to earn 4 months off each 8 month segment based upon the expressed language in the statute. When the prisoner first enters prison the officials are to calculate his term and inform him of his release date. (Pen. C. Sec. 2931, Stats 1977 C 165 Sec. 38 & 42; People v Saffell 25 Cal.3d 233, 228, 235, (157 C.R. 897)(1979)).

| | | |
|---|---|---|
| Time to serve | 172.9 | (months) |
| divided by | 8 | (month segments) |
| = | 21.6 | |
| x | 4 | (months credit) |
| Total credit | 86.4 | (months) |

ACTUAL TERM OF SENTENCE COMPUTATIONS:

| | | |
|---|---|---|
| Sentence | 172.9 | (months as of 4-22-85) |
| Credit Reduction | - 86.4 | (months) |
| Sentence to Serve | 86.4 | (months) |
| | x 30.42 | (days per month - 365 divided by 12) |
| | 2628.3 | (days to serve as of 4-22-85) |

EARNED GOOD-TIME/PARTICIPATION RELEASE DATE: 7-2-92

PEN. C. SEC. 3000 (1978)/1 YEAR PAROLE/OFF PAROLE: 7-2-93 DISCHARGE

EXCEEDED DISCHARGE DATE BY: 12 years 172 days (As of April 1, 2006)

/ / / /

CDC-128-G (REV. 2/69)

**Number:** D-14884 **Name:** MATLOCK **N... Class.:** ANNUAL - 10/2002
**Custody:** MED A **Release Date:** 3/25/94 MEPD **CS:** 0 **WG/PG:** A1/A **EFF:** 11/4/85
**Comment:** PROGRAM REVIEW: UNASSIGN FROM CLK-B.101, DIRECTLY ASSIGN TO CLK-B.005

Subject appeared before Facility B Unit Classification Committee (UCC) on this date for a Program Review. A 72 hour notification was given to the inmate prior to the start of this committee. Committee notes that Subject is requesting to be reassigned as the CCII clerk. CCII Warren interviewed inmate Matlock and finds him to be appropriate for the position.

**COMMITTEE ACTION:** UCC acts to unassign from CLK-B.101. Directly assign to CLK-B.005. Subject actively participated in committee action and stated that he agreed with the recommendations. He was advised of his appeal rights. No further action at this time.

COMMITTEE MEMBERS:

S. SELLS, CCI
E. HYLAND, CCI

L. WARREN, FC(A)
CHAIRPERSON

S. SELLS, CCI
RECORDER

Date: 8/13/02 (page 1 of 1) **CLASSIFICATION: PROGRAM REVIEW** INST. MCSP

PART 1

COPY

Michael Matlock, D-14884
BLD 7 / 126-L / M.C.S.P.
Post Office Box # 409040
Ione, California 95640

In pro per

IN THE SUPREME COURT

FOR THE STATE OF CALIFORNIA

(October Term)

Case No. ______________
Superior Court # SC-14833
Appellate Ct. # A114865

MICHAEL S. MATLOCK,

Petitioner,

vs.

JEANNE WOODFORD, Sec. of CDC&R & ROSANNE CAMPBELL, Warden, (MCSP),

Respondents, et al.

NOTICE AND RESTATEMENT OF CLAIMS REGARDING DENIAL OF:

HABEAS/MANDAMUS RELIEF

PURSUANT TO:

Pen. Code §§ 1473, et seq.

TO THE HONORABLE JUSTICES OF THE SUPREME COURT IN AND FOR THE STATE OF CALIFORNIA

## INTRODUCTION

(1). **PLEASE TAKE NOTICE THAT**, on Sept. 21, 2006, at 1445 hrs. Michael Matlock, hereinafter Petitioner, received from the Court of Appeal in and for the State of California, First Appellate District, an "**ORDER**" from the Court, denying the relief requested in his application for "writ of Habeas Corpus and/or Mandamus Relief" (See: Exhibit **9** Part 2, Order denying

Petitioner's Application for Writ of Habeas Corpus without a written opinion. see e.g., Cal. Const. Art. VI § 14).

STATEMENT CONCERNING CLAIMS:

(2). **PLEASE TAKE NOTICE THAT** in Petitioner's application, he alleged three (3) grounds showing how his sentence is being unconstitutionally administered in violation of both State and Federal Constitutions (See: Original writ filed in this Court after having been first denied in the Superior Court and Court of Appeal; see **s/n #1**:).

STATEMENT OF FACTS:

(3). **PLEASE TAKE NOTICE THAT**, Petitioner was convicted and sentenced for the offense of second degree murder committed after July 1, 1977, and sentenced to 15 years to life; according to the terms and conditions of the laws in effect based on the language used in the 1978 Prop. 7 Initiative (See e.g., Exhibits 1 - Prop. 7 and **4** - SB-42, showing the repeal

---

**s/n #1**: In these proceeding, as well as in the lower court applications, Petitioner presented three (3) grounds, with supporting statutory exhibits, showing how his sentence is being unlawfully administered (See: Ground 1 id at "P&A's" pp. 2 thru 7). Petitioner's evidence showed that his sentence is being arbitrarily administered by an outlaw agency who had its powers repealed for abuse. Furthermore, Petitioner's case showed that Respondents for the Department of Corrections (D.O.C. aka DOC&R), are refusing to administer his sentence according to the terms and conditions approved by the voters; based on the statutes adopted into the initiative as the implementing mechanism for fixing Petitioner's term (See: Ground 2 at "P&A's" at pp. 7 thru 8; see also: Exhibits 1, 2, 3, 4 & 9). In ground three, Petitioner claimed he is being denied his vested right to know the **"CERTAINTY"** of his term and to have his sentence fixed by his specific performance and to be released by the right "ministerial agency", according to his already earned good-time and participation credits (See: Cal. Const. Art. 1 § 7(a)&(b); see also: "P&A's" at pp. 8 thru 12). In short, Petitioner contends his case proves his sentence is being arbitrarily determined by political appointees for the Board of Prison Terms, who, are acting under a repealed laws sentencing scheme, after they had their powers repealed for abuse (See e.g., **AB-1440** (1975); **SB-42** (1976); and **AB-476** (1977)). That those within this agency - after having been duly noticed - continue to act outside the law to deny Petitioner his vested rights. Petitioner contends his case shows that these officials, supra, have created a situation where he is denied substantive due process and equal protection of the law under both the repealed "Indeterminate Sentencing Law" (I.S.L.), as well as the "Determinate Sentencing Law" (D.S.L.), in violation of the State and Federal Constitutions (See: Perry v. Sindermann, 408 U.S. 593, **597** [92 S.Ct. 2694, 33 L.Ed.2d 570] (1972)).

of the I.S.L.; see Pen. Code § 1170(a)(1), Stats 1977 C 165 § 15, where the Legislature declared that **all** persons, whether imprisoned under the repealed I.S.L., or the "Determinate Sentencing Law" (D.S.L.) are entitled to know the "**CERTAINTY**" of the penalty for their offense at the time of sentencing; see Exhibit 2 - AB-476).

(4). **PLEASE TAKE NOTICE THAT** throughout the proceedings, Petitioner has claimed he is entitled to the terms and conditions specified in the title of the 1978 Prop. 7 Initiative; based on the statutes adopted by the voters for fixing his penalty according to the laws in effect at the time Prop. 7 was ratified by the voters (See: Exhibit 1; Cal. Const. Art. II § 10(c) and Art. IV §§ 9 & 16).

(5). **PLEASE TAKE NOTICE THAT** in the attached "P&A's", Petitioner requested a declaration of his rights and privileges under the law, based on the evidence presented. Petitioner requested the court to declare the Department of Corrections (CDC), failed to administer his sentence according to law, and that the Board of Prison Terms (B.P.T.) has abused their discretion by acting without authority of law to vest themselves the power - after it was repealed for abuse - to determine Petitioner's penalty in violation of both State and Federal Constitutions. That by acting outside the law, appointed officials for the parole agency have denied Petitioner his right to know the "**CERTAINTY**" of his penalty - as determined by the lawful authority according to the correct application of his already earned credits that should be taken off his sentence - according to the statutes adopted by the

voters of Prop. 7 (See: Habeas Corpus and Exhibits 2 & 4).

(6). **PLEASE TAKE NOTICE THAT** the evidence offered by Petitioner shows the Legislature created its laws with the intention that the B.P.T.'s so-called "suitability hearing process" was **NOT** applicable to those who have "**NOT**" had their penalties fixed by a jury "**FOR LIFE**" (See: Pen. Code § 190, Stats 1977 C 316; People v. Meredith, 29 Cal.3d 682, **696** [175 C.R. 612] (1981); People v. Walker, 18 Cal.3d 232, **243** [133 C.R. 520] (1976); People v. Morse, 60 C.2d 632, **636-637, 642-644, 648-652** [36 C.R. 201] (1964); Exhibits **2** & **4**).

(7). **PLEASE TAKE NOTICE THAT**, Petitioner's case shows that the only statutes authorizing the B.P.T. to hold "suitability hearings" were created by a Legislature with the intention that the parole agency's discretion be confined to "straight life" sentences (See e.g., Pen. Code § 1170(a)(1), Stats 1977 C 165 § 15; Exhibits **2** & **4**, supra; see "P&A's" id at pp. 4 thru 6). Furthermore, in the previous actions, as in this case, Petitioner claims an entitlement to his earned Pen. Code § 2931 credits based on the specific language of the statutes the way they were adopted by the voters; whereby the voters provided a vested liberty interest to be paroled as a "ministerial duty" to be performed by the Department of Corrections, "**subject to good-time credits**" (See: Board of Pardons v. Allen, 482 U.S. 369, **374-380** [107 S.Ct. 2415] (1987); Toussaint v. McCarthy, 801 F.2d 1080, **1094-1097** (9th Cir. 1986); St. Joseph Stockyard Co. v. United States, 298 U.S. 38, **51-52** [56 S.Ct. 720, 80 L.Ed. 1033] (1936)).

(8). **PLEASE TAKE NOTICE THAT**, Petitioner's case showed

that it was by Legislative mandate - pursuant to "AB-476" supra, - that Petitioner's parole should be fixed based on his specific performance earning him the right to know the "**CERTAINTY**" of his penalty; according to the equal protection of the law provisions of the State and Federal Constitutions. This also gave Petitioner the right to have his sentence fixed by the Legislature, the same as all other within SB-42's "Seven Categories of Criminal Offenses" for which the D.S.L. was created (See: Stats 1977 C 165 §§ 15, 38, & 42; see also: "P&A's" id at s/n #4; Note: the language used in the title of Prop. 7 stating: "Prohibits parole of convicted murderers before service of 25 or 15 year terms, **subject to good-time credits**". This is not in conflict with the purpose of the D.S.L., but would make the adoption of the repealed I.S.L., "void on its face" see Gov. Code § 9609 and Cal. Const. Art. IV §§ 9 & 16, supra; see **s/n #2**:). Moreover, had the Legislature or the voters of Prop. 7 intended Petitioner's offense and penalty **NOT** to be part of its "Seven Categories of Criminal Offenses", for which they enacted "**SB-42**", Petitioner's crime would have been expressly excluded (See:

---

**s/n #2**: "Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, Borden's Farm Products Co. v. Baldwin, 292 U.S. 194, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing the court that those facts have ceased to exist (See: e.g., Attached "P&A's" and Exhibit **7 - SANTA CLARA LAW REVIEW VOL. 17**; see also: Chastleton Corporation v. Sinclair, 264 U.S. 543). Similarly we recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of acts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without reason for the prohibition (See: Railroad Retirement Board v. Alton, R. Co., 295 U.S. 407, 413"; cf United States v. Carolene Products Co., 304 U.S. 144, 152-153 [58 S.Ct. 778, 82 L.Ed. 1234] (1938); People v. Amdur, 123 C.A.2d supp. 951, 968 [267 P.2d 455] (1954); [unconstitutional application of valid statute]).

Exhibits 2 - AB-476 & 4 - SB-42). Had either court considered Petitioner's claims on the merits, they would have taken judicial notice that the Adult Authority had its "term fixing" powers - which this Court found necessary for administering I.S.L. sentences - repealed for abuse; along with the agency's discretion to administer good-time credits (See: Pen. Code §§ **671**; **2920**; **2940**; **3020-3025**; & **5077**, Stats 1976 C 1139; Stats 1977 C 165; see also: "P&A's" at s/n #4; In re Jantz, 162 Cal.App.3d 412, **414-418** [208 C.R. 619] (1984); In re Sandel, 64 C.2d 412, **415-419** [50 C.R. 462] (1966); Ex parte Wadleigh, 82 Cal. 518, **519-523** [23 P. 190] (1890)).

(9). **PLEASE TAKE NOTICE THAT**, due to the repeal of the I.S.L., and what the voters approved of in Prop. 7, it shows officials acting for the B.P.T. (aka Board of Parole Hearings [B.P.H.]) are exceeding their conferred authority, and operating under a "repealed" body of laws that cannot be constitutionally applied against Petitioner, who according to law, did not receive a sentence "**FOR LIFE**". Any other construction is unconstitutional and denies Petitioner his earned liberty, "**subject to good-time credits**" (See: Board of Pardons v. Allen, supra, id at pp. **374-380**; Toussaint v. McCarthy, supra, id at pp. **1094-97**).

(10). **PLEASE TAKE NOTICE THAT** Petitioner exhausted his administrative remedies before filing his claims in the Superior Court. From the beginning, Petitioner claims his entitlement to the terms and conditions specified in Prop. 7's title, as well as the laws adopted by the voters, as the only means for fixing Petitioner's term, which is based on

Petitioner's performance according to Pen. Code § 2931 (See: Exhibit 1 & 3; Cal. Const. Art. I § 7(a)&(b), Art. II § 10(c), and Art. IV §§ 9 & 16, supra).

(11). **PLEASE TAKE NOTICE THAT** one of the issues raised in this case, was the usurpation of power by those who chose to retain repealed powers for personal gain in order to continue to decide the actual term of confinement; made possible only because of the fraud upon this court by the Attorney General in the case of In re Jeance D. 28 Cal.3d 210, 217 [168 C.R. 455] (1980); where the construction and implementation of a repealed law's sentencing scheme prevails to this day (See: Exhibits 2, 4, & 9).

(12). **PLEASE TAKE NOTICE THAT** in this case, Petitioner asked the court to issue a proposed "SHOW OF CAUSE ORDER" requiring Respondents answer where in Prop. 7 the voters approved of: (1) reenacting the I.S.L.; (2) vesting "term fixing" authority back in the Adult Authority; (3) changing the Legislatively declared policy from penalties fixed to a "**CERTAINTY**", and imposed by a court of law, back to uncertain penalties - under the declared policy of "punishment for the crime itself" - to be decided by political appointees within an agency who just had its powers repealed for abuse (See: Exhibit 2, 3, 4, & 9).

(13). **PLEASE TAKE NOTICE THAT** Petitioner's case shows that in his application he requested the court to declare the "Adult Authority", aka the "Community Release Board", aka the "Board of Prison Terms" (B.P.T.), and now the "Board of Parole Hearings" (B.P.H.), by repeal of law, lost jurisdiction to

parole prisoners whose release date was fixed once he had earned his Pen. Code § 2931 credits (See: Stats 1977 C 165 § 38; Cal. Const. Art. II § 8(d); Art. IV §§ 9 & 16; Gov. Code § 9609, supra, see also: Witkin Const. Law 9ed Vol. 7 § 497 [re: repealed laws] (1988); United States v. Chambers, 291 U.S. 217, 221-226 [54 S.Ct. 434, 78 L.Ed. 763] (1934); see s/n #3:).

(14). **PLEASE TAKE NOTICE THAT** as shown by the laws of this case, the voters were asked to **change** the penalty for first degree murder from a "**FOR LIFE**" penalty to a "25 to life sentence". Whereby Petitioner's release on parole was "subject to good-time credits" and nothing more. The only provisions adopted by the voters, as their implementing mechanism for fixing Petitioner's release date, are contained

---

s/n #3: State courts are well aware of the standards for determining statutory construction. By not recognizing the Legislature did not perform an idle act in repealing the I.S.L., as shown by the "Seven Category Classification System" set up in the 1976 Senate Bill 42 (Exhibit 4 - SB-42), and its retroactive effect to **all** offenses where incarceration is the penalty - established by the passage of the 1978 Assembly Bill 476 (Exhibit 2) - has denied Petitioner substantive due process and equal protection of the law. Under the law of the case, it is fundamental that when the voters adopted the provisions of Pen. Code §§ 2930 thru 2932, in order to effect the "CERTAINTY" of the term, it excluded any other conflicting statutes, such as Pen. Code § 3041 (See: e.g., United States v. Wells Fargo Bank, 485 U.S. 351, 357 [108 S.Ct. 1179, 99 L.Ed.2d 368] (1988); Tholts v. Byxbee, 34 Cal.App. 266, 167 P. 166, 169 (1917)). However, neither lower court decision addresses the issues raised in this case, such as: (a) whether or not Senator Briggs could do indirectly what he was prevented from doing directly when he adopted the sentencing structure from a repealed law and submitted it to the voter under the guise of an existing law without the **ways, means, standard, safeguards, purpose, or policy,** necessary for administering this kind of uncertain penalty scheme; (b) by what law the Adult Authority after having its fact finding and adjudicative powers repealed for abuse can continue to determine the actual term of confinement; (c) by what rule of law, after Legislative policy changed from "rehabilitation" and "mitigation" to "punishment for the crime itself" - to effect the "CERTAINTY" of the penalty to be inflicted - can executive branch officials be vested with legislative power to determine the actual penalty for the offense; (d) under what law can Petitioner be denied his vested rights to his earned parole stemming from the specific performance contractual agreement between the Department of Corrections and Petitioner; based on Pen. Code § 2931 as adopted by the voters for fixing the "MANDATORY" release on parole (See: Pen. Code §§ 2931, Stats 1977 C 165 § 38; and 3000, Stats 1977 C 165 § 42; In re Oluwa, 207 CA3d 439, 445-446 [255 C.R. 351] (1989); [constitutional requirements dealing with amendments to initiative statutes without voter approval in violation of Art. II § 10(c)]).

in the performance clause of Pen. Code § 2931 (emphasis added). As of July 1, 1977, there was nothing in the law that would allow for another interpretation without violating the provisions of Article II § 8(d) and Article IV §§ 9 & 16; see Planned Parenthood v. Affiliates of California v. Swoap, 173 Cal.App.3d 1187, **1196**, **1199-1202** [219 C.R. 664] (1985); Asso. for Retarded Citizens v. Depart. of Dev. Ser., 38 C.3d 384, **394** [211 C.R. 758] (1985); Scott A. v. Superior Court, 27 C.A.3d 292, **295** [103 C.R. 683] (1972)).

(15). **PLEASE TAKE NOTICE THAT** Petitioner contends he is being denied a fair and impartial State court proceedings based on his First Amendment guarantees to petition and to have his claims adjudicated on their merits. Petitioner alleges that based on the declaration of the law contained in Pen. Code § 1170(a)(1), Stats 1977 C 165 § 15, and the Legislative bills shown in the attached exhibits, is the proof that he has been, and continues to be, denied his rights to substantive due process and equal protection of the law. Accordingly, this case shows that neither of the prior decisions addressed his claims on their merits in an original proceeding which arguably has issues which have never been adjudicated in the face of the attached Legislative documents that support Petitioner's claims (See: Williams v. Taylor, 529 U.S. 363, **376-380**, **412** [120 S.Ct. 1495, 146 L.Ed.2d 389] (2000); People v. Duvall, 9 C.4th 464, **480**, **483** [37 C.R.2d 259] (1995); In re Lewallen, 23 C.3d 274, **278** [152 C.R. 528] (1979); see also: Exhibit 9, Part 1 - "Notice of Claims'" & Part 2 - Appellate Court Denial of Habeas Corpus Relief; see

also: Exhibit 6 - Superior Court Denial).

(16). **PLEASE TAKE NOTICE THAT** Petitioner's case shows that both courts committed "**plain error**" by failing to first take note of the changes in the law and for not issuing the relief requested in the application (See: Exhibit 8 - Proposed "Show of Cause Order"; see United States v. Carolene Products Co., supra, 304 U.S. id at pp. 152-153).

(17). **PLEASE TAKE NOTICE THAT** by failing to issue the requested "Show of Cause Order" to Respondents to answer the claims raised by Petitioner, has made the legal process in this matter fundamentally unfair. For example, this Court has held that Petitioner's claims must be treated as true unless factually disputed in a court of law (citations omitted). By refusing to declare the law in this case, and/or for failing to order Respondents to answer by contradicting Petitioner's claims, and/or by applying the wrong interpretation of the law to Petitioner's claims, evades the evidence that would prove indisputably that a "conspiracy and fraud" was committed to revest discretion where none was conferred to agency officials who had their powers repealed for abuse. This has denied Petitioner the process due him as well as equal protection of the law. Thus, Petitioner contends he has been denied his rights to present evidence in support of his claims and to have that evidence adjudicated in a court of law (See: Exhibits 1 thru 9).

(18). **PLEASE TAKE NOTICE THAT**, instead of adjudicating Petitioner's claims on the merits - based on the laws in effect at the time Prop. 7 was ratified by the voters - the

Superior Court denied the writ without applying substantive law to the case. For example, to justify denying the writ, the court cited Pen. Code § 1170(a)(3 and In re Monigold, 139 Cal.App.3d supra, id at p. 190. However, as shown in Exhibit 9, Part 2 - "NOTICE OF CLAIMS AND SUPERIOR COURT DENIAL OF HABEAS/MANDAMUS RELIEF", id at p. 4 lns. 8-17 and s/n 1 and p. 5 lns 1-14, neither 1170(a)(3), nor In re Monigold, supra, are responsive to the claims raised in the "Original Complaint" (See: e.g., Exhibit 9, supra, and Cal. Const. Art. IV § 14).

(19). **PLEASE TAKE NOTICE THAT**, the lower court decisions denies Petitioner his fundamental rights to petition and to know the "**CERTAINTY**" of his penalty. Without a ruling on the merits, he is denied equal protection of the law to have his penalty fixed according to the Legislature's declaration contained in Pen. Code § 1170(a)(1), supra, and to have his penalty imposed to a finality by a court of law (See: "P&A's" at s/n #4, citing: People v. Caddick, 160 Cal.App.3d 46, **51-53** [206 C.R. 454] (1984) [Re: application of credits]; People v. Staffell, 25 Cal.3d 223, **236** [157 C.R. 897] (1979) [re: equal protection]; Perry Farms Inc. v. Argi. Labor Rel. Bd., 80 Cal.App.3d 448, **460-461** [150 C.R. 495] (1978) [re: unlawful delegation of Legislative powers]; In re Porterfield, 168 P.2d 706, **718-719** (1946] [same]; see also: Way v. Superior Court, 74 Cal.App.3d 165, **168-172**, and **178-182** [141 C.R. 383] [re: finality of judgment cannot be conditioned upon another branch]; see also: Strumsky v. San Diego Employees Retirement Assoc., 11 Cal.3d 28, **32**, **34-35** [112 C.R. 805] (1974) [re: unlawful delegation of judicial power]; Kugler v. Yocum, 69

C.2d 371, 375-376 [71 C.R. 687] (1968) [re: adequate safeguards to prevent abuse]; Morris v. Williams, 67 C.2d 733, 748-748 [63 C.R. 689] (1967) [re: usurpation of Legislative power]; see also: United States v. Chambers, supra, 291 U.S. id at pp. 223-226 [re: after repeal of statute and policy, all administrative action ceases]; and see Exhibit 1, 2 & 9).

CONCLUSIONS BASED ON FACT AND LAW:

(20). **PLEASE TAKE NOTICE THAT** while the lower courts decision might have been correct had Petitioner received a "**FOR LIFE**" sentence as determined by a jury, this was not the situation in this case (See: U.S. Const. Sixth Amend.). For example, the evidence offered by Petitioner is by statutes which were fixed based on the laws as they existed at the time the initiative was passed, and in the case of Prop. 7, according to what the voters were told by the language used in the initiative's title, therefore he should be released on parole "**subject to good-time credits**", and nothing more. This shows that the lower courts abused their discretion, or committed "plain error", by failing to issue the writ as either a petition for habeas corpus - ordering Petitioner's release because his sentence cannot be lawfully administered - or mandamus, by ordering the Department of Corrections to inform Petitioner of his "MANDATORY" earned release date (See: Terhune v. Superior Court, 65 Cal.App.4th 864, 873-874 [76 C.R.2d 841] (1998)).

(21). **PLEASE TAKE NOTICE THAT** as shown, in this "Notice of Claims", instead of assuming Petitioner's sentence is a "**FOR LIFE**" penalty with the possibility of parole, the court should

have issued an order to respond to the writ of mandamus, if it determined sua sponte that Petitioner was not entitled to his release on habeas corpus (See: People v. West, 70 Cal.App.4th 248, 255-260 [82 C.R.2d 549] (1999) [holding: "In any event, a judgment challenged for insufficiency of the evidence cannot stand if substantial evidence does not support it." cf Estate v. Teed, 112 Cal.App.2d 638, 644 [247 P.2d 54] (1954)). There has been no evidence presented in these proceedings or at trial to show that Petitioner received a "determinate" sentence "**FOR LIFE**" as determined by a jury (See: Williams v. Taylor, supra, 529 U.S. id at p. 377; [re: state court's failure to address federal claims on the merits]; **s/n #4**:). Either way, Petitioner was entitled to a declaration of his rights and privileges under the law, and based on the evidence submitted in this case, Respondents should have been required to answer the claims for failing to perform their "ministerial

s/n #4: see e.g., People v. Powell 45 Cal.3d 894, 897, 903-904 906-908 [248 C.R. 431, 432, 436-437, 439] (1988); [convicted and sentence to death, commuted to a "FOR LIFE" penalty, with the "possibility" of parole]; In re Stanworth, 33 Cal.3d 176, 178, 182-183 [187 C.R. 783] (1982) [same]; People v. Garcia, 115 C.A.3d 85, 112 [171 C.R. 169] (1981) [held: "FOR LIFE" prisoners not entitled to earn credits off a "straight life" term.]; In re Jeanice D., supra, 28 C.3d id at pp. 215, 217, 223 [holding: I.S.L. penalty is not a sentence "FOR LIFE"]; People v. Staffell, supra, 25 Cal.3d id at pp. 228 & 235 [held: that all those whose crime is committed after July 1, 1977, are entitled to know the "CERTAINTY" of their term]; Way v. Superior Court, supra, 74 Cal.App.3d id at pp. 171-172 [held: prisoners must be released on parole pursuant to Pen. Code §§ 2930, 2931; and see pp. 181-182 re: final judgment rule]; Morris v. Williams, 67 Cal.2d 733, 748-749 [63 C.R. 689] (1967) [agency cannot exceed statutory power as in this case, where discretion is confined to person's sentenced "FOR LIFE]; People v. West, supra, 70 Cal.App.4th id at 255 [re: repeal of I.S.L.; Note: I.S.L. sentence set at life under Pen. Code § 671 repealed by Stats 1976 C 1139]; Rible v. Hughes, 24 Cal.App.2d 437, 450-451 [150 P.2d 455] (1944) [held: statewide agency cannot exercise legislative or judicial powers absent constitutional amendment]; see 13 Cal.Jur.3d §§ 104 thru 107; Drummey v. State Bd. of Funeral Directors, 13 C.2d 75, 84-85 [87 P.2d 848] (1939) [same under state and federal constitutions]; In re McManus, 123 Cal.app.2d 395, 396 n. 1 [266 P.2d 929] (1955); [court defining the difference between a "FOR LIFE" penalty versus I.S.L. sentence]; People v. Hale, 64 Cal.App. 523, 532 (1923) [held: I.S.L. prisoner entitlement to parole based on earned credits]; In re Lee, 117 C. 690, 692 [171 P.2d 958] (1918); [same]; see also: attached complaint, id at p. 9 s/n #4).

duties" according to Pen. Code § 2931, supra (See: Stats 1977 C 165 § 38 - Pen. Code § 2931 and Stats 1977 C 165 § 42 - Pen. Code § 3000).

(22). **PLEASE TAKE NOTICE THAT** Petitioner is aware that the B.P.T. is without authority in his case. That this agency only retained jurisdiction over those who have been sentenced "**FOR LIFE**". (See: e.g., Pen. Code §§ 1170(a)(2) & 5076.1; see also: Olive Proration Prog. Comm. v. Argi. Prorate Comm., 17 Cal.2d 204, **208-210** [109 P.2d 918] (1941) [held: all administrative action must be grounded in statutory authority]; People v. Richard, 86 Cal.App. 86, **88-91**, **92-93** [260 P. 582] (1927) [holding: once policy under which agency is acting ceases to exist or has changed, there is no further function for them to perform] (Note: I.S.L. policy of "rehabilitation" repealed except for good-time credits and replaced by "punishment for the crime itself" Pen. Code § 1170(a)(1)); In re McLain, 190 Cal. 376, **379-380** [212 P. 620] (1923) [holding: "It is settled, of course, beyond controversy, that the power conferred upon the legislature to make laws cannot be delegated by it to any subordinate body."]; Burns v. Superior Court, 140 CA. 1, **7-10**, **12-13** [73 P. 597] (1903) [re: final judgment of the court cannot be conditioned or subordinate to ministerial function of executive branch - i.e. Petitioner's penalty must be either 15 years less his earned credits, and if he does not comply with the credit earning provisions of Pen. Code § 2931, he could stay imprisoned up to but not including the penalty "**FOR LIFE**"]).

(23). **PLEASE TAKE NOTICE THAT** had the lower courts cited some authority for its decisions, such as either In re Dannenberg, 34 Cal.4th 1061 (2005), In re Rosenkrantz, 80 Cal.App.4th, 409 (2000) or a citation or statute disputing Petitioner's argument against the case of In re Scott, 133 Cal.App.4th 573 (2005) cert. denied Nov. 30, 2005 cited by Petitioner as a basis for his claims in these proceedings, he could have produced conflicting evidence to support his claims (See: "P&A's" at p. 2 citing Scott, supra). Had either court issued a citation as a basis for the denial, Petitioner would have shown how these cases were decided in conflict of law - as the wrong choice of law questions submitted by the Petitioners - allowing the B.P.T. to continue to act in excess of their conferred authority, while officials for the D.O.C., have refused to enforce the law according to its terms (See: Williams v. Taylor, supra, 529 U.S. id at 405-406; Exhibits 1 & 3, supra).

(24). **PLEASE TAKE NOTICE THAT** because the court(s) ruling sua sponte treated Petitioner as though he had been convicted and sentenced "**FOR LIFE**", as determined by a jury: or to an uncertain penalty under the **repealed** "Indeterminate Sentencing Law", Petitioner was denied substantive due process under the repealed I.S.L., and equal protection of the law under the D.S.L. (See: Witkin & Epstein Crim. Law 2ed Vol. 1 § 12 and Vol. 3 §§ 1446 to 1447 (1989); Witkin Const. Law 9ed Vol. 7, supra id at § 497; Exhibit 9). Petitioner claims the court had the duty to recognize that "indeterminate sentencing" in California was repealed, and a sentence for a minimum to

a maximum term has never been held to be the same as a "**FOR LIFE**" sentence, which has no minimum term (See: People v. West supra, 70 Cal.App.4th id at 255; In re Stanworth, supra, 33 Cal.3d id at pp. 178, 183; In re Jeanice D., supra, 28 Cal.3d id at p. 215 & 223; In re McManus, supra, 123 Cal.App.2d id at p. 396 n. 1; In re Hale, supra, 64 Cal.App. id at p. 532; In re Lee, supra, 177 C. id at pp. 695-696; see People v. Walker, supra, 18 Cal.3d id at 243-244; see also; Exhibit 7, supra, the "SANTA CLARA LAW REVIEW VOL. 17" - SB-42, **THE END OF THE INDETERMINATE SENTENCE**).

DISCUSSION REGARDING THE REPEAL OF THE I.S.L.:

(25). **PLEASE TAKE NOTICE THAT**, the lower court decisions at Exhibits 6 and 9, supra, shows how the lack of a ruling on the merits of this case, turned habeas corpus relief into a meaningless sham that denied Petitioner the right of petition. The court's reasons for denying relief is based on citations which are not germane to this case and failure to address the merits, is nothing more than a sub silen'tio proclamation that Petitioner has no right to know the final determination of his penalty. That there is no entitlement to earned liberty based on Pen. Code § 2931; unless sometime in the future, the contractual right to be released by law, may be acknowledged by Respondent(s). Whereas, this case was filed to deal with the illegal use of a repealed body of laws, statutory enlargement of discretion, and constructive fraud, all of which have been used to create the conditions perpetuated by Respondent(s) to substantiate their claim of power used to decide Petitioner's liberty interests, in spite of the offer

not mention In re Scott, supra, In re Dannenberg, supra, or In re Rosenkrantz, supra, in their denials, had the court issued the **proposed** "Show of Cause Order", Respondents would of had to cite these cases as their authority to support subjecting Petitioner to their so-called "suitability hearing process" under Pen. Code § 3041 (See: Exhibit 7, supra). The statute used as the notice to hold their so-called suitability hearings are for those whose penalty was determined by a jury and imposed by a court of law "**FOR LIFE**", and the statute used by the B.P.T., as its authority to deny parole, is claimed under Pen. Code § 3041 (See: Pen. Code § 3041, Stats 1977 C 165 § 45 & 3042, Stats 1977 C 165 § 48).

(28). **PLEASE TAKE NOTICE THAT** the problem with applying these provisions of law contained in sections 3041 and 3042 to determine Petitioner's liberty interest is: (1) Pen. Code §§ 3041 and 3042, were **NOT** created to be applied against offenders whose crime was committed after July 1, 1977 and not sentenced "**FOR LIFE**"; (II) any notice given under § 3042 can only be given to a person sentenced "**FOR LIFE**", and any "suitability hearing" made under § 3041, would have to be made in a court of law where the prisoner is entitled to a jury trial on the issues of dangerousness; determinations made under § 3041 are strictly judicial and legislative and cannot be delegated; (III) Pen. Code § 3041 was expressly excluded by the voters in their adoption of Pen. Code § 2931; these statutes cannot be employed together without excluding the provision contained in the other; (IV) had Pen. Code §§ 3041 and 3042, been enacted with Prop. 7 in mind, the Legislature

of irrefutable evidence that a Prop. 7 penalty is determined by law and fixed according to Pen. Code §§ 2931 and 3000(f) (See: Stats 1977 C 165 §§ 38 & 42; see also: In re Gray, 85 Cal.App.3d 255, **259** [149 C.R. 416] (1978) c/f People v. West, supra, 70 Cal.App.4th id at **255**; People v. Caruso, 161 Cal.App.3d 13, **17-18** [207 C.R. 221, **225**] (1984); see also: "P&A's id at s/n #4, supra).

(26). **PLEASE TAKE NOTICE THAT**, by applying the court's arbitrary decision in this case against Petitioner, would be like comparing his claims to those brought by the litigants In re Dannenberg, supra, 34 Cal.4th pp. **1097-1098**; and/or In re Rosenkrantz, 80 Cal.App.4th 409, **427-428** [95 C.R.2d 279] (2000). Petitioner contends that either way, the B.P.T., would have to be vested with "term fixing" authority because they cannot fix parole off an uncertain penalty; or, in the alternative, every person sentenced under the provisions of Prop. 7 would have to be sentenced "**FOR LIFE**" or death (See: Exhibit 1 - Prop. 7; Williams v. Taylor, supra, 529 U.S. id at 377, **405-406**). This uncertain penalty fixing system is the basis for Petitioner's grievance. Under current law, no state-wide administrative agency can be vested with the power to fix the term for a penalty proscribed by the Legislature under the Determinate Sentencing Law; and no person can be sentenced under the Indeterminate Sentencing Law after the effective date of its repeal on July 1, 1977 (See: Cal. Const. Art. I § 7(a)&(b), Art. I § 26, & Art. III § 3, supra; see also: Exhibits **1**, **2**, **3**, **4**, & **7**, supra).

(27). **PLEASE TAKE NOTICE THAT**, even though the courts did

would not have repealed the I.S.L. and its policy; along with the Adult Authority's "term fixing" authority; (V) it would be unconstitutional to allow Pen. Code § 3041 to be used to deny Prop. 7 prisoners their vested liberty interest in being released "**subject to good-time credits**" (See: e.g., Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, **871**, 74 L.Ed.2d 675 (1983); c/f Toussaint v. McCarthy, 597 F.Supp. 1388, **1416-1417** (9th Cir. 1984); People v. Olivas, 27 Cal.3d 236, **243-244**, **246-247** [131 C.R. 55, **59**, **61**] (1976)).

(29). **PLEASE TAKE NOTICE THAT** for the purpose of these proceedings, and to prove the claim that the voters adopted Pen. Code § 2931 as their implementing mechanism for fixing Petitioner's sentence to a "**CERTAINTY**", the Court only need to look at the expressed language of Prop. 7's title stating, inter alia, "Prohibits parole of convicted murderers before service of 25 or 15 year **terms, subject to good-time credits**" (emphasis added). Additionally, for proof that officials for the B.P.T., knew they had their "term fixing" powers repealed, the Court only need to examine the case of In re Rosenkrantz, supra, id at p. **427**. Here, officials for the B.P.T., tried to deceive the court by attempting to have the Second Appellate Court rule the "B.P.T." possessed constitutional powers to "fix terms" through Pen. Code §§ 3040, 3057, & 3077, citing In re Schoengarth, 66 Cal.2d 295, 300, **304** [57 C.R. 600] (1967); [Note: From 1932 thru 1972, there existed Art. X §§ 2, 5, & 7 allowing the Legislature to vest Art. III powers in Respondents. These sections were **repealed** effective 1972], see Green v. Gordon, 39 Cal.2d 230, **231-232** [246 P.2d 38] (1952);

In re Collie, 38 Cal.2d 396, **398** [240 P.2d 275] (1952); In re Phyle, 30 Cal.3d 838, **849**, **857**, **861** [186 P.2d 134] (1947)).

(30). **PLEASE TAKE NOTICE THAT** by attempting to usurp constitutional powers from "municipal parole boards" under Pen. Code § 3077, which are not state-wide administrative agencies, is further proof of the conspiracy to deceive the courts and deprive Petitioner of his fundamental rights (See: Pen. Code §§ 3056, Stats 1977 C 2256 § 64 and 3077, Stats 1978 C 918 § 5; Witkin & Epstein, Crim. Law 2ed Vol. 3 §§ 1446 to 1447 & 1761 to 1762; [Note: With the I.S.L.'s repeal, the Adult Authority had its discretion repealed for abuse, see e.g., **AB-1440** (1975); **SB-42** (1976); **AB-476**, (1977); Exhibits 2 3, 4, & 9, supra; see **s/n #5**, infra).

(31). **PLEASE TAKE NOTICE THAT**, Petitioner further alleges that any citing of pre-1977 case law to uphold decisions made

---

**s/n #5**: "In 1867, Congress enacted a statute providing that federal courts 'shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty of law of the United States ...' Act of Feb. 5, 1867, ch. 28 § 1, 14 Stat. 385. Over the years, the federal habeas corpus statute has been repeatedly amended, but the scope of that jurisdictional grant remains the same. It is, of course, well settled that the fact the constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas. See, e.g., Stone v. Powell, 428 U.S. 465, 49 L.Ed.2d 1067, 96 S.Ct. 3037 (1976); Brecht v. Abrahamson, 507 U.S. 619, 123 L.Ed.2d 353, 113 S.Ct. 1710 (1993). On the other hand, errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ. See, e.g., Teague v. Lane, 489 U.S. 288, **311-314** [103 L.Ed.2d 334, 109 S.Ct. 1060] (1989) (quoting Mackey v. United States, 401 U.S. 667, **692-694** [28 L.Ed.2d 404, 91 S.Ct. 1160] (1971) (opinion of Harlan, J., concurring in judgments in part and dissenting in part), and quoting Rose v. Lundy, 455 U.S. 509, **544** [71 L.Ed.2d 379, 102 S.Ct. 1198] (1982) (STEVENS, J., dissenting)." Williams v. Taylor, supra, id at **375**. In this case, Petitioner requested the court to construe this matter under both State and Federal Constitutions based on the laws in effect at the time of Prop. 7's enactment (See: Complaint id at "P&A's" p. 4, lns. 10 thru 12; Exhibit **10** id at p. 2 lns. 15 thru 20). In short, under the rule of comity Petitioner had the right to expect the state court to "exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact)". See, e.g., Miller v. Fenton, 474 U.S. 104, **112** [106 S.Ct. 445, 88 L.Ed.2d 405] (1985); see Williams v. Taylor, supra, id at p. **400**, see Wright v. West, 505 U.S. 277, **287**, **291-292**, & **294** [112 S.Ct. 2482, 120 L.Ed.2d 225] (1992).

under the repealed I.S.L., denies Petitioner substantive due process and equal protection of the law for the reasons that the statutes used to support I.S.L. case law had ceased to exist upon the date of repeal (See: Witkin, supra, Const. Law 9ed Vol. 7 id at § 497; Exhibits 2, 4, & 7). Furthermore, as shown herein, and in Petitioner's "P&A's", supra, the decision in this case was based on an "unreasonable determination of the facts, in light of the evidence presented" (See: Williams v. Taylor, supra, 529 U.S. id at pp. 404-406).

(32). **PLEASE TAKE NOTICE THAT**, as shown, Petitioner has been denied his First Amendment rights, infra, Petitioner claims he has been denied his rights to a declaration of his rights and privileges under the law just because the court either didn't like the subject matter, or, because the court cannot rationalize or make constitutional the way Petitioner's sentence is being implemented without violating expressed provisions of the State and Federal Constitutions. It would be politically incorrect to recognize that Petitioner has been having his sentence imposed under a repealed laws sentencing scheme that cannot be constitutionally administered by an agency who had its powers repealed for abuse. The lower courts have evaded this case by failing to address the matters to be decided and because litigants in prior court proceedings - such as Rosenkrants, supra, Dannenberg, supra, and Scott, supra - chose to raise the **wrong** questions dealing with the facts and laws of their own cases; none of these facts are justification or reasons enough for the court to apply post adjudicated claims, ex post facto legislation and prior court

power to decide whether Petitioner is entitled to his liberty. That, in accordance with the law, he has performed according to Pen. Code § 2931 to earn his freedom according to Prop. 7's expressed language used in its title. That based on the terms and conditions of Pen. Code § 2931, in effect at the time of the initiative enactment, he is entitled to know the "**CERTAINTY**" of this penalty and the time of his release on parole (See: Exhibit 2 - AB-476, supra, Toussaint v. McCarthy, supra, 801 F.2d id at pp. 1094-1097; People v. Hale, supra, 64 Cal.App. id at p. 532; see "P&A's" at s/n #4; see also: Perry Farms, Inc. v. Agri. Labor Relations Bd., supra, 80 Cal.App.3d id at pp. 460-461; Witkin & Epstein, Crim. Law 2ed Vol. 1 § 12 supra).

(34). **PLEASE TAKE NOTICE THAT** Petitioner asks the Court to take "judicial notice" that according to law, he has a vested liberty interest pursuant to Pen. Code §§ 2931, and 3000, supra, as they were passed into law and in effect at the time of Prop. 7's passage. That by law, Pen. Code §§ 3000.1, 3041, 3042, 3046, 5076 et seq., or any other statute that would have an adverse impact upon the amount of time to be served on his sentence according to what the voters were told in the 1978 Prop. 7 Initiative is "void on its face" as being in violation of Article 1 §§ 9 & 26, Article II § 10(c), Article III § 3, and Article IV §§ 9 & 16 of the State Constitution, as well as Article 1 § 10(1) and the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

CONCLUSIONS:

(35). **PLEASE TAKE NOTICE THAT**, when the Department of

Corrections failed to act in a timely manner by not informing Petitioner of his "good-time and participation" release date within 90 days after being delivered into custody, and by not implementing Pen. Code §§ 2931 and 3000(f), according to law, has denied him "substantive due process" and "equal protection of the law; designed to protect him from this kind of arbitrary government action, that has resulted in his sentence not being administered according to law (See: Exhibit 1, 2, 3, 4, & 9, supra; see "P&A's" id at p. 7, lns. 16 to 24).

(36). **PLEASE TAKE NOTICE THAT** according to all the facts presented in this case - based on provisions of the State and Federal Constitutions - Petitioner has been denied his right of petition, and to know by what laws his sentence is supposed to be determined, as declared in a fair and impartial judicial process. Accordingly, based on all the evidence submitted, his claims must be treated as true, and unless proven otherwise, his sentence is being unlawfully administered, in violation of the State and Federal Constitutions (See: "P&A's" id at p. 10 lns. 6 thru 22).

(37). **PLEASE TAKE NOTICE THAT**, as shown throughout this case, irrefutable evidence from the State Archives establishes that Petitioner's penalty is being unlawfully implemented under a repealed laws sentencing scheme, and according to the policy of "punishment for the crime itself", his actual term of imprisonment is being decided by the arbitrary decisions of politically appointed officials paid by a "State-wide Ministerial Agency". The facts show that these officials are acting without authority of law, after having their powers

repealed for abuse (See AB-1440, SB-42, & AB-476, supra, see also: SANTA CLARA LAW REVIEW VOL. 17, supra).

(38). **PLEASE TAKE NOTICE THAT** Petitioner has performed according to the provisions specified in Pen. Code 2931. By remaining disciplinary free and by participating in the work programs assigned him by the Department of Corrections, he is entitled to know the "**CERTAINTY**" of his penalty the same as all others for which Pen. Codes §§ 1170(a)(1), 2931, and 3000 were enacted and in effect at the time Prop. 7 was passed into law. As shown in the attached exhibits, and in compliance with the Departments own classification process, Petitioner has reduced his threat level classification point score to zero, the lowest possible level. By law, this should have entitled him to the rights and privileges earned by him according to law; the same as all other offenders for which the D.S.L. was created mandating the penalty to be served must be reduced according to the provisions specified by Pen. Code §§ 2931 and 3000, supra, (emphasis added).

(39). **PLEASE TAKE NOTICE THAT**, Petitioner declares that by evading his claims, the court has allowed its final imposition of Petitioner's penalty - based on Legislative declaration in Pen. Code § 1170(a)(1) - to be subjected to and conditioned on, the arbitrary determinations of ministerial agency officials, which, under the policy of "punishment for the crime itself", uncertain penalties for crime cannot coexist with the judicial and legislative powers of the State, without being in conflict with Article III § 3 of the State Constitution, and the equal protection clause of the United States Constitution. This has

made the administration of Petitioner's sentence against the law because he was convicted and sentenced after the repeal of the I.S.L. (See: Exhibits 1, Part 2, 5 & 9, supra).

(40). **PLEASE TAKE NOTICE THAT**, Petitioner's case shows that the penalty for his offense cannot be legally fixed after the court imposed sentence, because at the time of sentencing, "the penalty must be fixed to a certainty in all its terms and provisions, so that nothing is left to be decided by those chosen to implement the law". Therefore, based on his own specific performance, the penalty for his offense cannot be subject to, usurped, or given over to be decided by the arbitrary determinations of those chosen to implement the penalty. Under current California law, it would be unconstitutional for politically appointed non-judicial officials to be vested with the power to decide the "actual punishment any given crime shall bear". Furthermore, it would require a constitutional amendment granting the Legislature the power to vest in these officials "penalty fixing" discretion. Anything else, denies Petitioner "substantive due process", and "equal protection of the law".

(41). **PLEASE TAKE NOTICE THAT**, in this State, the Constitution grants its citizens a vested right to have their grievances addressed by a court of law. Therefore, if Petitioner cannot prove his claims, then, and only then, should the court deny his application (See: Cal. Const. Art. 1 §§§ 1, 3, 7(a)&(b), 24, & 26). This is also true for citizens of the United States (See: the First, Fifth, and Fourteenth Amend.'s to the U.S. Const.). In this case, Petitioner was

decisions against Petitioner, who had no opportunity to dispute or argue the claims he now brings before this esteemed Court. In any case, the court's denial of his application is "contrary to, and involves an unreasonable application of clearly established federal law, as determined by the United States Supreme Court" (See: Williams v. Taylor, supra, 529 U.S. id at pp. 381-385 [re: precedent existing at the time of defendants conviction, or, as in this case, on the date Prop. 7 was ratified into law. see Cal. Const. Art. II § 10(c); Board of Pardons v. Allen, supra, 482 U.S. id at pp. 372-376 [re: protected liberty interest in release according to statute, i.e., Pen. Code § 2931 & 3000(a)&(f), supra; see also: McQuillian v. Duncan, 306 F.3d 895, 898, 901-903 (9th Cir. 2002) [McQuillian received a "**FOR LIFE**" sentence, and even though there has "**never**" been a seven year to life sentence under California law, the petitioner was found to have a protected liberty interest in parole.]; see also: Armstrong v. Davis, 275 F.3d 849, 856 (9th Cir. 2001) [re: limitations on B.P.T.'s conferred authority]; Toussaint v. McCarthy, supra, 801 F.2d id at pp. 1094-1097, cert denied, 481 U.S. 1069 (1987) [re: liberty interest in good-time credits]; Toussaint v. McCarthy, 597 F.Supp. 1388, 1416-1417 (N.D. Cal. 1984) (same); see Wolff v. McDonnell, 418 U.S. 539, 557-559 [94 S.Ct. 2963, 141 L.Ed.2d 935] (1974); and Habeas at "P&A's" id at s/n's 1 & 4).

(33). **PLEASE TAKE NOTICE THAT**, Petitioner's case proves that by acting outside the law, Respondents waived any rights they might have claimed had they been given the constitutional

not given the fair and impartial opportunity, at the time of trial, or in any subsequent proceedings, for the adjudication of his claims, in a court of law.

(42). **PLEASE TAKE NOTICE THAT**, had Petitioner's claims been "without merit", then officials for the B.P.T. and the DOC&R should have no trouble proving by what laws they are determining the term of Petitioner's sentence; without violating his rights to his earned liberty. As opposed to Petitioner's claims that the appointed officials for both agencies - acting in conflict with the State and Federal Constitutions as well as Legislative intent - are denying Petitioner his rights to know the "**CERTAINTY**" of his penalty, and for failing to provide for a specific date for his release according to what Prop. 7's voters were told; i.e., his penalty is to be "fixed" according to the conditions of his performance based on Pen. Code § 2931 (emphasis added).

(43). **PLEASE TAKE NOTICE THAT**, not withstanding any other provisions of law, as adopted by the voters as part of the Prop. 7 Initiative Statute, this case shows how Petitioner's sentence is being implemented under a repealed body of laws. This case also shows that the rules and regulations made by Respondents are authorized by statutes for implementing the penalty for those persons who receive a "**FOR LIFE**" penalty as determined by a jury, where term fixing authority is not a requirement for granting parole; which was the only class of offender the Adult Authority retained jurisdiction over that allows them to consider the "possibility of parole" for "SB-42" category five offenders (See: Exhibit 4 - SB-42,

Respectfully submitted,

**V E R I F I C A T I O N**

As the Petitioner in the above entitled action, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on October (Month) 22 (Day), 2006.

Michael Matlock
MICHAEL MATLOCK

10/22/06
DATE

******************

# PROOF OF SERVICE BY MAIL

Case Name: MICHAEL S. MATLOCK, Petitioner

vs

JEANNE WOODFORD, Secretary of CDC&R & ROSANNE CAMPBELL, Warden, (MCSP), RESPONDENTS, et al.

Case Number:

I Gregory Watson, declare and state as follows: I am 18 years or older an not a party to this action. My address is Post Office Box Number 409040, Ione, California 95640.

On October (Month) 22 (Day), 2006, I served the attached **NOTICE AND RESTATEMENT OF CLAIMS REGARDING DENIAL OF HABEAS CORPUS/MANDAMUS RELIEF** by placing a true copy enclosed in a sealed envelope with postage fully paid thereon, in the United States Mail at Mule Creek State Prison, at Ione, California addressed as follows:

**PARTIES SERVED**

| NAME | ADDRESS | DATE SERVED |
|---|---|---|
| Calif. Supreme Court Clerk of the Court | 350 McAllister Street San Francisco, CA 94102 | 10/22/06 |
| Bill Lockyer, Attorney General | 1300 I St., Suite 125 Sacramento CA 95814 | |
| Rosanne Campbell, Warden (A) | Mule Creek State Prison Post Office Box # 409099 Ione, California 95640 | |
| Jeanne Woodford and or James E. Tilton | Post Office Box No. 942883 Sacramento, CA 94283-0001 | |
| Calif. Court of Appeal First Appellate Dist. Attn: Court Clerk | 350 McAllister Street San Francisco, CA 94102 | |

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on October (Month 22 (Day), 2006, at Mule Creek State Prison, at Ione, CA 95640-9000.

GREGORY WATSON

(Signature)

# PART 2

**S147538**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re MICHAEL MATLOCK on Habeas Corpus

---

The motion to disqualify the Chief Justice filed by the petitioner on October 24, 2006, is hereby denied. The petition for writ of habeas corpus is denied. (See *In re Miller* (1941) 17 Cal.2d 734.)

SUPREME COURT
FILED

MAY - 9 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

## COMMENTS

# SENATE BILL 42—THE END OF THE INDETERMINATE SENTENCE

For more than fifty-nine years California had a system of indeterminate sentences for felony convictions.[1] The indeterminate sentence system prohibited the sentencing judge from specifying a designated term of imprisonment for each convicted felon, and required the felon to be sentenced for "the term prescribed by law."[2] As a result, each felon was sent to prison for a term having a statutory minimum and maximum length, without any indication of the length of term that that specific prisoner would serve. Each individual's term was set after incarceration by the "governing authority of the prison,"[3] based on that individual's conduct in prison.[4] In theory, the indeterminate sentencing system would allow each prisoner's sentence to be tailored to his rehabilitative efforts in prison, enabling each individual to be released as soon as he was capable of living in society without resorting to crime.

A number of different criticisms[5] were leveled at the administration of the law—the uncertain date of release, the varying sentence lengths for prisoners committed on similar offenses, the broad discretion of the Adult Authority, the Au-

---

The author would like to thank Judge Donald Chapman of the Santa Clara County Municipal Court, Joseph A Spangler, Supervising Investigator of the California Adult Authority, and Mary Lou Fenili.

1. The original indeterminate sentencing provision, Penal Code section 1168, was enacted on May 18, 1917, and became effective on July 27 of the same year. 1917 Cal. Stats., ch. 526, § 1, at 665 (a lengthy historical note is included after the section).

2. The term prescribed by law was a statutory minimum and maximum term for the offense for which the defendant was convicted. A recital of the offense of which the defendant was convicted and a designation of the state prison to which he was committed was upheld as a proper sentencing in People v. Mendosa, 178 Cal. 509, 173 P. 998 (1918).

3. 1917 Cal. Stat., ch. 526, § 1, at 665. The governing authority of the prison was orginally called the State Board of Prison Directors. In 1941 it became the Board of Prison Terms and Parole and in 1944, the Adult Authority.

4. *See* notes 41-61 and accompanying text *infra* for a discussion of the Adult Authority's method of determining sentences.

5. *See, e.g.*, J. MITFORD, KIND AND USUAL PUNISHMENT: THE PRISON BUSINESS 81 (1973) [hereinafter cited as MITFORD]; Sacramento Bee, Feb. 28, 1975, at Bl, col. 3; *Transcript of the Hearing on the Indeterminate Sentence Law*, Sen. Select Comm. on Penal Institutions, Dec. 5-6, 1974 [hereinafter cited as *Transcript*]. *See also* M. FRANKEL, CRIMINAL SENTENCES 88 (1973) [hereinafter cited as FRANKEL].

thority's relative immunity from effective review, and the lack of effective evaluation of available sentencing materials by the Adult Authority.[6]

These criticisms, however, were only symptoms of the real problem, which was that the fundamental premise upon which the system was based, that is, the *ability* to rehabilitate was not a viable concept.[7] The criticisms generated an Adult Authority attempt to promote uniformity and order within the law[8] which was ultimately invalidated by the courts as beyond the Adult Authority's power.[9]

Increasing criticism motivated the legislature to reexamine the law and numerous alternatives were proposed.[10] From among the alternatives Senate Bill 42 was enacted as the favored remedy. It was passed by the legislature on September

6. There was much criticism of the legislature's grant of total power for sentencing decisions to the Adult Authority without meaningful direction. Some of the criticism came from members of the legislature themselves: "For years the Legislature has neglected its responsibility of providing guidelines for boards charged with parole decision making. . . . The Parol Board [the Adult Authority] is one of the last bastions of unchecked and arbitrary power in America." ASSEM. SELECT COMM. ON ADMIN. OF JUSTICE, PAROLE BOARD REFORM IN CALIFORNIA: ORDER OUT OF CHAOS 15 (1970). *See also* FRANKEL, *supra* note 5, at 88-89; MITFORD, *supra* note 5, at 86; Goldfarb & Singer, *Problems in the Administration of Justice in California*, ASSEM. J. (Supp. App.), Reg. Sess. 41 (1969) (criticism of the absence of procedural due process safeguards at Adult Authority proceedings).

General criticism of indeterminate sentencing was raised at the hearings of the Senate Select Committee on Penal Institutions on Senate Bill 42. *Transcript, supra* note 5.

7. *See, e.g.*, ASSEM. COMM. ON CRIM. PROC., CRIME AND PENALTIES IN CALIFORNIA 25 (1968); CAL. ST. BAR COMM. ON CRIM. JUSTICE, REP. AND RECOMMENDATIONS ON SENTENCING AND PRISON REFORM 1-4, 34-35 (1975); FRANKEL, *supra* note 5, at 90-92; Glueck, *Predictive Devices and the Individualization of Justice*, 44 LAW & Contemp. Prob. 461-62 (1958) [hereinafter cited as Glueck].

8. The major Adult Authority attempts to provide uniform procedures were Chairman's Directives 75/20 and 75/30. Adult Authority Chairman's Directive 75/20 (April 15, 1975) [hereinafter cited as C.D. 75/20]; Adult Authority Chairman's Directive 75/30 (September 2, 1975) [hereinafter cited as C.D. 75/30]. *See* notes 41-61 and accompanying text *infra* for a description of C.D. 75/20 procedures. C.D. 75/20 involved the procedure for determining parole release dates, while C.D. 75/30 paralleled those procedures for setting an individual maximum term proportionate to the seriousness of an individual's offense as required by *In re* Rodriquez, 14 Cal. 3d 639, 652, 653, 537 P.2d 384, 393, 394, 122 Cal. Rptr. 552, 561, 562 (1975).

9. *In re* Stanley, 54 Cal. App. 3d 238, 126 Cal. Rptr. 524 (1976).

10. *See* 1976 Cal. Legis. Serv., ch. 1139, at 4752 (formerly Senate Bill 42) (abolishing most indeterminate sentences and the Adult Authority); A.B. 1440, Reg. Sess. (1975) (requiring that sentences within the maximum length set by the trial judge, be imposed by a panel of superior court judges or hearing officers shortly after incarceration); A.B. 2311, Reg. Sess. (1975) (establishing a Commission on Criminal Sanctions to set fixed, determinate terms for all noncapital felony offenses at some point between zero and the median national time served for similar crimes).

1, 1976, and signed into law by Governor Brown on September 20, 1976.[11] The bill eliminates the Adult Authority and returns California to a determinate sentencing system.[12]

This comment will examine the indeterminate sentencing system and its administration. Senate Bill 42 will be outlined, and the new sentencing system will be evaluated for its ability to alleviate the difficulties of indeterminate sentencing.

## A History of Indeterminate Sentencing and the Adult Authority

### *The Indeterminate Sentence Law*

The indeterminate sentence law was enacted May 18, 1917, and became effective July 27 of the same year.[13] In its original form, California Penal Code section 1168(a) provided:

> Every person convicted of a public offense, for which public offense punishment by imprisonment in any reformatory or the state prison is not prescribed by law, if such convicted person shall not be placed on probation, a new trial granted, or imposing of sentence suspended, shall be sentenced to be confined in the state prison, but the court in imposing such sentence shall not fix the term or duration of the period of imprisonment.[14]

The indeterminate sentence was a statutorily defined minimum and maximum term for each felony. Within that statutory term each prisoner's sentence was set *after* his incarceration by the governing authority of the prison.

The statute also provided that "the governing authority of the reformatory or prison" or "any board or commission that may be hereafter given authority so to do"[15] had responsibility for determining what amount of time, if any, greater than the minimum the prisoner would be confined.

Although the indeterminate sentence law also consisted of hundreds of provisions of the Penal Code and other codes defining minimum and maximum terms for each felony, this single short section[16] was the backbone of the system. Other sections

---

11. Senate Weekly History, Reg. Sess. (1976).

12. 1976 Cal. Legis. Serv., ch. 1139, at 4752 (legislative counsel's digest). *See* notes 66-143 and accompanying text *infra*.

13. 1917 Cal. Stats., ch. 526, § 1, at 665.

14. *Id.* at 665-66.

15. *Id.* at 666.

16. Cal. Penal Code § 1168 (West 1970).

established the "governing authority of the prison," but none provided direction for the administration of the law.[17] The administrative board determining sentences was given total control over the process of indeterminate sentencing.

Immediately after its enactment, the constitutional validity of indeterminate sentencing was unsuccessfully challenged in *In re Lee.*[18] This challenge went to the core of indeterminate sentencing—that is, to the right to make a sentence indeterminate.

The contention that an indeterminate sentence was void for uncertainty and indefiniteness was not accepted in *Lee.* The court held that the sentence was in legal effect a sentence for the maximum term, and thus, both certain and definite.[19] In this holding the court relied on the experience of other jurisdictions already possessing some form of indeterminate sentence.[20]

*Lee* also established the validity of giving sentencing discretion to an administrative body. It was alleged that the law violated the constitutional doctrine of separation of powers.[21] The court replied by stating that the legislative function, to provide the sentence to be imposed, was completed with the enactment of the indeterminate sentence law and the minimum and maximum terms for each felony. The judicial function, to determine guilt and impose sentence, was completed at trial.[22] The actual execution of the sentence was seen as a purely administrative task.

Again, the court relied on precedents from other jurisdic-

---

17. *See* CAL. PENAL CODE § 5075 *et seq.* (West 1970).

18. 177 Cal. 690, 171 P. 958 (1918).

19. *Id.* at 693, 171 P. at 959.

20. Because the question was not raised, the *Lee* court did not go further and examine whether the maximum sentence, often a life sentence, was cruel or unusual punishment. Challenges to indeterminate sentencing on cruel or unusual punishment grounds were not raised until very recently. *See In re* Rodriquez, 14 Cal. 3d 639, 537 P.2d 384, 122 Cal. Rptr. 552 (1975) (prison term disproportionate to inmate's particular offense constituted cruel and unusual punishment and indicated that the Adult Authority was not administering the law in a constitutional manner); People v. Wingo, 14 Cal. 3d 169, 534 P.2d 1001, 121 Cal. Rptr. 97 (1975) (a term within the statutory limits that is disproportionate to individual culpability is unconstitutional); *In re* Foss, 10 Cal. 3d 910, 519 P.2d 1073, 112 Cal. Rptr. 649 (1974) (a statutory minimum unconstituional); *In re* Lynch, 8 Cal. 3d 410, 503 P.2d 921, 105 Cal. Rptr. 217 (1972) (a statutory maximum unconstitutional). The invalidation of sentences on this ground fostered many changes in Adult Authority procedures. *See, e.g.,* C.D. 75/30, *supra* note 8. It also pushed the Authority to repudiate rehabilitation as a sentencing criterion.

21. 177 Cal. at 692, 171 P. at 959. *See* CAL. CONST. art. III, § 3 (constitutional doctrine of separation of powers).

22. 177 Cal. at 693, 171 P. at 959.

tions having indeterminate sentences.[23] It cited with approval the Tennessee Supreme Court statement that "the act does not attempt to confer on the board the power to fix the punishment that any given crime shall bear."[24] Such a statement is belied by the fact that the Adult Authority was given extremely wide latitude in setting sentences. For example, the sentence for a felony conviction of assault with a deadly weapon was six months to life.[25] At the time *Lee* was decided, the governing authority of the prison had complete freedom to set an inmate's sentence anywhere within those bounds.[26]

As a result of *Lee* and its progeny,[27] the validity of indeterminate sentencing per se was solidly established and criticism was restricted to the governing body and its administration of the law.

*The Adult Authority*

In 1944 the Board of Prison Terms and Paroles was abolished and the Adult Authority was created as the agency to administer the indeterminate sentence law.[28] Originally, the Adult Authority had three members. It later was expanded to nine members who were appointed by the Governor and confirmed by the Senate.[29] Section 5075 of the Penal Code directed

23. *Id.* at 693-94, 171 P. at 959.

24. *Id.* at 694, 171 P. at 960, *quoting* Woods v. State, 130 Tenn. 100, 113, 169 S.W. 558, 561 (1914).

25. CAL. PENAL CODE § 245 (West 1970) (felony penalty). Under S.B. 42 assault with a deadly weapon carries a sentence of 2, 3 or 4 years. 1976 Cal. Legis. Serv., ch. 1139, § 152, at 4790 (to be codified as CAL. PENAL CODE § 245).

26. Prior to the decision in *In re Rodriguez*, the general rule was that a prisoner had no vested right to a term fixed at less than the maximum sentence. *In re* Schoengarth, 66 Cal. 2d 295, 302, 425 P.2d 200, 204, 57 Cal. Rptr. 600, 603 (1967). As a result terms were set and reset anywhere within the statutory bounds, if the prisoner violated any Department of Corrections rules. *Rodriguez* limited this rule by requiring that the maximum for each prisoner must not be disproportionate to the seriousness of the prisoner's offense. 14 Cal. 3d at 652, 537 P.2d at 393, 122 Cal. Rptr. at 516. This compulsion of proportionality was derived from United States and California constitutional provisions against cruel and/or unusual punishment. *See* U.S. CONST. amend. VIII; CAL. CONST. art. I, § 17.

27. *See, e.g.*, Bennett v. People, 406 F.2d 36 (9th Cir. 1969); *In re* Larsen, 44 Cal. 2d 642, 283 P.2d 1043, *appeal dismissed*, 350 U.S. 928 (1955); Fleischer v. Adult Authority, 202 Cal. App. 2d 44, 20 Cal. Rptr. 603 (1962); People v. Kostal, 159 Cal. App. 2d 444, 323 P.2d 1020 (1958).

28. CAL. PENAL CODE §3000 (West 1970). Jessica Mitford described the Adult Authority in this manner: "This board wields total, arbitrary despotic power over the destinies and liberties of California's state prison population, not only while they are in custody but also after they have been released on parole." MITFORD, *supra* note 5, at 86.

29. CAL. PENAL CODE §5075 (West 1970).

that, to the extent possible, the members selected should be experienced in the fields of corrections, sociology, law, law enforcement, and education.[30]

Statutes provided very little guidance for the Authority in its administration of indeterminate sentencing. Penal Code section 5076.1 directed the Authority to hold hearings at the prisons *as often as necessary* to allow a full and complete examination of each inmate's file.[31] As the size of the prison population increased, the section was amended to give the Adult Authority the power to employ hearing representatives to assist the Authority in its time-consuming tasks of examining each inmate's file, setting terms and making parole decisions.[32]

Most of the direction for the operation of the indeterminate sentence law was provided by the Adult Authority itself.[33] In the absence of statutory direction, the Adult Authority regularly issued policy statements, resolutions and chairman's directives which specified exactly how the indeterminate sentence law would be administered.[34]

---

30. *Id.* Supposedly these special areas of knowledge would assist the Adult Authority members in their task of determining sentence lengths. The former occupations of the 1976 Adult Authority members included: Raymond Procunier, director of the Department of Corrections; Raymond Brown, Oakland deputy chief of police; Manuel Quevedo, Jr., San Bernardino police officer and member of the Alcoholic Beverage Control Board; Robert Wood, state assemblyman and farmer; Rudy Garcia, community director of the state health and welfare agency, and Lt. Commander in the United States Navy in charge of special court martials; Henry Kerr, Assistant Commander, Los Angeles Police Department, Detective Division; Curtis Lynum, San Francisco District Director, FBI; Ruth Rushen, Los Angeles County Probation Department, Probation Officer. Telephone conversation with Adult Authority personnel (March, 1976).

Marvin Frankel has spoken of these "experts" running our sentencing system as follows: "In our easy adoration of expertise we have given over power to people of dubious qualifications, subjected to little or no control." FRANKEL, *supra* note 5, at 88-89.

31. CAL. PENAL CODE § 5076.1 (West Supp. 1975) (emphasis added).

32. *Id.* In 1976 the Adult Authority employed about 29 hearing representatives to assist the nine Adult Authority members. These 38 people were responsible for hearing the cases of over 40,000 inmates in the custody of the Department of Corrections. Telephone conversation with Adult Authority personnel (March, 1976).

33. For criticisms of the Adult Authority's operation of the indeterminate sentence law see authorities listed in note 5 *supra*.

34. The distinctions among these documents is not clear. Both policy statements and resolutions appear to be general declarations of Adult Authority decisions on various topics. Chairman's Directives, on the other hand, are much more specific and deal with detailed procedural matters. *See, e.g.*, C.D. 75/30, *supra* note 8. The relative importance of these statements, resolutions and directives in Adult Authority operations is not clear. Apparently, they differ only in the depth to which they cover the subject matter.

*Rehabilitative Foundations of Indeterminate Sentencing*

Indeterminate sentencing in the United States grew out of notions of preventive confinement.[35] Though early statements of the rationale for indeterminancy were based upon a desire to isolate the criminal from society,[36] very shortly the purpose of indeterminancy was subtly shifted from confining a prisoner until he had reformed to the actual reformation itself.[37] Shortly after the enactment of California's indeterminate sentence law, the California Supreme Court wrote: "The purpose of the indeterminate sentence law . . . is to *mitigate* the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime."[38]

The difficulty with attempting to make the punishment fit the criminal rather than the crime lay in the limited ability of the criminal justice system to identify and treat the cause of crime. For years the administrators of the indeterminate sentence law attempted to individualize rehabilitation through sentencing while lacking the expertise and methods necessary for treatment. The result was that sentencing was open to criticism as arbitrary, excessive and unfair.[39]

In early 1975 when Raymond Procunier became chairman of the Adult Authority, he recognized that rehabilitation could not be achieved within the indeterminate sentencing system.[40]

35. *See* Dershowitz, *Indeterminate Confinement: Letting the Therapy Fit the Harm*, 123 U. PA. L. REV. 297, 304-15 (1974) [hereinafter cited as Dershowitz].

36. Zebulon Brockway, the long time superintendant of Elmaira Reformatory in New York and an early proponent of indeterminate sentencing in the United States, rejected both punishment and deterrence as rationales for sentencing and instead proposed that all persons convicted of crimes should be confined to prison until they could safely be returned to society. Z. BROCKWAY, FIFTY YEARS OF PRISON SERVICE 401 (1912).

37. *See* Dershowitz, *supra* note 35.

38. *In re* Lee, 177 Cal. 690, 692, 171 P. 958, 959 (1918).

39. *See* K. DAVIS, DISCRETIONARY JUSTICE: A PRELIMINARY INQUIRY 133-34 (1973); FRANKEL, *supra* note 5.

40. Sacramento Bee, Feb. 28, 1975, at BI, col. 3. There seems to be a general consensus that rehabilitation, making a criminal into a law abiding citizen, is an impossible task. *See, e.g.*, FRANKEL, *supra* note 5, at 93; Friedman, *The Dilemmas of Sentencing*, 44 CAL. ST. BAR J. 372, 377 (1969); Sacramento Bee, Feb. 28, 1975, at BI, col. 3. Punishment, deterrence and protection decisions are really policy decisions which demand less qualification than a rehabilitation decision. Senate Bill 42 recognizes that these policy decisions are best made by a legislative body which is answerable to the people rather than by an administrative board which is not.

As a result, he attempted to remove rehabilitation from sentencing decisions. Chairman's Directive 75/20 was the result.

## Chairman's Directive 75/20—An Administrative Attempt to Make Sentencing Decisions More Uniform

As a major step in administrative reform, Raymond Procunier, the Adult Authority Chairman, issued Chairman's Directive 75/20 (C.D. 75/20),[41] which established a procedure for setting parole release and discharge dates for each prisoner. The parole release date was the length of time an inmate would serve in prison before being released on parole. In a sense, it was the inmate's individualized minimum term.[42] The date was tentative. If for any reason the inmate was found unfit to be released, the date could be revoked.

The parole discharge date was the date on which the inmate would be released from the Department of Corrections' control and supervision after a successful period of parole. It also was a tentative date because the individual's actions while on parole could cause parole to be revoked or the time under supervision to be lengthened.

The major purpose of C.D. 75/20 was to establish procedures for evaluating information and guidelines for release decisions. It was intended that these dates would be set at an inmate's first regularly scheduled parole consideration meeting.[43]

The first section of C.D. 75/20 was administrative. It specified what information could be considered in making parole release and discharge decisions, as well as what situations would allow a postponement of decision or a denial of parole.[44] Postponement could be ordered only if the information at the hearing was incomplete. The reason for postponement had to

41. C.D. 75/20, *supra* note 8.

42. Prior to the decision of *In re* Rodriguez, 14 Cal. 3d 639, 537 P.2d 384, 122 Cal. Rptr. 552 (1975), a parole release date was only tentative. It could be revoked and the sentence returned to the statutory maximum for any breach of prison discipline. After *Rodriguez* the date could not be raised above the "primary term" which was a maximum proportionate to the individual's offense. *See* note 26 *supra* ; C.D. 75/30, *supra* note 8 (establishing Adult Authority procedures for setting a proportionate maximum).

43. Such a meeting includes two Adult Authority members or hearing representatives and the inmate. The purpose is to review his file and make recommendations that will speed his release. The first scheduled meeting is six months before the inmate's minimum eligible parole release date. Adult Authority Policy Statement No. 15 [on file at Santa Clara L. Rev.].

44. C.D. 72/20, *supra* note 8, at § A.1.

be noted on a standardized form in the inmate's file[45] and the Department of Corrections' staff had to be instructed to obtain the necessary information. In no situation could a case be postponed longer than ninety days.

*C.D. 75/20 Procedures*

The body of C.D. 75/20 was concerned with the procedure to establish a parole release date—a procedure that involved a number of different steps.

*The "base offense."* The "base offense" was the most serious offense for which the inmate had been sentenced.[46] This was determined by examining the statutory minimum and maximum sentences for each offense for which the inmate had been sentenced, selecting the most severe as the "base offense," and listing that offense on the Adult Authority Parole Decision form 279. If the inmate was committed for multiple offenses, all offenses other than the base offense had to be listed as running either concurrently or consecutively with that offense.

*The typical or aggravated range.* The "base offense" was then characterized as "typical" or "aggravated" for that type of offense.[47] To do this, the facts of the crime were evaluated for their "relative seriousness" with respect to other crimes of the same type. The directive listed several factors to be considered in making this determination, including the seriousness of any personal injury to the victim of the crime, the number of victims, the degree to which the inmate was involved in inflicting such personal injury, the extent of damage to or loss of property, the professionalism with which the crime was carried out, the possession or use of weapons, and the quantities of contraband possessed or sold.

No relative weights for each of these factors were supplied, nor was there an instruction to disregard or alter factors which were integral parts of the definition of an offense. Thus, in effect, some factors were weighed twice—once as a definition of the offense and again as a factor in determining the seriousness of the offense.

*The base period of confinement.* The base period of con-

---

45. California Department of Corrections form 279 [on file at SANTA CLARA L. REV.].

46. C.D. 75/20, *supra* note 8, at § A.2.a.

47. *Id.* at § A.2.b.

finement[48] was established by referring to the table of suggested base ranges attached to the directive.[49] The base offense and the typical or aggravated character of that offense were used to determine which average sentence range would be applied to a particular prisoner. By evaluating the facts of a crime, a specific period within that range was selected as the "base period" of confinement for that inmate. The primary factor in this determination was the seriousness of the offense, apparently determined by using the same factors which allowed the offense to be characterized as typical or aggravated. If there were "unusual" factors in a particular case, the base period could be set above or below the chosen range.[50]

*Adjusting the base period.* The Adult Authority then adjusted the base period[51] for prior prison terms, concurrent or consecutive sentences, prior felony convictions plead and proven in court which had not resulted in a prison sentence, and weapons charges.[52] Periods of time were to be deducted from the base period for an individual whose minimum term had been reduced under Penal Code section 1202b, the Youthful Offender Statute.[53] The directive defined each of these "mitigating" or "aggravating" situations, defined ranges to be used to select the adjustment period for each,[54] and cautioned that the categories were mutually exclusive and that the same felony convictions should not result in two additional periods being added to the base. The directive also warned that dismissed charges were not to be considered in adjusting the base range.

This last manipulation resulted in a specific period of months. When added to the date on which the inmate was

---

48. *Id.* at § A.2.c.

49. For a table of suggested base ranges see app. A *infra*.

50. These factors include the individual's age; the individual's pattern of criminality (whether the individual is a professional, systematic criminal or an amateur, occasional offender); serious or major disciplinary offenses in prison; a lengthy period of incarceration prior to actual reception by the Department of Corrections, etc. C.D. 75/20, *supra* note 8, at § A.2.c.

51. *Id.* at § A.3.

52. Weapons charges include commission of a felony while armed with a deadly weapon and use of a firearm in the commission of certain specified felonies. CAL. PENAL CODE §§ 12022, 12022.5 (West 1970).

53. The Youthful Offender Statute allows the sentencing court to reduce to six months the minimum term of a defendant who was convicted of a felony, other than a felony punishable by death, committed while he was under the age of 23 years. CAL. PENAL CODE § 12026 (West 1970).

54. For a table of suggested adjustment ranges see app. A *infra*.

received at the Department of Corrections, this period resulted in the parole release date.[55] The parole release date had to be set beyond the minimum eligible parole date, which was generally one-third of the minimum sentence.[56]

*Parole discharge date.* The directive specified that the normal period served under parole supervision was three years. When the three-year period was added to the parole release date, the parole discharge date was obtained.[57] A parole period other than three years might be selected if the reasons for that decision were listed in the inmate's file. Since the parole discharge date represented the individual's total sentence for his offense, it had to be set at or beyond the statutory minimum term.

*Recalculation of dates.* The periods established were only tentative, based on the assumption that the inmate would maintain a disciplinary-free record in the institution and would satisfactorily perform any work assignments given him.[58] If the inmate's behavior did not meet these standards, he might have his release and discharge dates recalculated.[59] Also, if the inmate's "mental condition" deteriorated, his dates might be rescinded. Deterioration of mental condition was not defined nor was a review procedure for this decision established.

This procedure for the rescission of dates allowed parole release to be postponed for virtually any reason. Charges of prejudice were often leveled at Adult Authority decisions, but they could seldom be proved because of poor documentation of decision-making procedures. The directive provided for a type of review procedure,[60] but the review could only be made after two-thirds of the time to parole release had been served. In addition, the review did not consider the validity of the reasons for the Adult Authority's release decision, nor did it examine the propriety of the length of term before release. Instead, the procedure required the inmate to demonstrate "unusual reha-

---

55. C.D. 75/20, *supra* note 8, at § A.4. If the adjusted based period for an individual who was received at a Department of Corrections institution on January 1, 1976, was 24 months, his parole release date would be January 1, 1978.

56. Thus, if the minimum sentence for an offense was five years, the minimum eligible parole date would be 20 months after incarceration.

57. C.D. 75/20, *supra* note 8, at § A.5. In the example in note 55 *supra*, the parole discharge date would be January 1, 1981.

58. C.D. 75/20, *supra* note 8, at § C.

59. *Id.* at § D. Recalculation generally would result from additional court convictions or prison disciplinary offenses.

60. *Id.* at § I.

bilitation" to justify a resetting of his release and discharge dates. This procedure did not allow Board error to be a factor in a review of the dates. In addition, it establsihed rehabilitation as *the* criterion for change when the procedures for setting the dates initially did not even include rehabilitiation as a factor.[61]

*Invalidation of C.D. 75/20*

The procedural inadequacies of C.D. 75/20 and the possibilities of prejudice involved therein were overshadowed by the glaring fact that the directive allowed for absolutely no consideration of rehabilitation in the original sentence setting decision. The directive marked the Adult Authority's recognition that rehabilitation was not a reasonable standard for determining sentences.

Unfortunately, the indeterminate sentence law required individual sentences to be at least partially based on consideration of factors of "individual reclamation and post-release expectations."[62] In other words, rehabilitation and the prediction of recidivism were mandatory factors to consider under the indeterminate sentence law.

In January, 1976, the California Court of Appeal for the Third District decided the case of *In re Stanley*.[63] This case invalidated C.D. 75/20 procedures on the ground that rehabilitation was not considered. Since the indeterminate sentence law required consideration of rehabilitation in term setting, and since the Adult Authority had admitted it could neither rehabilitate nor evaluate efforts at rehabilitation, *Stanley* seemed conclusively to establish that the goal of the indeterminate sentence was beyond reach.

The dilemma of indeterminate sentencing has been stated succinctly:

> [I]t is time . . . that reformers of the criminal law face the fact that the feasibility of a reliable technique of individualization is crucial to the entire program of scientific and humane criminal justice. If, in fact, a reasonably

---

61. *Id.*

62. *In re* Stanley, 54 Cal. App. 3d 238, 248, 126 Cal. Rptr. 524, 531 (1976). The invalidation of C.D. 75/20 was predicted months before *Stanley* was decided. *See* letter from G. Murphy, California Legislative Counsel, by B. Dale, Deputy Counsel, to Sen. J. Nejedly (Mar. 18, 1975) [on file at SANTA CLARA L. REV.].

63. 54 Cal. App. 3d 238, 126 Cal. Rptr. 524.

> sound individualization cannot be accomplished by the means at hand, then, despite the lofty aims of modern correctional philosophy and regardless of the most elaborate investigation and case history, the system will not work.[64]

When *Stanley* invalidated the Adult Authority's effort at a reasonably workable and uniform sentencing procedure, the California legislature was forced to act. Senate Bill 42 was passed by the legislature on September 1, 1976. When the Governor signed the Bill, indeterminate sentencing and the Adult Authority were eliminated.[65]

## Determinate Sentencing Under Senate Bill 42

Senate Bill 42 ends indeterminate sentencing and substitutes a system of determinate sentences to be imposed by the trial judge. The conceptual foundation of Senate Bill 42 is significantly different than that for the indeterminate sentencing system.

Senate Bill 42 defines the purpose of imprisonment for crime to be *punishment.*[66] This statement implicitly rejects the other major theories of sentencing—isolation, deterrence and rehabilitation.[67] Such a singleness of purpose, while removing much of the flexibility inherent in indeterminate sentencing promotes uniformity of sentencing for offenders committing similar crimes under similar circumstances and eliminates the difficult balancing of purposes which under indeterminate sentencing led to disparity of sentences.

### *Sentence Lengths*

All offenses are categorized into degrees of seriousness. There are five levels of seriousness and each level is assigned three definite terms.[68] The three terms at each level represent

---

64. Glueck, *supra* note 7, at 461.

65. It should be noted that although Senate Bill 42 changed the law and, of course, altered the procedures for setting prison terms, it did not substantially alter the philosophy of sentencing. When C.D. 75/20 dropped rehabilitation as a sentencing criterion, punishment and proportionality became the predominate themes in sentencing. Senate Bill 42 continued this emphasis and legitimated it.

66. 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4818 (to be codified as Cal. Penal Code § 1170(a)(1)).

67. For a discussion of theories of punishment, see H. Hart, Punishment and Responsibility (1968).

68. The categorization is not explicit in the Bill, but the statutes which assign determinate terms yield only five levels of penalty.

mitigated, typical and aggravated offenses at that level of seriousness. For example, the middle level of seriousness is assigned terms of three, four and five years.[69] One offense with this degree of punishment is rape.[70] A rape conviction would normally result in a sentence for the middle term, but if the sentencing judge finds that there were mitigating or aggravating factors involved, the lowest or highest term, respectively, might be selected.[71]

The major portion of Senate Bill 42 consists of statutes defining the terms for each offense.[72] Almost all of the new sentences represent substantial reductions in sentence length from the minimum and maximum statutory terms for the same offense under the indeterminate sentence law.[73] This change to much shorter sentences was urged by proponents of the Bill for two reasons—first, California had the longest average sentences in the United States, and perhaps in the world,[74] and second, sentences over about five years in length could not be justified because there appears to be no significant "improvement" in prisoners after that period.[75]

---

69. For a table of selected offenses with determinate and indeterminate penalties see app. B *infra*.

70. CAL. PENAL CODE § 264 (West 1970). *See* 1976 Cal. Legis. Serv., ch. 1139, § 154, at 4791 (to be codified as CAL. PENAL CODE § 264).

71. 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4819 (to be codified as CAL. PENAL CODE § 1170(b)). *See* notes 78-121 and accompanying text *infra* (trial court sentencing).

72. For a comparison of the penalties for various offenses see app. B *infra*.

73. Senate Bill 42 was severely criticized by Judge Bruce Allen, presiding judge in the criminal division of Santa Clara County Superior Court, primarily because of the extremely short sentences which it provides compared to those provided under the indeterminate sentence law. San Jose Post-Record, Sept. 20, 1976, at 1, col. 1. This is not necessarily accurate. Given the suggested base ranges which the Adult Authority used for sentencing prior to the passage of Senate Bill 42, the new sentences should be very close to the sentences actually served under the prior law. *Compare* app. A *with* app. B *infra*.

74. *See Transcript, supra* note 5, at 20 (remarks of Peter Sheehan, American Civil Liberties Union, San Francisco); MITFORD, *supra* note 5, at 86. Mitford commented that "[u]nder cover of the indeterminate sentence, the median term served by California's 'felony first releases' had risen from 24 months in 1960 to 36 months in 1970, highest in the nation and probably the world." *Id.*

75. To urge that sentences be reduced because rehabilitation is ineffective for prisoners confined more than five years doesn't seem very persuasive since the basis of S.B. 42 was punishment, not rehabilitation. It is likely, given the fact that Senate Bill 42 seeks to establish sentences that are similar to those served for similar crimes in other jurisdictions, that the first rationale urged for shorter sentences (that California's sentences were substantially longer than those in other jurisdictions) was given much more weight by the legislature than the rehabilitation rationale.

The American Bar Association has noted that "[t]here is general agreement among most who have recently studied the pattern of sentencing in this country that

The sentence imposed may be increased by adding extra periods of punishment for certain "enhancing" circumstances.[76] Whenever an additional sentence is to be imposed under any of the enhancement statutes, the court is authorized to strike that additional punishment if it finds circumstances in mitigation of the prescribed punishment and if the reasons for striking are stated on the record.[77] In addition, subdivision (d) of section 1170.1a provides that the *arming* or *use* (of a weapon) enhancements[78] shall not apply when arming or use is an element of the offense, nor shall the *great bodily harm* enhancement[79] apply when that is an element of the offense.[80] Further,

---

the average sentence to prison is for a term in excess of what can reasonably be justified and that there are far too many long-term commitments." ABA STANDARDS RELATING TO SENTENCING ALTERNATIVES AND PROCEDURE, Commentary at 56 (approved draft 1968).

Both the ABA Standards and the National Council on Crime and Delinquency's Model Sentencing Act provide that the maximum statutory prison term for most offenses should be no longer than five years; for serious offenses, ten years; and only in unusual situations, twenty-five years. ABA Standard 2.1; COUNCIL OF JUDGES, NATIONAL COUNCIL ON CRIME AND DELINQUENCY, MODEL SENTENCING ACT §§ 5-9 (2d ed. 1972). *See also, SB 42—AB 1440—AB 2311: The Sentencing Struggle,* THE OUTLAW: J. PRISONERS UNION, June/July, 1975, at 3, col. 4.

Though Senate Bill 42 could yield sentences exceeding five years, it still represents a decrease in sentence length from the indeterminate sentence system (under which the average term actually served was generally longer than five years). *See* C.D. 75/30, *supra* note 8. Senate Bill 42 represents a good faith effort to bring California sentences within reasonable bounds and within the presently acceptable maximums.

76. These "enhancing" circumstances are various acts by the defendant, either in the course of the offense for which he has been convicted or in the past, which the legislature has determined will justify a longer sentence. These circumstances include prior prison terms served, being armed with or using a weapon, the infliction of great bodily harm, and the infliction of great property loss or damage. 1976 Cal. Legis. Serv., ch. 1139, §§ 268, 304, 305, 305.5, 306 (to be codified as CAL. PENAL CODE §§ 667.5, 12022, 12022.5, 12022.6, 12022.7).

Under the indeterminate sentence law, only prior prison terms could result in an extension of the prisoner's term. CAL. PENAL CODE § 664 (West 1970) (habitual offender statute). This statute was repealed by Senate Bill 42. 1976 Cal. Legis. Serv., ch. 1139, § 261.5, at 4815. Other "enhancements" did not result in a statutory extension of a term, but were considered by the Adult Authority under C.D. 75/20 as "adjustments" to parole release dates. *See* notes 51-56 and accompanying text *supra.* The result due to enchancements under the Bill is similar to that under C.D. 75/20. *Compare* app. A *infra* (suggested adjustment ranges) *with* 1976 Cal. Legis. Serv., ch. 1139, §§ 268, 304, 305, 305.5, 306.

77. 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4820 (to be codified as CAL. PENAL CODE § 1170.1a(c)).

78. *Id.* §§ 304, 305, at 4835 (to be codified as CAL. PENAL CODE §§ 12022, 12022.5).

79. *Id.* § 306, at 4836 (to be codified as CAL. PENAL CODE § 12022.7).

80. *Id.* § 273, at 4820 (to be codified as CAL. PENAL CODE § 1170.1a(d)). For example, a conviction for assault with a deadly weapon would not be subject to the arming enhancement since being armed is an element of the offense.

no more than *one* of these enhancements shall apply to the sentence for any single offense. Here again, Senate Bill 42 very clearly seeks to avoid double or excessive punishment as well as to clarify the application of these enhancement provisions. The indeterminate sentence law did not contain similar rules of application and, as a result, sentences varied widely because enhancement provisions were applied differently.

Enhancement for prior terms and consecutive sentences is limited to five years[81] and the total term of imprisonment is limited to twice the number of years imposed as the "base term,"[82] unless the defendant is convicted of a violent felony,[83] being armed with a deadly weapon, the use of a firearm, or the infliction of great bodily harm.[84] If the conviction falls into one of these exceptions, it appears that there is no limit on the total term of imprisonment except for the limitation provided by the number of enhancements which can be imposed by law.

*Sentencing Procedure*

*Trial court sentencing.* Section 1170 (a)(2) provides the basic outline of sentencing procedure.[85] The trial court is required to sentence an individual convicted of an offense to one of the three specified terms unless the defendant is given some other disposition provided by law.[86] At all times the court must consider the sentencing rules prescribed by the Judicial Council as authorized in section 1170.3,[87] and it is required to impose appropriate enhancements unless it finds mitigating circumstances.[88]

---

81. *Id.* § 273, at 4820 (to be codified as CAL. PENAL CODE § 1170.1 (a(e)).

82. The base term is the unenhanced term selected by the trial judge from among the three choices for any determinate offense.

83. 1976 Cal. Legis. Serv., ch. 1139, § 268, at 4817 (to be codified as CAL. PENAL CODE § 667.5(c)) (definition of violent felonies).

84. *Id.* at 273, at 4820 (to be codified as CAL. PENAL CODE § 1170.1a(f)).

85. *Id.* at 4818 (to be codified as CAL. PENAL CODE § 1170(a)(2)).

86. Other dispositions include a fine, jail, probation or the suspension or imposition or execution of sentence. *Id.*

87. *Id.* at 4822 (to be codified as CAL. PENAL CODE § 1170.3). The rules, which the Judicial Council is required to develop, are to be designed to promote uniformity. They must provide guidance for the court's decision to:

(a) Grant or deny probation.

(b) Impose the lower or upper prison term.

(c) Impose concurrent or consecutive sentences.

(d) Consider an additional sentence for prior prison terms.

(e) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage [to property], or the infliction of great bodily injury.

88. Additional punishment due to aggravating circumstances can be avoided by

When sentencing for an offense having three specified terms, the court must order the middle of the three possible terms, unless circumstances in mitigation or aggravation of the crime are presented by motion and found to be true at a hearing on that motion.[89] A warning is given that no facts used to enhance a sentence, such as prior prison terms for violent crimes,[90] consecutive sentences,[91] or use of a firearm,[92] shall justify imposition of the aggravated (or upper) term, and that no fact should be used twice to determine, aggravate or enhance a sentence. This warning is a substantial change from the procedures under the indeterminate sentence law where the facts which define an offense could also be considered as aggravating circumstances as well as conditions for enhancement.[93]

---

establishing circumstances in mitigation of the punishment. 1976 Cal. Legis. Serv., ch. 1139, §§ 304-06, at 4835 (to be codified as CAL. PENAL CODE §§ 12022, 12022.5, 12022.6, 12022.7).

Penal Code section 12022.6 provides a punishment enhancement for excessive taking of or damage to property

> where the elements of the offense involve [the] criminal taking of funds or property from or property damage to any individual, organization, group or the community in general and [the offense does] not specify a minimum value of the taking or damage, or [specifies] a minimum of less than $100,000.

This enhancement has two levels depending on the magnitude of the taking or damage. For a taking or damage greater than $100,000 but less than $500,000, the enhancement is for an additional term equal to one-half of the base term selected by the judge. If the taking or damage is equal to or greater than $500,000 then the enhancement is for a term equal to the base term selected by the judge. This new section represents a recognition by the legislature that a serious property crime can be as damaging to individuals and the community as a violent crime involving bodily harm or a threat of bodily harm.

89.  1976 Cal. Legis. Serv., ch. 1139, § 173, at 4819 (to be codified as CAL. PENAL CODE § 1170(b)).

90.  *Id.* § 268, at 4816 (to be codified as CAL. PENAL CODE § 667.5). New Penal Code section 667.5(a) provides enhancement only if the commitment offense is one of several defined "violent felonies" or a felony in which great bodily injury to a person other than the defendant or his accomplices has been pled and proven *and* the prior separate prison term also involved a "violent felony." The enhancement imposed is an additional three year term for each such prior felony unless the felon was free of prison custody and felony conviction for ten years immediately preceding the filing of the accusatory pleading that resulted in the present felony conviction. In this section the legislature specifically declares that these "violent felonies" merit special consideration when imposing a sentence to display society's condemnation for such extraordinary crimes of violence against the person.

Section 667.5(b) provides for one year enhancement for other prior prison terms for any felony.

91.  *Id.* § 273, at 4819 (to be codified as CAL. PENAL CODE § 1170.1a).

92.  *Id.* § 305, at 4836 (to be codified as CAL. PENAL CODE § 12022.5).

93.  *See* notes 41-61 and accompanying text *supra* (discussion of C.D. 75/20 procedures).

Whenever a mitigated or aggravated term is selected, the facts relied upon must be set forth on the record. In fact, the record must include all facts supporting the choice of sentence, whether the mitigated, typical or aggravated term is chosen. This requirement provides a more complete record, thereby aiding appellate review of sentencing decisions.

A provision for resentencing within one hundred and twenty days of commitment is retained from the prior law.[94] There are no significant changes in this provision, except for the proviso that the trial judge in resentencing should apply the rules and information provided by the Judicial Council regarding sentences of other prisoners convicted of similar crimes.

To promote uniformity of sentencing, the Community Release Board, which is the successor to the Adult Authority and the California Women's Board of Terms and Paroles,[95] must review all sentences within one year after commencement of the terms thereof and recommend recall of the present sentence and resentencing of the defendant if a sentence is found to be disparate.[96]

The California Judicial Council[97] has the responsibility for establishing rules and procedures designed to foster the aims of determinate sentencing—uniformity of sentencing and sentencing proportionate to the seriousness of the offense committed.[98] Accordingly, it is directed to establish criteria to aid the

---

94. *Compare* 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4819 (to be codified as CAL. PENAL CODE § 1170(c)) *with* CAL. PENAL CODE § 1168 (West 1970).

95. The composition of Community Release Board is similar to that of the Adult Authority. The Board includes nine members, each serving a four year term. 1976 Cal. Legis. Serv., ch. 1139, § 294, at 4832 (to be codified as CAL. PENAL CODE § 5075). Board membership is required to reflect "as nearly as possible a cross-section of the racial, sexual, economic and geographic features or the population of the state." *Id.* The Board is responsible for reviewing all prisoner's requests for reconsideration of denial of good time credit, and for setting parole length and conditions. In addition, it has the authority to modify decisions of the Department of Corrections in these matters. *Id.* § 297, at 4833 (to be codified as CAL. PENAL CODE § 5077). In contrast to the Adult Authority, the Community Release Board is authorized to do business in panels of three rather than two. *Compare id.* § 296, at 4833 (to be codified as CAL. PENAL CODE § 5076.1) *with* CAL. PENAL CODE § 5076.1 (West Supp. 1976). Since panels will probably be conducted in groups of the lowest allowable number, the addition of one member to the panel will prevent deadlocks.

96. 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4820 (to be codified as CAL. PENAL CODE § 1170.1b). This is another one of many provisions in the Bill designed to promote uniformity of sentence.

97. The Judicial Council is established by the California Constitution. CAL. CONST. art. VI, § 6.

98. *See* 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4822 (to be codified as CAL. PENAL CODE § 1170.3 *et seq.)* (defining the duties of the Judicial Council under the Bill).

trial judge in his sentencing decisions,[99] to collect, analyze and distribute information on sentencing in California and other jurisdictions;[100] to conduct annual sentencing institutes;[101] and to review present sentencing statutes and procedures and recommend changes to the legislature.[102] The main objectives of the Council in this review are to strive to maintain sentences proportionate to the seriousness of the offense, and to assure that California lawmakers remain abreast of current sentencing trends by comparing sentences in other jurisdictions and sentencing procedures recommended by national commissions and other learned bodies.[103]

*Multiple convictions.* Multiple convictions under Senate Bill 42 are dealt with by a formula.[104] The aggregate term for all convictions is the greatest term imposed for any *one* of the offenses for which the individual is convicted, including any enhancement imposed for that offense, *plus* one-third of the middle term of imprisonment for each other felony conviction for which a consecutive sentence was imposed without any enhancement for those additional offenses.[105]

Since no mention is made of concurrent sentences, it may be presumed, from the failure to provide an aggravating term for those sentences, that the terms are in fact to run concurrently. This is a distinct change from prior Adult Authority policy which added time to the "base term" for concurrent as well as consecutive sentences.[106] The Adult Authority procedures considered additional convictions in establishing the seriousness of a commitment. They also added time to that sentence as a penalty for sentences whose terms were, by definition to run at the same time as the commitment offense. Senate Bill 42 clarifies the roles of concurrent and consecutive sentences by allowing an extension of the sentence only in the case of convic-

---

99.  *See* note 87 *supra.*
100.  1976 Cal. Legis. Serv., ch. 1139, § 273, at 4822 (to be codified as CAL. PENAL CODE § 1170.4).
101.  *Id.* (to be codified as CAL. PENAL CODE § 1170.5).
102.  *Id.* (to be codified as CAL. PENAL CODE § 1170.6).
103.  *Id.* (listing of considerations).
104.  *Id.* at 4819 (to be codified as CAL. PENAL CODE § 1170.1a).
105.  For example, a conviction for robbery with proof of great bodily harm and an additional conviction for first degree burglary to run consecutively might be treated as follows: 3 years (the middle term for robbery) plus 3 years (the enhancement for great bodily harm, plus 1 year (one third of the middle term for burglary), for a total sentence of seven years.
106.  C.D. 75/20, *supra* note 8, at § A.3.b. *See* notes 51-54 and accompanying text *supra.*

tions intended to be served consecutively.

When an individual is convicted of a felony committed while in prison, and his sentence is to run consecutively with his present prison term, his term is calculated in the same manner as for multiple convictions.[107] His term is the remainder of time to be served on the original offense(s) plus the greatest term imposed for any felony committed while serving the original term plus one-third of the middle term for each other felony conviction.

*Sentences imposed prior to Senate Bill 42.* All inmates sentenced before the effective date of Senate Bill 42, who would have been sentenced to a determinate term under the applicable provisions of the new bill, will have their terms recalculated by the Community Release Board. This will be done by utilizing the middle term of the most serious offense for which the prisoner was convicted, aggregated by any additional terms imposed at the time of sentencing.[108] If this calculation results in a term which would end before the parole release date already set by the Adult Authority,[109] then the inmate's parole date must be reset at the shorter term. Resetting is mandatory unless a majority of the Community Release Board determines that a longer term is warranted due to the number of present or prior convictions, or due to the presence of facts justifying an *arming, use or great bodily harm* enhancement.

When a longer term is believed justified, the prisoner is entitled to a hearing at which he may be represented by counsel and in which the setting of his term and parole date will be reviewed.[110] All inmates who have not had a parole date set by the Adult Authority prior to the effective date of Senate Bill 42 shall have their terms calculated and parole dates set in the same manner as that described above.[111] They also are entitled to a review hearing if the Board decides that they should serve a longer sentence than that calculated.

Inmates sentenced prior to the effective date of Senate Bill 42 who still have indeterminate sentences under the Bill will have their release dates set by the Community Release Board

---

107. 1976 Cal. Legis. Serv., ch. 1139, § 273, at 4820 (to be codified as CAL. PENAL CODE § 1170.1a(b)).

108. *Id.* at 4821 (to be codified as CAL. PENAL CODE § 1170.2(a)).

109. *See* notes 41-61 and accompanying text *supra* (C.D. 75/20, Adult Authority procedures for setting parole release dates).

110. The procedural guidelines for such a review are established by 1976 Cal. Legis. Serv., ch. 1139, § 281.8, at 4827 (to be codified as CAL. PENAL CODE § 3041.5).

111. *Id.* § 273, at 4821 (to be codified as CAL. PENAL CODE § 1170.2(c)).

in the manner established by prior law.[112] Nothing in Senate Bill 42 will require an inmate, sentenced before the effective date of the Bill, to remain in prison longer than he would have been kept in custody under the indeterminate sentence law. Though the indeterminate sentence law is retained only in a few provisions, mainly those providing terms of life imprisonment,[113] its procedure will continue to be relevant in setting the terms of prisoners sentenced before the passage of Senate Bill 42.

*Good Time Credit*

The second major procedural section of Senate Bill 42 deals with provisions for granting "good time" credit for time served in prison.[114] Every prisoner with a determinate term must be advised within fourteen days of the commencement of his term of all applicable prison rules and available institutional programs, including the possibility of receiving a reduction of up to one-third of his sentence for good time and participation.[115] All prisoners sentenced prior to the effective date of Senate Bill 42 who will have determinate sentences must be advised of the rules and programs within ninety days of the Bill's effective date.[116] In all cases, the inmate's file must reflect compliance with this provision.

At the time the prisoner is informed of the availability of "good time," he must be shown a document, which both he and a Department of Corrections official will sign, which outlines the conditions for obtaining good time credit.[117] These conditions may be modified by the mutual consent of the Department and the prisoner, by transfer of the inmate to another institution, or by the Department's determination of the prisoner's lack of adaptability and success in a specific program or assignment. If lack of adaptability is claimed, the inmate is entitled to a hearing on that decision.[118]

---

112. *Id.* at 4822 (to be codified as CAL. PENAL CODE § 1170.2(e)).

113. *See, e.g., id.* § 271, at 4818 (to be codified as CAL. PENAL CODE § 1168).

114. *Id.* § 276, at 4823 (to be codified as CAL. PENAL CODE §§ 2930-32). Good time credits apply to all prisoners. *Id.* § 273, at 4822 (to be codified as CAL. PENAL CODE § 1170.2(d)). However, prisoners sentenced prior to the effective date of the bill can receive credit only from the effective date of the bill. *Id.*

115. *Id.* § 276, at 4823 (to be codified as CAL. PENAL CODE § 2930(a)).

116. *Id.* (to be codified s CAL. PENAL CODE § 2930(b)).

117. *Id.* (to be codified as CAL. PENAL CODE § 2931(a)).

118. *Id.* at 4824 (to be codified as CAL. PENAL CODE § 2931(a)(3)).

The documentation requirement in this section is undoubtedly an effort to avoid the criticism that was directed at the Adult Authority that each time a prisoner appeared before the Board he was told to do something different in order to obtain an early release.[119] Although the Department can unilaterally change the credit requirements for lack of adaptability, the hearing requirement should prevent abuses.

The maximum possible good time credit will result in a four month reduction in sentence for every eight monthy served.[120] Three months of each four month reduction are based upon forebearance from illegal activities or prison disciplinary infractions. These forbidden activities range from assault with a weapon and escape to manufacture or sale of intoxicants. Penalties for participation in these activities range from a forty-five day reduction in credit for the most serious to a fifteen day reduction for the least serious.

In any case the Department may seek a criminal prosecution for violations of law. If the prisoner is prosecuted, he may not be denied credit if found not guilty and he may be denied credit at the specified rates if found guilty.[121] One month of good time credit can be awarded for participation in prison activities.[122] Success in the activity is not required for credit, if a reasonable effort is made. However, failure to participate, unless confined by choice or due to behavior problems, will result in a maximum loss of thirty days credit for every eight month period actually served.

The Bill's credit provisions provide some incentive to prisoners to better themselves and to reduce their sentences by not committing additional crimes in prison.[123] Even if the inmate

---

119. *See Transcript*, *supra* note 5.

120. 1976 Cal. Legis. Serv., ch. 1139, § 276, at 4824 (to be codified as CAL. PENAL CODE § 2931(b)).

121. *Id.* at 4825 (to be codified as CAL. PENAL CODE § 2932 (d)).

122. *Id.* at 4824 (to be codified as CAL. PENAL CODE § 2931(c)).

123. Almost all prohibited activities are at least misdemeanors. The activities prohibited by the bill and their penalties are as follows:

(1) Assault with a weapon; or escape.

(2) Physically assaultive behavior; possession of a weapon without permission; attempt to escape; or urging others, with the intent to cause a riot, to commit acts of force or violence, at a time and place under circumstances which produce a clear and present and immediate danger of a riot which results in acts of force or violence.

(3) Intentional destruction of state property valued in excess of fifty dollars ($50); falsification of a significant record or document; possession of escape tools without permission; or manufacture or sale of intoxicants.

Activities specified in paragraph (1) may result in a maximum denial of

refuses to participate in prison activities and does all the forbidden activities, nothing except another felony conviction will lengthen his term.[124]

Denial of good time credit is possible only if certain time limitations and procedures are observed.[125] First, credit can be denied only within the eight month credit review period in which the misbehavior takes place. Second, the Department must follow a strict timetable for notifying the inmate of its intent to deny credit and for proceeding with the denial hearing. The Department must also meet specific notice requirements.[126] Third, the inmate must be granted certain procedural assistance and safeguards, including the right to request the attendance of witnesses and to question all witnesses at the hearing and the right to assistance by Department employees in gathering facts and presenting the prisoner's defense.[127] Finally, the inmate must be notified within ten days of the hearing of the results and reasons therefor, and he must be granted not only Department, but also Community Release Board review upon request.[128]

Although the inmate does not have the full panoply of procedural safeguards, substantial safeguards are provided, and the proceeding to deny credit can not result in additional criminal penalties to the inmate.[129]

---

> good behavior credit of 45 days for each such prohibited activity. Activities specified in paragraph (2) may result in a maximum denial of good behavior credit of 30 days for each such prohibited activity. Activities specified in paragraph (3) may result in a maximum denial of good behavior credit of 15 days for each such prohibited activity. Nothing in this section shall prevent the Department of Corrections from seeking criminal prosecution for violations of law.

*Id.* (to be codified as CAL. PENAL CODE § 2931(b)).

124. Such a system seems the best way to encourage efforts at "rehabilitation," even if they have no actual beneficial effect, without getting enmeshed in measuring rehabilitation. Also, the provisions of the Bill do not completely shut the door on rehabilitation. In the future if rehabilitation becomes understood, its effects can be built into the sentencing system.

125. 1976 Cal. Legis. Serv., ch. 1139, § 276, at 4824 (to be codified as CAL. PENAL CODE § 2932).

126. *Id.* (to be codified as CAL. PENAL CODE § 2932(a)(1)).

127. *Id.* at 4825 (to be codified as CAL. PENAL. CODE § 2932(a)(2)-(6)).

128. *Id.* (to be codified as CAL. PENAL CODE § 2932(a)(7)).

129. It is possible that an inmate's right to credit could be considered so closely related to his liberty that even more procedural safeguards may be necessary to meet the requirements of due process. *See, e.g.*, CAL. CONST. art. I, §§ 14-15 (specific constitutional due process protections for criminal trials). Since a person's freedom is restricted by a denial of good time almost as much as it is by a criminal conviction, full criminal trial protections may be required. However, since the procedures provided for

Every eight months the Department must recompute prison time to be served on the basis of good time earned and must notify each prisoner of his new release date. If credit denial proceedings or criminal prosecutions prevent release of a prisoner who otherwise would have been released, and he is subsequently found not guilty, the time spent incarcerated beyond the scheduled release date will be deducted from the prisoner's parole period.[130]

There were no good time provisions in the indeterminate sentence law. Each sentence could vary anywhere within the statutory minimum and maximum bounds. Procedural safeguards were not provided by law and were developed only on a case by case basis.[131]

Although the new determinate sentence law will probably be challenged in the courts on many procedural grounds, the safeguards that are built into the law will prevent serious abuses before the procedures can be tested. Moreover, the substantial documentation requirements will make review of any case much more complete and accurate.

*Parole*

The last major procedural section of Senate Bill 42 deals with parole.[132] Parole is a required period of Department of Corrections supervision of an inmate after he is released from prison.[133] For all inmates serving determinate sentences and

---

the Bill are already quite detailed and protective of a prisoner's rights, additional safeguards should be imposed only if the courts find present procedures do not adequately protect those rights.

130. *See* notes 133-43 and accompanying text *infra* (explanation of parole procedure under the Bill).

131. The protections that were developed in the courts were often limited to very narrow facts, leaving other areas unprotected until the appropriate case reached the courts. For example, parole revocation and parole rescission procedures both involved the withdrawing of liberty, but due process procedures were extended to one proceeding long before they were extended to the other. Gee v. Brown, 14 Cal. 3d 571, 534 P.2d 716, 120 Cal. Rptr. 876 (1975); *In re* Prewith, 8 Cal. 3d 470, 503 P.2d 1326, 105 Cal. Rptr. 318 (1972). Also, the documentation required by Adult Authority procedures was inadequate, often limiting review to only the most glaring cases of abuse.

132. 1976 Cal. Legis. Serv., ch. 1139, § 278 *et seq.*, at 4826 (to be codified as CAL. PENAL CODE §§ 3000-65).

133. To anyone familiar with present concepts of parole, the parole period provided by the Bill looks like an additional period of supervision, and possibly of incarceration if parole is revoked, after an individual's determinate sentence has been served. Such an additional penalty could present constitutional due process problems if viewed as an additional period of supervision and control without a trial and a conviction. However, since all determinate sentences have a one year parole provision

those serving indeterminate sentences less than life imprisonment, parole will be a period up to one year. Prisoners serving indeterminate sentences with a life maximum will serve a parole period up to three years. This parole can be waived by the Community Release Board for good cause, and the inmate can be released from custody immediately.

Major provisions of the Bill include specific guidelines for every decision which must be made and procedural safeguards to assure that each individual is treated fairly and equally and has a right to some form of review.[134] The primary exception is the parole waiver decision; no definition of good cause or factors to be considered are provided, nor is any procedure set up for making and reviewing that decision.[135] The absence of guidelines for this decision allows for disparity in its application and will certainly lead to litigation even if the Community Release Board adopts procedures paralleling other notice and hearing procedures in the Bill.[136] The legislature should remedy this defect by providing standards for making the parole waiver decision, by requiring documentation of the reasons for the decision, and by providing a review procedure.

The remainder of the parole provisions deal with the parole release decisions for inmates still serving indeterminate sentences under Senate Bill 42. Within the first year of incarceration of such an inmate, a Community Release Board panel[137] must meet with the inmate to review his file and make recommendations.[138] Presumably these recommendations will deal with the activities the inmate should engage in to assure

---

and since the defendant is warned at the sentencing hearing of the parole requirement (*id.* § 273, at 4819 (to be codified as CAL. PENAL CODE § 1170.1)), each term should be viewed as the determinate sentence plus one year of parole. Since the parole period cannot exceed the one year maximum (*id.* § 278, at 4826 (to be codified as CAL. PENAL CODE § 3000(d)), even if there is a subsequent conviction for a felony committed while on parole, courts will probably interpret this period simply as part of each sentence, thereby avoiding due process problems.

134. *See, e.g., id.* § 281.8, at 4827 (to be codified as CAL. PENAL CODE § 3041.5) (procedural requirements for hearings to review parole eligibility or the setting, postponing or rescinding of parole dates or the evaluation of a prisoner's appeal of good time denial).

135. *See id.* § 278, at 4826 (to be codified as CAL. PENAL CODE § 3000).

136. *See* note 130 *supra.* Some cases have already held that parole is a substantial liberty. *See, e.g.,* Gagnon v. Scarpelli, 411 U.S. 778 (1973); Preston v. Piggman, 496 F.2d 270 (1974). If parole is a substantial liberty requiring due process protections, surely the right to be free without parole is an even greater liberty entitled to at least as much protection.

137. 1976 Cal. Legis. Serv., ch. 1139, § 296, at 4833 (to be codified as CAL. PENAL CODE § 5076.1) (provides for doing business in panels).

138. *Id.* § 281, at 4827 (to be codified as CAL. PENAL CODE § 3041(a)).

early release, similar to the conditions for granting good time credit for a prisoner with a determinate sentence.[139]

One year prior to the inmate's minimum eligible parole release date,[140] a Community Release Board panel will meet with the inmate and will set his parole release date. These dates must be set in a manner that will provide uniform sentences for similar offenses.[141] The Judicial Council is authorized to provide rules for the Board which will help promote uniformity.

Subdivision (b) of section 3041 gives the Community Release Board authority to consider the protection of society by refusing to set a parole release date if public safety so requires. That subdivision makes reference to the "timing" of current or past offenses as a factor which makes a more lengthy period of incarceration necessary. Timing is not defined.[142]

## CONCLUSIONS

Senate Bill 42 eliminates most of the problems of the indeterminate sentence while creating few of its own. It clearly defines the purpose of sentencing and imposes numerous requirements to assure that that purpose is met. Although the resulting sentences can be questioned as too short for the adequate protection of society,[143] the scheme of varied levels of

139. *See* notes 118-20 and accompanying text *supra*. For the information of the Community Release Board and the protecton of the inmate, these recommendations should be carefully documented and included in the inmate's file. Though these recommendations will be more easily modified than conditions for granting good time credit because of the indeterminate features of the inmate's term, careful documentation will prevent the Board from making contradictory recommendations each time it meets with the inmate and will allow the inmate to question changes in recommendations.

140. *See* notes 41-42 and accompanying text *supra* (definition of parole release date).

141. Uniformity was not a primary goal of the indeterminate sentence procedures. *See* C.D. 75/20, *supra* note 8.

142. The only interpretation this author can imagine for the use of that word is that the Community Release Board may consider whether there has been a rash of crimes similar to the inmate's immediately prior to his release and whether the public outcry at the release of such a prisoner would be too great to allow release. It does not seem rational to postpone an individual's release because of the crimes of others. If this interpretation of timing is correct, its use is certainly subject to challenge on due process grounds.

143. Such a decision is purely a policy decision and should be made by the legislature and not an administrative board. Under the indeterminate sentence system this decision was made on a case-by-case basis and the result was disparity. The Adult Authority's approach to the protection of society was expressed in a policy statement:

> Felons committed to prison should be kept until there is reasonable cause to believe they can lead crime-free lives in society. Doubt should be

seriousness and proportionate levels of sentencing is consistent with the punishment rationale. If additional punishment or greater protection of society is deemed necessary, individual sentences or the entire system can be skewed upward by adding years or months to the sentences without increasing the disparity of the system or upsetting the goal of proportionality.

Determinate sentencing, when combined with the goal of uniformity in sentencing crimes of similar gravity, eliminates the disparity of sentences under an indeterminate sentencing system. Merely having punishment as a purpose, a goal which can be achieved, goes a long way toward improving the sentencing system. The procedural safeguards of careful documentation, and adequate notice, hearing and review for every major decision involving the inmate, erase the additional problems of arbitrariness and insulation from review with which the indeterminate sentencing system was plagued. Finally, this determinate sentencing system provides short enough sentences so that even a supposedly rehabilitated individual who cannot be detected need not serve very long.

The frustration of the indeterminate sentence system has been eloquently expressed by Judge Marvin Frankel:

> The sentence purportedly tailored to the cherished needs of the individual turns out to be a crude order for simple warehousing. . . .
>
> . . . In a host of cases, then, when somebody says a prisoner must stay locked up because he is not "ready" for release, the ultimate Kafkaism is the lack of any definition of "ready."[144]

With a determinate sentencing system that frustration should be at an end.

*Paula A. Johnson*

---

resolved in favor of public protection. Prisoners who make a career of criminal behavior forfeit their right to be treated leniently.

. . . .

Violent, dangerous criminals and those who make a career of stealing other persons' property will be confined until there is adequate assurance they have been reformed.

Adult Authority Policy Statement No. 24 [on file at SANTA CLARA L. REV.].

144. FRANKEL, *supra* note 5, at 93.

*Appendix A*

SUGGESTED BASE RANGES FOR SENTENCES*

| Offense | Typical (in months) | Aggravated (in months) |
|---|---|---|
| Murder 1st | 96-156 | |
| Murder 2nd | 42-66 | |
| Manslaughter | | |
| Voluntary | 36-46 | |
| Involuntary | 24-32 | |
| Vehicle | 18-24 | |
| Robbery 1st | 30-38 | 36-44 |
| Robbery 2nd | 22-30 | 28-36 |
| Arson | 18-30 | 30-42 |
| Assault | 24-32 | 30-38 |
| Burglary 1st | 24-30 | 28-34 |
| Burglary 2nd | 16-22 | 20-29 |
| Theft | 16-22 | 20-28 |
| Grand theft | 22-28 | 26-34 |
| Sexual crimes | 30-60 | |
| Unlawful sexual intercourse | 12-30 | |
| Controlled substances (heroin; opium and its derivatives; hallucinogens) | | |
| Possession | 26-36 | |
| Possession for sale | 34-42 | |
| Sale | 38-48 | |
| Controlled substances (marijuana and dangerous drugs) | | |
| Possession | 18-32 | |
| Possession for sale | 28-38 | |
| Sale | 36-44 | |
| Bribery | 12-24 | |
| Prisoner with weapon | 9-18 | 18-36 |
| Escape | 6-18 | 16-22 |
| Ex-felon in possession | | |
| weapon | 9-18 | 18-30 |
| Sale or mfg. weapon | 9-18 | 18-36 |
| Parole violation | 0-9 | 9-18 |

SUGGESTED ADJUSTMENT RANGES*

| Prior Prison Terms | Sentencing Status | Subsequent Offenses |
|---|---|---|
| Less serious (each) + (3-9) mos. | Youthful Offender − (6-18) mos. | Court convictions (each) + (12-24) mos. |
| More serious (each) + (9-24) mos. | Concurrent sentence (each) + (3-12) mos. | Disciplinary |
| | | Less serious + (3-9) mos. |
| | Consecutive sentence (each) + (12-24) mos. | More serious + (9-18) mos. |
| | Prior felony convictions pled and proven (each) + (0-9) mos. | |

*Derived from tables in C.D. 75/20, *supra* note 8.

*Appendix B*

COMPARATIVE SENTENCES FOR SELECTED OFFENSES UNDER S.B. 42
AND INDETERMINATE SENTENCING SYSTEMS

| Penalty Under S.B. 42 | Offense | Penalty Under Indeterminate Sentencing |
|---|---|---|
| 16 months, 2 years or 3 years | Accessory | 6 months to 5 years |
| | Misprison of treason | 6 months to 5 years |
| | Threatening public official to deter from duties | 6 months to 5 years |
| | Defrauding government | 6 months to 5 years |
| | Corrupt influencing of jurors | 6 months to 5 years |
| | Escape from reformatory | 6 months to 10 years |
| | False report of secretion of explosive | 6 months to 3 years |
| | Assault by public officer | 6 months to 5 years |
| | Assault with attempt to commit felony except murder | 6 months to 15 years |
| | Child/wife beating | 6 months to 10 years |
| | Bigamy | 6 months to 10 years |
| | Indecent exposure, 2d conviction | 1 year to life |
| | Burglary 2d | 1 year to 15 years |
| | Forgery | 1 year to 14 years |
| | Receiving stolen property | 6 months to 10 years |
| | Wiretapping | 6 months to 3 years |
| 2, 3 or 4 years | Bribing executive officer | 1 year to 14 years |
| | Perjury | 1 year to 14 years |
| | Manslaughter | 6 months to 15 years |
| | Mayhem | 6 months to 14 years |
| | Robbery 1st | 5 years to life |
| | Robbery 2nd | 1 year to life |
| | Poisoning with intent to kill | 10 years to life |
| | Assault with intent to murder | 1 year to 14 years |
| | Assault with intent to commit rape, sodomy, mayhem, robbery, grand larceny | 1 year to 20 years |
| | Dueling resulting in death | 1 year to 7 years |
| | Battery with serious bodily injury | 6 months to 5 years |
| | Assault with caustic chemical | 1 year to 14 years |
| | Assault with deadly weapon | 6 months to life |
| | Pimping | 1 year to 10 years |
| | Child stealing | 6 months to 20 years |
| | Sodomy with force | 6 months to 5 years |
| | Lynching | 6 months to 20 years |
| | Arson, not dwelling house | 2 years to 20 years |
| | Burglary 1st | 5 years to life |
| | Counterfeiting | 1 year to 14 years |
| | Grand theft | 6 months to 10 years |
| | Extortion | 1 year to 10 years |

| | | |
|---|---|---|
| 3, 4 or 5 years | Kidnapping | 1 year to 25 years |
| | Robbery of transportation operator | 5 years to life |
| | Attempt to kill President | 10 years to life |
| | Assault with a deadly weapon on a peace officer | 6 months to 15 years |
| | Rape | 3 years to life |
| | Sodomy against will of victim | 5 years to life |
| | Child molesting | 1 year to life |
| | Arson during emergency | 5 years to life |
| | Burglary with explosive | 10 years to 40 years |
| | Prisoner holding hostage in prison | 5 years to life |
| 5, 6 or 7 years | Murder 2d | 5 years to life |
| | Rape with force or violence | 5 years to life |
| life imprisonment—no special circumstances | Murder 1st<br>Kidnapping resulting in death of victim | life, special circumstances capital punishment<br>life with or without possibility of parole |

Prop. 7 Initiative did the voters approve Petitioner's parole would be conditioned upon something other than "... **subject to good-time credits**"?

2. Show how Petitioner's specific performance under Pen. Code § 2931, Stats 1977 C 165 § 38, does **not** entitle him to be released and why this Court should **not** decide his sentence is fixed by law to a "**CERTAINTY**" according to his already earned good-time and participation credits taken off the sentence at the rate of four months off for each eight months served? Show what statutes existing at the time of Prop. 7's enactment that vested the C.R.B., B.P.T., and now the B.P.H., with the authority to circumvent the Department of Corrections (now CDC&R) ministerial duty to reduce Petitioner's term and release him on parole. The answer should include the statutory discretion authorizing Respondents the Legislative power to determine Petitioner's term and to keep him imprisoned after his credits exceeded his mandatory good-time release date.

3. In this paragraph, Respondents should cite by what authority of law they are vested with discretion to fix the term of a Prop. 7 sentence; as opposed to the finality of the term of the court imposed penalty fixed "... **subject to good-time credits**". The statutes cited should show where Respondents were granted discretion to hold their so-called "suitability hearing process"; when the State court did **not** sentence Petitioner to a "**FOR LIFE**" sentence with the possibility of parole.

4. Because Petitioner is claiming that his release on parole is not conditioned upon a "suitability hearing process", Respondents should address this issue and show why this process does not conflict with due process and equal protection of the law by conflicting with Pen. Code §§ 1170(a)(1), 2931, and 3000 as codified by Stats 1977 C 165 §§§ 15, 38, and 42. For example, where in Prop. 7 were the voters asked to administered Petitioner's sentence under the repealed Indeterminate Sentencing Law (ISL). Why is Petitioner **not** entitled to have his sentence treated as part of the 1977 Pen. Code § 1170, (DSL), and why Petitioner is **not** entitled to know the "**CERTAINTY**" of his penalty at the time of sentencing, the same as all others for which the DSL was created. Respondent(s) should describe how, and under what rule of law, Petitioner's has not been paroled after his earned credits have been properly applied.

5. By what authority of law, or under Pen. Code § 1168(b), are Respondents for the BPH given discretion to administer Petitioner's sentence in the face of his claim that this statute cannot be enlarged **OR** applied to post-1977 offenses. The answer should provide by what authority, under the "Rule of Law", Respondents can overcome Petitioner's claims that he is being denied due process under the repealed ISL., and/or equal protection of the DSL, and that his sentence is being unconstitutionally implemented. Respondent(s) should show they are **not** acting under a repealed law's sentencing structure and are using valid rules and regulations authorized by statute to fairly and uniformly apply the law in implementing Petitioner's sentence; as opposed to Petitioner's claim that his

sentence is being unconstitutionally administered by State agency officials within the same branch as those who had their powers repealed for abuse as show by the State Archive Exhibits accompanying this writ.

6. Respondents should show by what statutes and/or constitutional provisions in effect on Nov. 7, 1978 guided the voters in creating Prop. 7's sentencing structure. For example, where under the "rule of law" does it provide the voters with the power to vest by implication of the type of sentencing scheme adjudicative discretion in the Community Release Board (CRB), to decide whether or not Petitioner would pose a threat to public safety. And by what authority of law did the electorate approve of vesting the CRB with law making powers to decide the finality of Petitioner's sentence when his crime was committed after July 1, 1977. Furthermore, Respondents should state their reasons used to deny Petitioner his liberty interest in being released on parole at the earliest time he was eligible and to show by what standards and safeguards they have employed to insure the penalty for his offense is being uniformly applied.

7. Lastly, Respondents should file their answers to Petitioner's equal protection claim dealing with his Separation of Powers allegations by showing under what statutes they've been given discretion to determine the amount of penalty for the offense by administrative fiat. This answer should provide the **WAYS**, **MEANS**, **STANDARDS**, **SAFEGUARDS**, **PURPOSE**, AND **POLICY** declared by the California Legislature necessary for Respondents to perform their ministerial duties.

ORDER TO SHOW CAUSE

Upon the supporting writ of habeas corpus and request for mandamus and declaratory relief, and the accompanying memorandum of points and authorities dealing with both facts and law, it is

ORDERED that named Respondents in this action show cause in room ___ of the United States District Court for the Northern District of California, on the _____ day of _____, 2008, at _____ o'clock, why Petitioner's writ of habeas corpus and or mandamus application should not be granted.

It is further ORDERED that this "Show of Cause" order and all other papers attached to this application, shall be served on Respondents JAMES DAVIS for the BPH, and M. MARTEL, acting Warden at Mule Creek State Prison by __________, 2008, and the United States Marshals Service is hereby directed to effectuate such service.

Dated: January _____, 2008

______________________________
United States District Court Magistrate

complaint. Respondents should show by what authority of law Petitioner should not be released based on his claim that his imprisonment has exceeded his "**MANDATORY**" good-time release date (Witkin & Epstein, Crim. Law 2ed Vol. 3 § 1550 (1989)). In addition, Respondents should include in their return, an answer to the contention that Respondents have exceeded their statutory discretion by failing to release Petitioner on parole within the time required by statute. In the return, Respondents should show by what authority of law they've been vested with discretion to continue Petitioner's incarceration as opposed to his claim of specific performance -- under conditions provided for by statute -- that would entitle him to his immediate release and based on his earned credits exceeding his already earned release date, his entitlement to be unconditionally discharged from his sentence without parole.

(II). Respondents are to file their formal response within 30 days from the date of this "**ORDER**", and to show by what reasons of fact or law under both State and Federal Constitutions, this Court should **not** issue the writ for Habeas/Mandamus relief ordering Petitioner to be paroled and/or unconditionally released forthwith. The return should be responsive to the claims of illegality made in the petition, taking in mind the Court's finding will be based on Respondents ability to answer the following:

THE QUESTIONS BELOW CONCERN ISSUES OF FACT AND LAW:

1. Under what laws existing at the time the 1978 Prop. 7 Initiative was enacted, were Respondents for the BPH given the power to make rules and regulations authorizing them to continue a Prop. 7 sentenced prisoner beyond his earned "**MANDATORY**" good-time and participation release date? That answer should include where in the

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

(January Term)

CASE NO.__________________

MICHAEL MATLOCK,

Petitioner,

vs.

EDMOND G. BROWN, Jr., Attorney General; JAMES E. TILTON, Sec. of CDC&R; JAMES DAVIS, B.P.H. (C); M. MARTEL, Warden (Act.); & ARNOLD SCHWARZENEGGER, Governor of the State of California,

Respondents, et al.

(**Proposed**)

**ORDER**

**ISSUANCE OF:**

**ORDER TO SHOW CAUSE**

28 USC § 2254

TO THE ABOVE NAMED RESPONDENTS:

(I). In the attached complaint, Petitioner is not attacking his conviction or sentence. He is challenging what he believes to be the unconstitutional administration of his sentence by the Respondents. Proceeding pro se, Petitioner has alleged sufficient facts, that if true, would entitled him to the relief he is requesting from his 20 to life sentence by **ORDER** of this Court (See: Witkin Const. Law 9ed Vol. 7 §§ 79 thru 84 (1988), see also: Meachum v. Fano, 427 U.S. 215, 225-26 [96 S.Ct. 2532, 49 L.Ed.2d 451] (1976)). For all the reasons expressed herein, Respondents will be required to file a response and return to both the State and Federal claims presented in the attached

Michael Matlock, D-14884
BLD 10 / 146-U / M.C.S.P.
Post Office Box # 409040
Ione, California 95640

RECEIVED

JAN 29 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Office of the Clerk
United States District Court
for the Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

LEGAL AND CONFIDENTIAL MAIL

S Lewis        1/26/2008